TAM:MEH:mel:2002V00410

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
**WILLIAMSPORT, PA**

JUN 4 2002

MARY E. D'ANDREA, CLERK
Per _____ 
                    DEPUTY CLERK

MANUEL RAMOS,          :
        Plaintiff      :
                       :
        v.             :  Civil No. 1:CV-00-1957
                       :  (Kane, J.)
MARGARET HARDEN, Warden, :  (Smyser, M.J.)
et al.,                :
        Defendants     :

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Manuel Ramos is an inmate formerly incarcerated at FCI Allenwood, USP Allenwood, and USP Lewisburg.[1] On July 11, 2000, he initiated this action in the United States District Court for the District of Columbia against Kathleen Hawk Sawyer, the Director of the Bureau of Prisons, and Margaret Harding, the Warden of FCI Allenwood. By Memorandum and Order dated September 20, 2000, the Honorable Richard Roberts construed the complaint as being filed under <u>Bivens</u> and the Federal Tort Claims Act ("FTCA"). Director Hawk Sawyer was dismissed with prejudice and the case was transferred to the Middle District of Pennsylvania.

---

[1] Ramos was confined to FCI Allenwood from September 26, 1995 to May 21, 1997, when he was transferred to USP Allenwood. He transferred to USP Lewisburg on November 10, 1997, and remained at that facility until February 22, 1999. Ramos is presently incarcerated at USP Florence, Colorado.

Ramos amended his complaint on November 13, 2000, naming the following federal employees as defendants: Margaret Harding, Warden, FCI Allenwood (retired); Dr. Migliorino, FCI Allenwood; Maximo Velasco, M.D., USP Lewisburg; and Anthony Bussanich, M.D., USP Lewisburg.[2] On January 25, 2001, the case was dismissed on the belief that Ramos failed to comply with the Court's order to amend his complaint. The Order was vacated by the Third Circuit on December 20, 2001, and the case was remanded back to this Court.

Ramos seeks compensatory damages for injuries he incurred on March 26, 1997, while confined at FCI Allenwood, and for the lack of medical treatment thereof by medical staff at both FCI Allenwood and USP Lewisburg. A motion to dismiss was filed on behalf of the federal defendants on May 20, 2002. This brief is submitted in support of defendants' motion.

## Statement of Facts

### A. Facts As Alleged by Plaintiff in the Amended Complaint

According to the amended complaint, Ramos was subdued by an unnamed correctional officer at FCI Allenwood on March 26, 1997, while Ramos was involved in an altercation with another inmate. Ramos claims that, while being handcuffed, the officer twisted

---

[2] The amended complaint also names Peter J. Terhaar, identified in the complaint as a consulting surgeon at Bloomsburg Hospital. Defendant Terhaar is not a federal employee and, as such, is not being represented by the United States Attorney's Office.

2

Ramos' right thumb, severely injuring it. Ramos denies struggling with the officer at the time. Am. Compl. at 7.

Ramos indicates that he complained to medical staff of severe pain in his right hand and thumb for fifteen days, "only to be told to take massive doses of Motrin." Id. According to Ramos, Dr. Migliorino told him he would x-ray his injured hand. Id.

Ramos was transferred from FCI Allenwood to USP Allenwood on May 21, 1997, and complains he still had not had the necessary x-ray of his right hand. Id. at 8.

On August 8, 1997, when Ramos says he again complained of severe right thumb wrist and hand pain and refused to take any more Motrin because of stomach pain, he claims a deformity was noted and again an x-ray was ordered. Id. at 8.

Ramos was transferred from USP Allenwood to USP Lewisburg on November 19, 1997[3], where he says he continued to complain of right hand pain. On December 4, 1997, Ramos indicates his complaints were noted and an x-ray was completed which showed a small avulsion fracture at the distal first metacarpal. Id.

The amended complaint notes that in February 1998, it was recommended that Ramos see an orthopedic consultant and surgical

---

[3] According to Bureau of Prisons' computerized records, Ramos was actually transferred to USP Lewisburg on November 10, 1997. See Record in Support of Defendants' Motion to Dismiss ("R.") at 2 (Albert-Blosser Decl., ¶ 6.)

3

repair of the tendon.  The consultation was confirmed by Dr. Velasco on March 2, 1998, for surgical repair of tendon to the bone.  Am. Compl, p. 8.

