cc: mg Smyser; Charles Ruberdall; Mr. Ramos  ㉗
Attp Haggerty; Salva + Endler   7/19/02

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL RAMOS,                      : CIVIL NO: 1:CV-00-1957
                                   :
        Plaintiff,                 :
                                   : (Judge Kane)
    v.                             :
                                   : (Magistrate Judge Smyser)
MARGARET HARDEN,                   :
DR. MCGLORI,                       :
DR. MAXIMO R. VELASCO, JR.,        :
DR. ANTHONY BUSSANICH, and         :          FILED
DR. PETER J. TERHAAR,              :     HARRISBURG, PA
                                   :
        Defendants                 :       JUL 19 2002
                                   :
                                          MARY E. D'ANDREA, CLERK
                                          Per _____
                                              Deputy Clerk

                              ORDER

    The plaintiff, a federal prisoner proceeding *pro se*, commenced this action by filing a complaint in the United States District Court for the District of Columbia. The plaintiff paid the $150.00 filing fee to commence this action.

    In his complaint, the plaintiff alleged that on March 25, 1997, while confined at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania, a correctional officer fractured his right thumb. The plaintiff alleged that he filed

an administrative claim which was denied.  The complaint named as defendants: Kathleen Hawk Sawyer, Director of the Bureau of Prisons; and Margaret Harden, Warden of the Allenwood Federal Correctional Institution.

By an Order dated September 18, 2000, Judge Richard W. Roberts of the United States District Court for the District of Columbia construed the plaintiff's complaint as a *Bivens*[1] claim and as a claim under the Federal Tort Claims Act.[2]  Judge Roberts dismissed with prejudice the claim against defendant Kathleen Hawk Sawyer and he ordered that the case be transferred to this court.  The Clerk of this Court received the case file on November 1, 2000.

On November 8, 2000, the plaintiff filed a motion for an extension of time to amend his complaint.  The plaintiff sought thirty days to amend his complaint to include additional defendants and to "bring his Civil action in proper form."

---

1. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

2. 28 U.S.C. §§ 1346, 2671 *et seq.*

2

On November 13, 2000, the plaintiff filed a document with the court containing several titles including "Complaint," "Motion to Submit Amended Memorandum of Law in Support of Civil Rights Complaint under Bivens v. Six Unknown Agents, 403 US 388 (1971); 28 USC ¶¶ 1331, 1391(a)(b) and Federal Tort Claims Act, 28 USC §§ 1346(b), 2671-80," and "Amended Memorandum of Law in Support of Civil Rights Complaint under Bivens v. Six Unknown Agents, 403 US 388 (1971); 28 USC ¶¶ 1331, 1391(a)(b) and Federal Tort Claims Act, 28 USC §§ 1346(b), 2671-80."

By an Order dated November 15, 2000, we reviewed the complaint and concluded that the complaint failed to state a *Bivens* claim against defendant Harden because the plaintiff had not alleged that defendant Harden actually participated or had actual knowledge of and acquiesced in the events forming the basis of his claim. We further concluded that the complaint failed to state a claim under the Federal Tort Claims Act against defendant Harden because the only proper defendant in a Federal Torts Claim Act case is the United States. The Order

3

of November 15, 2000 also granted the plaintiff's motion for an extension of time to file an amended complaint and ordered the plaintiff to file an amended complaint within thirty days.  We warned the plaintiff that if he fails to file an amended complaint, we would recommend that this action be dismissed for failure to state a claim upon which relief can be granted.

After the Order of November 15, 2000, the plaintiff did not file an amended complaint.

In a Report and Recommendation dated December 21, 2000, we recommended that the complaint be dismissed pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e for failure to state a claim upon which relief may be granted.  At the time we issued the Order of November 15, 2000 and the Report and Recommendation of December 21, 2000, the document filed by the plaintiff on November 13, 2000 was not in the file.

By an Order dated January 25, 2001, Judge Kane adopted our Report and Recommendation and dismissed the complaint.  The

plaintiff appealed that order to the United States Court of Appeals for the Third Circuit.  By an Order dated December 20, 2001 the Third Circuit vacated the order of January 26, 2001 dismissing the plaintiff's complaint and remanded the case to the district court.  The Third Circuit directed that the court consider the document filed by the plaintiff on November 13, 2000 as an amended complaint.

The plaintiff alleges the following facts in his amended complaint.

On March 26, 1997, the plaintiff was involved in an alteration with another inmate at the Allenwood Federal Correctional Institution (FCI-Allenwood).  The officer who subdued and handcuffed the plaintiff used unreasonable and excessive force and broke the plaintiff's thumb.