Ramos contends that he was taken to Bloomsburg Hospital on January 7, 1999, "to have surgery . . . for chronic gameskeeper's thumb, right upper extremity (Grade III), which was a reconstruction ulnar collateral ligament utilizing a palmaris longus tendon graft with suture anchors."  Id. at 9.  He asserts that he thereafter complained of severe pain in his right hand and wrist on January 17, 18, and 20, and February 5, 1999.  Id.  He was transferred from USP Lewisburg to USP Lompoc, California, on February 22, 1999, where he complained of pain on February 25, March 8, April 19, and May 19, when he was seen by an unknown consulting doctor.  Ramos states the consultant told him he had carpal tunnel syndrome and medial nerve entrapment; that the surgery he previously had was "experimental" and that another surgical procedure would create "big problems" with his hand.  Id. at 9-10.

On May 15, 1999, Ramos filed an administrative tort claim with the Northeast Regional Office seeking compensation for his hand injury.  The tort claim was denied on January 7, 2000.  Id. at 10.

4

B.  **Exhaustion of Administrative Remedies**

The Bureau of Prisons has established an administrative remedy procedure where inmates can seek formal review of any complaint regarding any aspect of their imprisonment. This process involves the filing of a request for administrative remedy to the Warden of the institution where the inmate is confined within twenty days following the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). In the event the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty days. 28 C.F.R. § 542.15(a). The final step in the administrative remedy process is an appeal to the General Counsel within thirty days of the Regional Director's response. Id. No administrative remedy appeal is considered to have been finally exhausted until considered by the General Counsel. 28 C.F.R. §§ 542.14, 542.15.

In the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained by the Regional and Central Offices so that rapid verification may be made as to whether an inmate has exhausted administrative appeals on a particular issue. R. 3 (Albert-Blosser Decl., ¶ 9). A review of these computerized indexes reveals that Ramos has not exhausted his administrative remedies regarding complaints of excessive use of force and/or adequacy of medical care. R. 4 (Id., ¶¶ 10-11); R. 5 (Cunningham Decl., ¶ 3).

5

## Questions Presented

I.   Should the Bivens action be dismissed based on the statute of limitations, plaintiff's failure to exhaust his administrative remedies, and because defendants are entitled to sovereign immunity?

II.  Should the FTCA claim be dismissed based on the statute of limitations and because the individual defendants are not proper parties?

Suggested answers in the affirmative.

## Argument

I.   **The Bivens Action**

   A.   **The Bivens Action Should Be Dismissed as it Is Barred by the Statute of Limitations.**

Ramos has filed his complaint under 28 U.S.C. § 1331, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  In a Bivens Action, where no federal statute of limitations exists, state time limits are adopted, if not inconsistent with federal law.  Wilson v. Garcia, 471 U.S. 261.  In Pennsylvania, actions to recover for personal damages must be commenced within two years.  42 Pa. C.S.A. § 5524(2).  See Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d. Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985); Smith v. Holtz, 856 F. Supp. 227 (M.D. Pa. 1994); Hall v. City of Philadelphia, 828 F. Supp. 365 (E.D. Pa. 1993).

6

Federal law determines when a cause of action accrues and the statute of limitations begins to run. <u>Albright v. Oliver</u>, 510 U.S. 266, 280 n.6 (1994)(Ginsburg, J., concurring); <u>Antonioli v. Lehigh Coal and Navigation Company</u>, 451 F.2d 1171, 1175 (3d Cir. 1971), <u>cert denied</u>, 406 U.S. 906 (1972). This occurs when the plaintiff knows or has reason to know of the damages that are the basis of the action. <u>Deary v. Three Un-Named Police Officers</u>, 746 F.2d 185, 193 (3d. Cir. 1984); <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982). In this case, because of the numerous complaints Ramos says he made to prison officials, he knew, or should have known, of his alleged damages immediately at the time of the alleged acts by defendants. As to FCI Allenwood defendants Harding and Migliorino, this could have been anytime from March 26, 1997, when he incurred his injury, until May 21, 1997, when he was transferred from FCI Allenwood. See Am. Compl. at 7-8. At the very latest, the last possible date Ramos knew or should have known of any harm caused by defendants' actions would have been December 4, 1997, when he says an x-ray was performed and "a small avulsion fracture at the distal first metacarpal" was revealed. Am. Compl. at 8. Thus, Ramos' complaint against these defendants should have been filed by, at least, December 4, 1999. Ramos, however did not file his complaint until July 11, 2000.

7

As to USP Lewisburg defendants Velasco and Bussanich, Ramos knew, or should have known, of his alleged damages immediately at the time of the alleged acts by defendants while he was incarcerated at USP Lewisburg from November 19, 1997, until February 22, 1999. Id. at 8-9. Therefore, he is time barred from pursuing any allegations against defendants Velasco and Bussanich for violations of his constitutional rights which occurred prior to July 11, 1998. The motion to dismiss should therefore be granted as these statute of limitations time limits must be strictly enforced. Barren v. United States, 839 F.2d 987, 992 (3d Cir. 1988).