The plaintiff complained to medical staff about severe pain and swelling.  The defendants only prescribed Motrin.  Defendant McGlori informed the plaintiff that he would order an

AO 72A
(Rev 8/82)

x-ray of the plaintiff's injured hand.  However, an x-ray was not taken of the hand until December 4, 1997.  In the meantime, on May 21, 1997, the plaintiff was transferred from FCI-Allenwood to the United States Penitentiary at Allenwood (USP-Allenwood).  The plaintiff continued to complain of pain only to be told to take Motrin.  The plaintiff complained that Motrin upset his stomach.

On November 19, 1997, the plaintiff was transferred from USP-Allenwood to the United States Penitentiary at Lewisburg (USP-Lewisburg).  The plaintiff continued to complain of pain.  On December 4, 1997 an x-ray was taken which revealed a small avulsion fracture at the distal first metacarpal.  On February 9, 1998, surgical repair of the tendon in the plaintiff's hand was recommended.  The plaintiff continued to complain of severe pain in his right hand and thumb.  On January 7, 1999, defendant Terhaar, a consulting surgeon, performed surgery on the plaintiff's thumb.  Throughout January and February of 1999, the plaintiff complained of severe pain in his right hand and wrist.

AO 72A
(Rev 8/82)

On February 22, 1999, the plaintiff was transferred from USP-Lewisburg to the United States Penitentiary at Lompoc, California (USP-Lompoc). The plaintiff continued to complain of severe pain in his right hand and wrist.

On March 15, 1999, the plaintiff filed an administrative tort claim.

On May 19, 1999, the plaintiff was told by a consulting doctor that he had carpal tunnel syndrom and medial nerve entrapment. The consulting doctor told the plaintiff that the surgery that was performed by defendant Terhaar was experimental and should not have been done. The plaintiff continued to complain of severe pain in his right hand and wrist.

On October 7, 1999, the plaintiff was transferred from USP-Lompoc to the United States Penitentiary at Florence, Colorado (USP-Florence). While at USP-Florence, the plaintiff was seen by a consulting doctor who also diagnosed the

7

plaintiff with carpal tunnel syndrome. This consulting doctor recommended surgery but the plaintiff declined the surgery out of fear caused by the past experimental surgery performed on him.

The plaintiff's administrative tort claim was denied on January 7, 2000.

On May 23, 2000, the plaintiff was transferred to the Medical Center for Federal Prisoners in Springfield, Missouri. The plaintiff was again diagnosed with carpal tunnel syndrome and median nerve entrapment. Surgery was again recommended and the plaintiff again declined surgery out of fear.

On June 15, 2000, the plaintiff was returned to USP-Florence where he remains incarcerated.

The plaintiff claims that defendant Harden, the Warden at FCI-Allenwood, failed to investigate the acts of the officer who broke his hand and failed to turn over the officer's name

or the accident report on the incident. The plaintiff further claims that defendant Harden failed to ensure that he received adequate medical care.

The plaintiff claims that doctor McGlori, a doctor at FCI-Allenwood, is liable for deliberate indifference to his serious medical needs. He alleges that defendant McGlori did not adequately treat his hand, did not complete the necessary x-ray and did not ensure that he received surgery in time to prevent the tendon in his hand from becoming atrophied.

The plaintiff claims that defendants Velasco and Bussanich, doctors at USP-Lewisburg, are also liable for deliberate indifference to his serious medical needs. He alleges that they failed to adequately treat his hand injury and waited many months before scheduling him for surgery, a surgery which turned out to be unsuccessful and caused him to lose the normal use of his hand.

9

The plaintiff claims that defendant Terhaar showed deliberate indifference to his serious medical needs by performing an experimental surgery (which the plaintiff calls a "monkey experiment") on his right hand. The plaintiff also alleges that defendant Terhaar did not inform him that the surgery was experimental and was negligent in performing the surgery. The plaintiff alleges that as a result of defendant Terhaar's malpractice he lost the normal use of his right hand, has permanent numbness and is now fearful of all Bureau of Prisons doctors.

The plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

By an Order dated February 20, 2002, Judge Kane remanded the case to the undersigned for further consideration.

By an Order dated February 28, 2002, we directed the Clerk of Court serve the amended complaint on the defendants.

AO 72A
(Rev 8/82)

The document filed by the plaintiff on November 13, 2000 also contained a motion for the appointment of counsel. The Order of February 28, 2002 denied the plaintiff's motion for the appointment of counsel.