### B. Ramos Has Failed To Exhaust His Administrative Remedies.

The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), provides that "no action shall be brought with respect to prior conditions under ... any ... Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted." In Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (2001), the Supreme Court held that § 1997e(a) makes it mandatory that an inmate complete the administrative remedy process "irrespective of the forms of relief sought and offered through administrative avenues." 121 S. Ct. at 1821, 1825, n.6. See also Porter v. Nussle, 122 S. Ct. 983 (2002) (PLRA's exhaustion requirements apply to all constitutional claims, including Eighth Amendment

8

claims of excessive force, in <u>Bivens</u> cases or otherwise); <u>Nyhuis</u>, 204 F.3d 65 (exhaustion is mandatory and applies in <u>Bivens</u> cases).

As held by the Third Circuit, "[Section 1997e(a)] 'specifically mandates' that inmate-plaintiffs exhaust their available administrative remedies, . . . by providing that '[n]o action shall be brought' until the inmate-plaintiff has done so. Accordingly, it is beyond the power of this court--or any other-- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." <u>Nyhuis</u>, 204 F.3d at 73 (citations omitted). Likewise, exhaustion is required even if an inmate cannot recover monetary damages in the administrative process. <u>Booth</u>, 532 U.S. 731. To permit otherwise, "would enable prisoners, as they became aware of such an exemption, to evade the exhaustion requirement, merely by limiting their complaints to request for money damages. . . . Such a result would do little to 'stem the tide of meritless prisoner cases' as Congress intended." <u>Nyhuis</u>, 204 F.3d at 74 (quoting <u>Beeson v. Fishkill Correctional Facility</u>, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).[4]

---

[4] The exhaustion doctrine has been developed to facilitate judicial review by allowing the appropriate agency to develop a factual record and apply its expertise, to conserve judicial resources, and to allow the defendant agency the first opportunity to correct its own errors. See <u>Porter</u>, 122 S.Ct. at 988; <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3rd Cir. 1996).

9

Accordingly, dismissal of a plaintiff's complaint is required when an inmate has failed to exhaust his available administrative remedies before bringing a federal lawsuit. Booth, 206 F.3d at 289 n.3, 300 (district court appropriately dismissed action even though time for plaintiff to cure defect in complaint is long past); Ahmed v. Sromovski, 103 F.Supp.2d 838, 843 (E.D. Pa. 2000). See also Ray v. Kertes, 285 F.3d 287, 293 n.5, 297 (3rd Cir. 2002)(though a plaintiff need not plead exhaustion to avoid sua sponte dismissal by the court, the court can sua sponte dismiss a case when the plaintiff concedes his/her failure to exhaust administrative remedies in that the complaint facially violates a bar to suit).

The PLRA became effective on April 26, 1996, the date of its enactment, Martin v. Hadix, 527 U.S. 343 (1999), and applies to all prisoner complaints filed after that date. Ghana v. Holland, 226 F.3d 175 (3rd Cir. 2000); Garrett v. Hawk, 127 F.3d 1263, 1266 (10th Cir. 1997). Ramos' original complaint was filed in the United States District Court for the District of Columbia on July 11, 2000. Compl., p. 1.

In this case, Ramos failed to exhaust his administrative remedies before bringing his lawsuit, which he **concedes**. In Ramos' original complaint, when asked to "briefly explain why administrative procedures were not exhausted," Ramos replied, "Per McCarthy v. Madigan, 503 U.S. -, 117 L Ed 2d 291, Federal

10

Prisoner held not required to exhaust B.O.P. internal grievance proceedure [sic] before initiating <u>Bivens</u> action solely for money damages." Compl. at 5. As just noted, however, the Supreme Court has held that the fact that an inmate cannot recover monetary damages through the administrative process does **not** excuse the inmate from complying with the PLRA's mandatory exhaustion requirements. <u>Booth</u>, 532 U.S. at 733-34, 741.

In that Ramos has conceded that he did not exhaust his administrative remedies, his lawsuit against the individual federal employees must be dismissed pursuant to § 1997e(a) of the PLRA.

C.   **The Defendants Are Entitled To Sovereign Immunity.**

Ramos' amended complaint sues the individual defendants in both their individual and *official* capacities. Am. Compl. at 3-5.