By a separate Report and Recommendation filed this date, we have recommended that the defendants' motions to dismiss be granted in part and denied in part. We have recommended that the plaintiff's FTCA claim and his *Bivens* claims against defendants Velasco and Bussanich not be dismissed. Since some of the plaintiff's claims have survived motions to dismiss, we will reconsider whether at this point the appointment of counsel is warranted. *See Montgomery v. Pinchak,* ___ F.3d ___, 2002 WL 1369223 (3d Cir. June 25, 2002)(stating that court should reconsider denial of motion for appointment of counsel when plaintiff's difficulties become apparent).

28 U.S.C. § 1915(e)(1) provides that the court may request an attorney to represent an indigent litigant in a civil case.

In *Mallard v. U.S. District Court*, 490 U.S. 296 (1989), the Court held that 28 U.S.C. § 1915 does not authorize the district court to require an unwilling attorney to represent an indigent litigant in a civil case.

The United States Court of Appeals for the Third Circuit has developed a number of factors the court should consider when deciding whether to ask an attorney if he or she will accept the responsibility of representing a *pro se* plaintiff. *See Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). The threshold inquiry is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery, supra*, 2002 WL 1369223 at *6. If a plaintiff overcomes this threshold hurdle, the court should consider other factors including 1) the plaintiff's ability to present his or her case considering the plaintiff's education, literacy, experience,

12

ability to understand English and the restraints placed on the plaintiff by incarceration; 3) the complexity of the legal issues involved; 4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; and 5) the degree to which the case turns on credibility determinations or expert testimony. *Tabron, supra*, 6 F.3d at 155-56.

In the United States District Court for the Middle District of Pennsylvania, the need for a list of attorneys available for appointment to represent plaintiffs in potentially meritorious cases has been addressed in Local Rule 83.34. The Middle District Federal Bar Association has assembled a panel of attorneys who may accept appointments at the request of the court in these cases.

The plaintiff's FTCA claim and that the plaintiff's *Bivens* claims against defendants Velasco and Bussanich have survived a motion to dismiss. We can not say that the plaintiff's claims lack arguable merit in fact and law.

AO 72A
(Rev 8/82)

Next, we consider the plaintiff's ability to present his case. This factor has been described as perhaps the most significant factor the court should consider in deciding whether or not to appoint counsel. *Montgomery, supra,* 2002 WL 1369223 at *8.

The plaintiff claims that he lacks the ability and knowledge to pursue this case. He states that he speaks and reads very little English. We think the fact that the plaintiff speaks and reads very little English will substantially hinder his ability to present his case from this point on even though the documents filed by the plaintiff thus far indicate that he is able to communicate with the court through other inmates.

The Third Circuit has recognized that a prisoner's claim relating to medical treatment may be complex. *Montgomery, supra,* 2002 WL 1369223 at *9. To succeed on his FTCA claim the plaintiff will need to establish that federal actors were

AO 72A
(Rev.8/82)

negligent in the provision of his medical care. To succeed on his *Bivens* claims the plaintiff will need to establish that the defendants were deliberately indifferent to his serious medical needs. In addition, as noted in the Report and Recommendation filed this date, the plaintiff's amended complaint could be construed to contain state law malpractice and lack of informed consent claims as well as possibly a substantive due process claim against defendant Terhaar. All of these claims may require expert testimony and can be considered complex.

The plaintiff claims that he will have difficulty conducting discovery and investigating the facts of this case. The plaintiff has indicated that he is having trouble obtaining some of his medical records. *See Doc. 35.*

At this point it is not clear what role credibility will play in this case if the case goes to trial.

As mentioned above, expert testimony may be required in this case.

15

We have considered the *Tabron* factors and have concluded that the circumstances presented in the instant case justify a request to the administrator of the panel of volunteer attorneys to determine whether an attorney will accept an appointment in this case. A communication to that end will be initiated to Mr. Rubendall, the panel administrator.

**AND NOW**, this 19th day of July, 2002, **IT IS HEREBY ORDERED** that the plaintiff's request for the appointment of counsel is conditionally **GRANTED**. **IT IS ORDERED** that a copy of this Order and the Report and Recommendation filed this date shall be sent to Mr. Rubendall. Mr. Rubendall is requested to inform the court within sixty days whether an attorney will enter his or her appearance on behalf of the plaintiff or, in the alternative, that no panel attorney accepts the appointment.

J. Andrew Smyser
Magistrate Judge

Dated: July 19, 2002.

16