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court implied a cause of action for damages against federal employees for the violation of constitutional rights. The same immunities that are granted to state officials in § 1983 civil rights actions apply to federal employees. <u>Butz v. Economou</u>, 438 U.S. 478, 496-505 (1978).

Likewise, sovereign immunity equally applies in <u>Bivens</u> actions. Thus, plaintiffs cannot bring <u>Bivens</u> actions against

11

the United States, federal agencies, or federal employees sued in their official capacities. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 130 n.4 (3rd Cir. 1986); <u>Laswell v. Brown</u>, 683 F.2d 261, 267-68 (8th Cir. 1982); <u>See also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)(suit against officer in official capacity is the same as a suit against the sovereign). Accordingly, the constitutional claims against the defendants, as sued in their official capacity for money damages, are barred by sovereign immunity and should be dismissed.

II. **<u>The Tort Claim</u>**

**<u>Ramos' Tort Claim Should be Dismissed As Barred by the Statute of Limitations.</u>**

Ramos has filed and exhausted his administrative tort claim remedies pursuant to 28 U.S.C. § 2675(a). In his tort claim dated March 15, 1999, Ramos sought $5 million for the "inability of my right hand, mental anguish and severe pain." R. at 8 (Claim for Damage Injury or Death). The Bureau of Prisons' Regional Office investigated the tort claim and a decision was made to deny the claim. Specifically, by memorandum dated January 7, 2000, the Northeast Regional Office notified Ramos that his tort claim was denied. R. at 7. In addition, the memorandum informed Ramos that if he was dissatisfied with this decision, he "may bring an action against the United States in an

12

appropriate United States District Court within six (6) months of the date off [sic] this memorandum." Id.

As stated in 28 U.S.C. § 2401(b):

A tort claim against the United States shall forever be barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or *unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.*

Although a literal reading of the statute permits a suit to be filed if either of the conditions are satisfied--i.e., if the claim is presented to the agency within two years of its accrual or if suit is filed within six months of the agency's notice of denial, this section requires the claimant to file both the claim with the agency within two years after accrual of the claim and then to file a complaint in the district court within six months after the claim is denied by the agency. Bryant v. Carlson, 652 F. Supp. 1286, 1287 (D.D.C. 1987); Schuler v. United States, 628 F.2d 199, 201 (D.C. Cir. 1980)(per curiam); see also Willis v. United States, 719 F.2d 608 (2d Cir. 1983).

In this case, the six month deadline for the filing of Ramos' original complaint was July 7, 2000. His complaint was not filed in the United States District Court for the District of Columbia until July 11, 2000. Thus, all of the allegations and relief sought regarding the FTCA portion of Ramos' Amended Complaint should be dismissed as they are barred by the statute

13

of limitations.  See United States v. Kubrick, 444 U.S. 111, 117-18 (1979).

    **B.**    **Ramos Fails to Name the Proper Party for an FTCA Action**

Ramos has filed his combined Bivens and FTCA amended complaint naming individual employees of the Federal Bureau of Prisons.  However, a complaint filed pursuant to the FTCA must be brought against the United States; an agency or employee of the government is not a proper defendant to such an action.  Galvin v. Occupational Safety & Health Admin., 860 F.2d 181, 183 (5th Cir. 1988); Sprecher v. Graber, 716 F.2d 968 (2d Cir. 1983); Hughes v. United States, 701 F.2d 56 (7th Cir. 1982).  Therefore, Ramos' complaint filed pursuant to the FTCA should be dismissed as to defendants Harding, Migliorino, Velasco, and Bussanich.

## Conclusion

For the above stated reasons, defendants' motion to dismiss should be granted with a certification that any appeal would be

deemed frivolous, lacking in probable cause and not taken in good faith.

                    Respectfully submitted,

                    THOMAS A. MARINO
                    United States Attorney

                    MATTHEW E. HAGGERTY
                    Assistant U.S. Attorney
                    MICHELE E. LINCALIS
                    Paralegal Specialist
                    316 Federal Building
                    240 West Third Street
                    Williamsport, PA  17703

Date: June 4, 2002

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL RAMOS, :
       Plaintiff :
        :
    v. : Civil No. 1:CV-00-1957
        : (Kane, J.)
MARGARET HARDEN, Warden, : (Smyser, M.J.)
et al., :
       Defendants :

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on June 4, 2002, she served a copy of the attached

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Manuel Ramos
Reg. No. 37563-053
U.S. Penitentiary
P.O. Box 7000
Florence, CO 81226

David W. Saba, Esquire
Suite 113, Park Building
400 Third Avenue
Kingston, PA 18704

_____
MICHELE E. LINCALIS
Paralegal Specialist