TAM:MEH:mel:2002V00410

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | |
|      Plaintiff | : | |
| | : | |
|     v. | : | Civil No. 1:CV-00-1957 |
| | : | (Jones, J.) |
| MARGARET HARDEN, Warden, | : | (Smyser, M.J.) |
| et al., | : | |
|     Defendants | : | |

**FEDERAL DEFENDANTS' ANSWER TO THE COMPLAINT**

Defendants Velasco, Bussanich, and the United States of
America, hereby answer the plaintiff's amended complaint filed
November 13, 2000, as follows, in accordance with Rule 8(b) of
the Federal Rules of Civil Procedure:[1]

1.  Paragraph 1 contains an introductory paragraph by
plaintiff to which no answer is required.

2.  Paragraph 2 contains conclusions of law to which no
answer is required.  To the extent that these legal conclusions
are deemed to contain factual allegations, they are denied.

3.  Paragraph 3 is DENIED.

4.  Paragraph 4 is DENIED.

-------------------

[1] Although Ramos has not set forth his amended complaint in
numbered paragraphs, counsel has assigned numbers to the amended
complaint for purposes of this pleading.  A copy of the numbered
amended complaint is attached hereto for the convenience of the
Court and the parties.

5.   Paragraph 5 contains conclusions of law to which no answer is required.  To the extent that these legal conclusions are deemed to contain factual allegations, they are denied.

6.   Paragraph 6 contains plaintiff's jury demand rather than an allegation of fact for which an answer is required.

7.   Paragraph 7 contains conclusions of law to which no answer is required.

### Jurisdictional Statement

8.   Paragraph 8 contains conclusions of law to which no answer is required.  To the extent that these legal conclusions are deemed to contain factual allegations, they are denied.

### Parties

9. Paragraph 9 attempts to identify defendant "Harden" [sic] and the capacity and basis upon which she was sued.  However, defendant Harding was dismissed from this action on September 26, 2002.  Therefore, no response is required.

10.   Paragraph 10 attempts to identify defendant "McGlori" [sic] and the capacity and basis upon which he was sued.  However, defendant Migliorino was dismissed from this action on September 26, 2002.  Therefore, no response is required.

11.   Paragraph 11 is ADMITTED to the extent that defendant Velasco was formerly employed as a medical doctor at USP Lewisburg.  The remainder of the paragraph is DENIED.

12.    Paragraph 12 is ADMITTED to the extent that defendant Bussanich is employed as a medical doctor at USP Lewisburg and is a citizen of Pennsylvania.  The remainder of the paragraph is DENIED.

13.    Paragraph 13 attempts to identify defendant Terhaar and the capacity and basis upon which he was sued.  However, defendant Terhaar was dismissed from this action on September 26, 2002.  Therefore, no response is required.

### Statement of Issues Presented

14.    Paragraph 14 is DENIED.

15.    Paragraph 15 is DENIED.

16.    Paragraph 16 is DENIED.

17.    Paragraph 17 is DENIED.

18.    Paragraph 18 is DENIED.

19.    Paragraph 19 is DENIED.

20.    Paragraph 20 is DENIED.

21.    Paragraph 21 is DENIED.

### Statement of Facts

22.    Paragraph 22 is ADMITTED to the extent plaintiff was involved in an altercation with another inmate at FCI Allenwood on March 26, 1997, and was subdued by staff and handcuffed.  The remainder of the paragraph is DENIED.

23.    Paragraph 23 is DENIED.

3

24.   Paragraph 24 contains allegations of fact against defendant Migliorino, who was dismissed from this action on September 26, 2002.  Therefore, no response is required.

25.   Paragraph 25 is ADMITTED to the extent plaintiff was transferred to USP Allenwood on May 21, 1997.  The remainder of the paragraph is DENIED.

26.   Paragraph 26 is DENIED.

27.   Paragraph 27 is DENIED.

28.   Paragraph 28 is ADMITTED to the extent plaintiff was transferred to USP Lewisburg in November 1997, and that he complained of pain in his right thumb while at USP Lewisburg. The remainder of the paragraph is DENIED.

29.   Paragraph 29 is DENIED.

30.   Paragraph 30 is ADMITTED to the extent that plaintiff was examined on February 9, 1998, after complaining of thumb pain and that an orthopedic consultation was ordered.

31.   Paragraph 31 is ADMITTED to the extent that plaintiff was seen in Health Services on February 22, 1998.  The remainder of the paragraph is DENIED.

32.   Paragraph 32 is ADMITTED to the extent that plaintiff was seen by an orthopedic consultant on March 2, 1998, and that the consultant recommended surgical repair.

33.   Paragraph 33 is DENIED.

4

34.   Paragraph 34 is ADMITTED to the extent that plaintiff was seen in Health Services on July 21, 1998.  The remainder of the paragraph is DENIED.

35.   Paragraph 35 is ADMITTED.

36.   Paragraph 36 is ADMITTED.

37.   Paragraph 37 is ADMITTED.

38.   Paragraph 38 is ADMITTED.

39.   Paragraph 39 is DENIED.

40.   Paragraph 40 is ADMITTED.

41.   Paragraph 41 is ADMITTED to the extent the plaintiff was seen in Health Services at USP Lompoc on February 25, 1999. The remainder of the paragraph is DENIED.

42.   Paragraph 42 is ADMITTED to the extent the plaintiff was seen in Health Services at USP Lompoc on March 8, 1999.  The remainder of the paragraph is DENIED.

43.   Paragraph 43 is ADMITTED to the extent the plaintiff was seen in Health Services at USP Lompoc on April 19, 1999.  The remainder of the paragraph is DENIED.

44.   Paragraph 44 is ADMITTED to the extent the plaintiff was seen in Health Services at USP Lompoc on May 19, 1999.  The remainder of the paragraph is DENIED.

45.   Paragraph 45 is ADMITTED.

46.   Paragraph 46 is ADMITTED.

5

47.   Paragraph 47 is ADMITTED to the extent that plaintiff was transferred from USP Lompoc.

48.   Paragraph 48 is ADMITTED to the extent that plaintiff was seen by a consultant in Pueblo, Colorado, who commented test results indicated moderately severe carpal tunnel syndrome. Defendant is unable to admit or deny plaintiff's motivation for refusing treatment.

49.   Paragraph 49 is ADMITTED to the extent that the Bureau of Prisons' Northeast Regional Office denied plaintiff's tort claim.

50.   Paragraph 50 is ADMITTED to the extent that plaintiff was transferred to USMCFP Springfield, Missouri, on May 23, 2000. It is further ADMITTED that plaintiff refused the recommended treatment.   Defendant is unable to admit or deny plaintiff's motivation for refusing treatment.

51.   Paragraph 51 is ADMITTED to the extent that plaintiff was transferred from USMCFP Springfield back to USP Florence, Colorado, in June 2000.

52.   Paragraph 52 is ADMITTED.

53.   Paragraph 53 is ADMITTED to the extent that plaintiff's civil case was transferred to the Middle District of Pennsylvania.

54.   Paragraph 54 is ADMITTED.

55.   Paragraph 55 is ADMITTED.

6

56.  Paragraph 56 is DENIED.

57.  Paragraph 57 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

58.  Paragraph 58 is DENIED.

59.  Paragraph 59 is ADMITTED to the extent that plaintiff's hand was x-rayed in December 1997.

60.  Paragraph 60 is ADMITTED to the extent plaintiff underwent surgery on his right hand in January 1999.  The remainder of the paragraph is DENIED.

61.  Paragraph 61 is ADMITTED to the extent plaintiff was seen in Health Services at various Bureau of Prisons' institutions complaining about his right hand.  The remainder of the paragraph is DENIED.

62.  Paragraph 62 is DENIED.

63.  Paragraph 63 is DENIED.

64.  Paragraph 64 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

65.  Paragraph 65 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

66.  Paragraph 66 is DENIED.

67.  Paragraph 67 is DENIED.

68.  Paragraph 68 is DENIED.

69.  Paragraph 69 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

70.    Paragraph 70 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

71.    Paragraph 71 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

72.    Paragraph 72 is DENIED.

73.    Paragraph 73 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

74.    Paragraph 74 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

75.    Paragraph 75 is ADMITTED to the extent the plaintiff claimed he injured his right hand in March 1997 and received x-rays in December 1997.  The remainder of the paragraph is DENIED.

76.    Paragraph 76 is DENIED.

77.    Paragraph 77 is ADMITTED to the extent plaintiff underwent surgery in January 1999.  The remainder of the paragraph is DENIED.

78.    Paragraph 78 is ADMITTED to the extent plaintiff's medical file indicates he came to Health Services at various institutions several times complaining of pain in his right hand. The remainder of the paragraph is DENIED.

79.    Paragraph 79 is DENIED.

80.    Paragraph 80 is ADMITTED to the extent plaintiff claims he was injured in March 1997 and received x-rays in December 1997.  The remainder of the paragraph is DENIED.

8

81.  Paragraph 81 is ADMITTED to the extent plaintiff underwent surgery in January 1999.  The remainder of the paragraph is DENIED.

82.  Paragraph 82 is DENIED.

83.  Paragraph 83 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

84.  Paragraph 84 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

85.  Paragraph 85 is DENIED.

86.  Paragraph 86 is DENIED to the extent the plaintiff was in pain "the whole duration" and suffered needlessly.  The remainder of the paragraph is a conclusion of law to which no response is required.  To the extent deemed factual, however, DENIED.

87.  Paragraph 87 is DENIED.

88.  Paragraph 88 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

89.  Defendants are unable to admit or deny paragraph 89 as it contains a hypothetical of when the plaintiff may have received care in the private sector.

90.  Paragraph 90 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

91.  Paragraph 91 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

9

92.  Paragraph 92 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

93.  Paragraph 93 is DENIED to the extent plaintiff concludes the individual defendants were deliberately indifferent to his injury.  The remainder of the paragraph contains conclusions of law to which no response is required.

94.  Paragraph 94 contains conclusions of law to which no response is required.  To the extent deemed otherwise, the paragraph is DENIED.

95.  Paragraph 95 is DENIED.

96.  Paragraph 96 states conclusions of law that require no response; to the extent deemed factual, however, DENIED.

97.  Paragraph 97 is DENIED.

98.  Paragraph 98 contains plaintiff's prayer for relief rather than an allegation of fact for which an answer is required.

99.  Paragraph 99 contains plaintiff's prayer for relief rather than an allegation of fact for which an answer is required.

100.  Paragraph 100 contains plaintiff's prayer for relief rather than an allegation of fact for which an answer is required.  To the extent deemed factual, however, DENIED.

101. Paragraph 101 contains plaintiff's prayer for relief rather than an allegation of fact for which an answer is required.

102. Paragraph 102 contains plaintiff's prayer for relief rather than an allegation of fact for which an answer is required. To the extent deemed factual, however, DENIED.

### DEFENDANTS' AFFIRMATIVE DEFENSES

### First Defense

No conduct of any officers, agent, servant, and/or employee of the United States was the proximate cause of any injury to the plaintiff.

### Second Defense

The injuries and damages alleged in the complaint were proximately caused, if at all, by the intervening or superceding act of someone other than an officer, agent, servant, or employee of the United States.

### Third Defense

The injuries and damages alleged in the complaint were proximately caused, if at all, by the fault or negligent acts or omissions of the plaintiff.

### Fourth Defense

If it is found that plaintiff's injuries were the result of the fault or negligence of any person for whom the United States could or might be held responsible, which is denied, plaintiff's

injuries were also caused by, contributed to, or aggravated by plaintiff's own fault or negligence, and the United States is entitled to have any recovery against it reduced accordingly.

### Fifth Defense

Plaintiff's damages, if any, are limited by 28 U.S.C. §§ 2674 and 2675(b).

### Sixth Defense

This action may be barred, in whole or in part, by the statute of limitations.

### Seventh Defense

This action is barred, in whole or in part, due to plaintiff's failure to exhaust all available administrative remedies.

### Eighth Defense

The amended complaint, in whole or in part, fails to state a claim.

## Ninth Defense

Defendants are entitled to qualified immunity.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

*Matthew E. Haggerty*

MATTHEW E. HAGGERTY
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA  17701

Date: October 17, 2002

# Table Of Contents

Page No.

1.)  Table of Authorities ........................  i

2.)  Amended Memorandum Of Law To Civil
     Rights Complaint ...........................  1

3.)  Jurisdictional Statement ...................  3

4.)  Parties ....................................  3

5.)  Statement Of Issues Presented .............  6

6.)  Statement Of Facts ........................  7

7.)  Claims For Relief .........................  12

8.)  Issue No.1-Additional Argument To Original
     Complaint:  Excessive Physical Force By
     Staff .....................................  14

9.)  Issue No.2-Deliberate Indifference To
     Serious Medical Need ......................  17

10.) Issue No.3-Cruel And Unusual Punishment
     Standard Eighth Amendment .................  19

11.) Qualified Immunity And Defendants ..........  24

12.) Demand For Judgement .......................  25

13.) Injunctive Relief ..........................  26

14.) In Conclusion ..............................  26

15.) Affidavit In Support Of Civil Rights
     Complaint .................................  28

16.) Certificate Of Service ....................  29

## Table Of Authorities

Page No.

1.)  Anderson V. Creighton, 483 US 635, 640, 107
     SCT 3034, 97 L.Ed.2d 523 (1987) ...................    24

2.)  Brownlee V. Conine, 957 F2d 353, 354 (7th
     Cir. 1992) .........................................    25

3.)  Boretti V. Wiscomb, 930 F2d 1150, 1154-55
     (6th Cir. 1991) ....................................    23

4.)  Brown V. Hughes, 894 F2d 1533 (11th Cir. 1990) ...    21

5.)  Carlson V. Green, 446 US 14, 22-23 100 SCT
     1468 (1980) ........................................    17

6.)  Cummings V. Malone, 995 F2d 817, 822 (8th Cir.
     1993) ..............................................    16

7.)  Conn V. Gabbert, _____ US _____,
     _____, 119 SCT 1292, 1295, 143 L.Ed.2d 399
     (1999) .............................................    24

8.)  Estelle V. Gamble, 429 US 97, 104, 97 SCT 285,
     50 L.Ed.2d 251 (1976) .............................    17
                                                            20
                                                            23

9.)  Fisher V. Koehler, 692 F.Supp. 1519, 1563
     (S.D.N.Y. 1988), aff'd 902 F2d 2 (2nd Cir.
     1990) ..............................................    15

10.) Farmer V. Brennan, _____ US _____, 114
     SCT 1970, 1977 (1994) .............................    16
                                                            17

11.) Farinaro V. Coughlin, 642 F.Supp. 276, 279
     (S.D.N.Y. 1986) ....................................    23

12.) Guy V. U.S., 492 F.Supp 571 (N.D. Cal.1980) ......    14
                                                            15

13.) Hudson V. McMillian, 503 US 1, 112 SCT 995,
     998-99 (1992) ......................................    15
                                                            16
                                                            22

## Table Of Authorities (Cont'd)

Page No.

14.) Haines V. Kerner, 404 US 519, 30 L.Ed2d 652,
92 SCT 594 (1972) ................................  2

15.) Howard V. Barnett, 21 F3d 868, 872, (8th Cir.
1994) ..........................................  16

16.) Henderson V. Harris, 672 F.Supp. 1054, 1063
(N.D.ILL. 1987) ................................  17

17.) Hathaway V. Coughlin, 37 F3d 63, 67 (2nd Cir.
1994) ..........................................  23

18.) Hamilton V. Endell, 981 F2d 1062, 1066 (9th
Cir. 1992) .....................................  25

19.) Harlow V. Fitzgerald, 457 US 800, 818, 102 SCT
2727, 73 L.Ed.2d 396 (1982) ....................  24

20.) In re Kemmler, 136 US 436, 447, 10 SCT 930, 34
L.Ed.2d 519 (1890) .............................  20

21.) Langley V. Coughlin, 888 F2d 252, 254 (2nd Cir.
1989) ..........................................  21
                                                   22

22.) Lawler V. Marshal, 898 F2d 1196, 1199 (6th Cir.
1990) ..........................................  25

23.) Monmouth County Correction Institution Inmates
V. Lanzaro, 834 F2d 326, 349 (3rd Cir. 1987)
cert. den., 486 US 1066 (1988) .................  21

24.) McElligott V. Foley, 182 F3d 1248 (11th Cir.
1999) ..........................................  19
                                                   20

25.) McGuckin V. Smith, 974 F2d 1050 (9th Cir. 1992) ..  22
                                                          23

26.) Romano V. Howarth, 998 F2d 101, 106 (2nd Cir.
1993) ..........................................  16

27.) Torraco V. Maloney, 923 F2d 231 (1st Cir. 1991) ..  23

## Table Of Authorities (Cont'd)

                                                                Page No.

28.)  U.S. V. Muniz, 374 US 150, 165, 83 SCT 1850
      (1963) ..............................................    14

29.)  Whitley V. Albers, 475 US 312, 320-21, 106
      SCT 1078 (1986) ....................................    16

30.)  Williams V. Omodt, 640 F.Supp. 120, 123-24
      (D.Minn. 1986) .....................................    3

31.)  Washington V. Dugger, 860 F2d 1018, 1021 (11th
      Cir. 1978) .........................................    23

## Rules Of Civil Procedure; Statutes; Other:

                                                                Page No.

1.)   Federal Rules Civil Procedure, Rule 38(b) .........    2
      Rule 8 (a) .........................................    3

2.)   Title 28 USC, § 1331 ..............................    3
      § 1391(a)(b) .......................................    3

3.)   Title 28 USC §§ 1346 (b), 2671-80 F.T.C.A. ........    3

4.)   Title 18 USC, § 4042 ..............................    12
                                                             14

5.)   Title 28 USC, § 1746 ..............................    28

Eighth Amendment, U.S. Constitution - throughout

In The United States District Court
For The Middle District Of Pennsylvania
(Scranton)

|                                           |     |                                                                                                               |
|-------------------------------------------|-----|---------------------------------------------------------------------------------------------------------------|
|                                           | )   | Civil No. _____                                                                                         |
| Manuel Ramos,                             | )   |                                                                                                               |
|     Plaintiff,        | )   | District of Columbia Civil                                                                                    |
|                                           | )   | Case No. 00-1655(RWR)                                                                                          |
| V.                                        | )   | Transferred To Pennsylvania                                                                                   |
|                                           | )   | By Order Of Court, September                                                                                  |
| Margaret Harden, Warden F.C.I.            | )   | 18, 2000                                                                                                       |
| Allenwood, PA; Dr. McGlori,               | )   |                                                                                                               |
| Medical Doctor, FCI Allenwood;            | )   |                                                                                                               |
| Maximo R. Velasco Jr., Medical            | )   |                                                                                                               |
| Doctor, USP Lewisburg;                    | )   | Jury Trial Demanded                                                                                           |
| Anthony Bussanich, Medical Doc-           | )   |                                                                                                               |
| tor USP Lewisburg, PA;                    | )   |                                                                                                               |
| Peter J. Terhaar, D.O., Consulting        | )   |                                                                                                               |
| Surgeon, Bloomsburg Hospital,             | )   |                                                                                                               |
| Bloomsburg, PA.,                          | )   |                                                                                                               |
|     Defendants.       | )   |                                                                                                               |
|                                           | )   |                                                                                                               |

**Amended Memorandum Of Law In Support Of Civil Rights Complaint
Under Biven's V. Six Unknown Agents, 403 US 388 (1971); Title
28 USC, §§ 1331, 1391(a)(b) and Federal Tort Claims Act,
Title 28 USC, §§ 1346(b), 2671-80**

&#9312;

      **Comes Now**, Manuel Ramos, (hereinafter plaintiff) pro se,
before the United States District Court, For The Middle District
Of Pennsylvania, (Scranton), respectfully to submit the above
captioned Amended Memorandum Of Law In Support Of Civil Rights
Complaint and Federal Tort Claim.

&#9313;

      Brought against the above named defendants for previous
and future violations of plaintiff's right to be free from cruel
and unusual punishment secured by the Eighth Amendment of the
Constitution, as well as for violating plaintiff's right to not
be treated with deliberate indifference towards plaintiff's

serious medical needs by delaying treatment over many months
for a broken right hand which caused the tendon to splay when
it finally healed on its own.

(3)     Brought against the above named defendants for the use
of excessive unreasonable force by an officer which intention-
ally broke plaintiff's hand _after_ he was subdued and handcuffed
by pulling plaintiff's thumb until it broke.

(4)     Brought against the above named defendants for failing to
investigate this incident, turn over the officer's name involved
in this incident, turn over the accident report on this incident,
and for not recieving adequate medical care after this incident
took place.

(5)     These defendants were acting under color of federal law
and their individual capacities.

(6)     Pursuant to **Fed.R.Civ.P., Rule 38(b)**, plaintiff demands
the Court issue an Order for a jury trial on the meritorious
issues presented herein.

(7)     The allegations in this complaint are to be held in a
less stringent standard than formal pleadings drafted by an
attorney due to plaintiff's inexperience with the law, and in-
ability to speak English; **Haines V. Kerner**, 404 US 519, 30 LEd
2d 652, 92 SCT 594 (1972).

(2)

### Jurisdictional Statement

⑧     The basis for the Court's jurisdiction pursuant to **Fed. R.Civ.P., Rule 8(a), is Title 28 USC, §1331** due to violations of the Eighth Amendment to the Constitution, and defendant's deliberate indifference towards plaintiff's serious medical needs as outlined above; **Title 28 USC, §1391(a)(b)** for damages and personal jurisdiction; **Title 28 USC, §§1346(b), 2671-80, Federal Tort Claims Act.**

### Parties:

⑨     1.) Margaret Harden, Warden of F.C.I. Allenwood, PA.

She is a citizen of Pennsylvania

Address: P.O. Box 2000, White Deer, Pennsylvania 17887

The defendant, at the time this complaint arose was acting under color of federal law.

This defendant failed to investigate the negligent act of one of her employees, an officer, which broke plaintiff's right hand after the plaintiff was secured in handcuffs.

This defendant failed to turn over the officers name involved in this incident as well as the accident report on this incident and should be held liable; **Williams V. Omodt, 640 F.Supp. 120, 123-24 (D. Minn. 1986).**

This defendant failed to insure plaintiff recieved adequate medical care for his broken hand violating plaintiff's right to be free from cruel and unusual punishment.

She is responsible in her official and individual capacity.

(3)

⑩ 2.) Doctor McGlori, Medical Doctor at F.C.I. Allenwood, PA.

He is a citizen of Pennsylvania

Address: P.O. Box 2000, White Deer, Pennsylvania 17887

The defendant at the time this complaint arose was acting

under color of federal law.

This defendant is liable for deliberate indifference to

plaintiff's serious medical needs. This defendant did not

adequately treat plaintiff's broken hand. Did not complete

the necessary xray needed to show plaintiff had an injured

tendon. Did not insure plaintiff recieved the needed sur-

gery of said tendon in time to prevent this tendon from

becoming atrophied so plaintiff would not have needed the

tendon graft surgery he eventually needed to have.

This defendant is responsible in his official and indivi-

dual capacity.

⑪ 3.) Maximo R. Velasco Jr., Medical Doctor at U.S.P. Lewisburg

PA.

He is a citizen of Pennsylvania

Address: P.O. Box 1000, Lewisburg, PA 17837

The defendant, at the time this complaint arose was acting

under color of federal law.

This defendant is liable for deliberate indifference to

plaintiff's serious medical needs; (Same as above)

This defendant is responsible in his official and indivi-

dual capacity.

(4)

(12)  4.) Anthony Bussanich, Medical Doctor at U.S.P. Lewisburg, PA.

He is a Citizen of Pennsylvania

Address: P.O. Box 1000, Lewisburg, PA 17837

The defendant, at the time this complaint arose was acting under color of federal law.

This defendant is liable for deliberate indifference to plaintiff's serious medical needs, knowing plaintiff had a broken right hand, splayed tendon, and chose to wait many months before correcting the injury. A surgery that turned out to be very unsuccessful, causing plaintiff to lose the normal use of his hand permenantly. Causing plaintiff to suffer in pain needlessly. Has caused plaintiff extreme mental and physical pain to the point of being fearful of being treated anymore by Bureau of Prisons doctors.

This defendant is responsible in his official and individual capacity.

(13)  5.) Peter J. Terhaar, D.O., Consulting Surgeon, Surgeon at Lewisburg, PA.

He is a citizen of Pennsylvania

Address: 549 E. Fair Street, Bloomsburg, PA 17815

The defendant, at the time this complaint arose was acting under color of federal and state law.

This defendant performed an experimental surgery on plaintiff's splayed tendon in his right hand.

(5)

This defendant did not inform plaintiff the surgery was an experimental surgery and was negligent in performing this surgery.

Plaintiff has lost the normal used of his right hand because of this malpractice, has permenant numbness, and is now fearful of all Bureau of Prison doctors because of this experimental surgery.

This defendant has shown deliberate indifference to plaintiff's serious medical needs by causing plaintiff great harm with his "monkey experiment," permenantly injuring plaintiff.

## Statement Of Issues Presented

(14) The defendants herein are responsible in their official and individual capacities for violating plaintiff's right to be free from cruel unusual punishment and deliberate indifference to plaintiff's serious medical needs.

(15) The officer in question, whom subdued plaintiff in the March 26, 1997 altercation with another inmate used unreasonable and excessive force by twisting plaintiff's thumb and breaking his thumb in doing so. Plaintiff was not struggling with the officer at the time.

(16) Though plaintiff complained to medical staff about severe pain, swelling, the defendants only prescribed Motrin then did not record plaintiff's many complaints about this injury in his medical records.

(17) The plaintiff complained of severe pain 20+ times in the

(6)

records and many more times off the record.

(18)    Plaintiff did not recieve the needed surgery on a splayed tendon, (Caused by the broken hand) in his right thumb for over 20 months causing said tendon to atrophy, making it impossible to be re-attached.

(19)    A radical experimental surgery was then done which to this date has done nothing to improve plaintiff's medical condition.

(20)    The defendants deliberately transferred plaintiff to several different federal prisons in a short time to avoid giving plaintiff the proper medical care, i.e., surgery, physical therapy.

(21)    Plaintiff has suffered many months of physical as well as mental anguish over this trauma and has been told he will have medical problems with his right hand for the rest of his life.

## Statement Of Facts

(22)    March 26, 1997, while at F.C.I. Allenwood, Pennsylvania, plaintiff was involved in an altercation with another inmate and was subdued by an officer, (Name unknown) and handcuffed. The officer while handcuffing plaintiff twisted plaintiff's right thumb even though plaintiff was not struggling with him and severely injured plaintiff's thumb.

(23)    For fifteen (15) days plaintiff complained of severe pain in his right hand and thumb only to be told to take massive doses of Motrin.

(24)    Doctor McGlori, at F.C.I. Allenwood informed plaintiff he

(7)

would order an xray of his injured right hand.

(25) May 21, 1997, plaintiff was transferred from F.C.I. Allenwood
to U.S.P. Allenwood and still not had the needed xray of his
right hand. Again plaintiff was told to continue taking Motrin
which plaintiff complained upset his stomach.

(26) August 8, 1997, plaintiff again complained of severe right thumb
wrist and hand pain, refused to take anymore Motrin because of
stomach pain and asked for something to be done. At this time
a deformity was noted and again an xray was ordered.

(27)     Plaintiff complained many times of being in pain from his
hand only to be told to take Motrin. Everywhere in his medical
records where Motrin was given reflects the times his hand com-
plaints were not recorded.

(28) November 19, 1997, plaintiff was transferred from U.S.P. Allen-
wood to U.S.P. Lewisburg and continued to complain of right
hand pain.

(29) December 4, 1997, complaint of right hand pain was noted and an
xray was completed which showed a small avulsion fracture at
the distal first metacarpal.

(30) February 9, 1998, plaintiff was again examined for severe right
hand pain and was recommended to see the orthopedic consultant
and surgical repair of the tendon was recommended.

(31) February 22, 1998, plaintiff complained of severe pain again.

(32) March 2, 1998, Consultation was confirmed by Dr. Velasco for
surgical repair of tendon to the bone.

(33) March 3, 1998, plaintiff again complained of severe pain in his right hand, and thumb.

(34) July 21, 1998, plaintiff complained of right hand and thumb pain.

(35) January 7, 1999, plaintiff was finally taken to the Bloomsburg Hospital, Bloomsburg, PA, to have surgery performed by Peter J. Terhaar, D.O., for chronic gameskeeper's thumb, right upper extremity (Grade III), which was a reconstruction ulnar collateral ligament utilizing a **palmaris longus tendon graft** with suture anchors.

(36) January 17, 1999, plaintiff complained of severe pain in his right hand and wrist.

(37) January 18, 1999, plaintiff complained of severe pain in his right hand and wrist.

(38) January 20, 1999, plaintiff complained of severe pain in his right hand and wrist.

(39) February 5, 1999, plaintiff complained of severe pain in his right hand and wrist.

(40) February 22, 1999, plaintiff was transferred from U.S.P. Lewisburg, PA, to U.S.P. Lompoc, CA.

(41) February 25, 1999, plaintiff complained of severe pain in his right hand and wrist.

(42) March 8, 1999, plaintiff complained of severe pain in his right hand and wrist.

(9)



(43) /8 April 19, 1999, plaintiff complained of severe pain in his right hand and wrist.

(44) /9 May 19, 1999, plaintiff complained of severe pain in his right hand and wrist and was told by a consulting doctor (Name is unknown) that plaintiff had Carpal Tunnel Syndrome & Median Nerve Entrapment. This consultant informed plaintiff that if he had another surgery he would most likely have big problems with his hand from that point on. This consultant told plaintiff that the surgery already performed was an "experimental" surgery and should not have been done.

(45) 20 May 28, 1999, plaintiff again complained of severe right hand and wrist pain.

(46) 2/ March 15, 1999, palintiff filed a Tort claim with the Northeast Regional Office ( Claim No. T-WXR-99-88) with a claim for monetary compensation for his injuries.

(47) 22 October 7, 1999, plaintiff was transferred from U.S.P. Lompoc, CA, to U.S.P. Florence, CO.

(48) 23 While at U.S.P. Florence plaintiff complained of severe right hand pain and was taken into Pueblo to see a consulting doctor, (Name unknown, plaintiff cannot get his medical records from the medical department at Florence) and this doctor again gave the diagnosis of Carpal Tunnel syndrome and recommended plaintiff have the surgery but plaintiff declined out of fear.

(49) January 7, 2000, Henry J. Sadowski, Regional Counsel for the

(10)

Northeast Regional Office denied plaintiff relief under his Tort claim.

(50) May 23, 2000, U.S.P. Transferred plaintiff to the Medical Center for Federal Prisoners, Springfield, MO, wherein plaintiff was again examined by the doctors and found to have the above medical diagnosis of Carpal Tunnel Syndrome and Median Nerve Entrapment. Plaintiff declined to have another surgery out of fear from the past experimental surgery performed on him.

(51) June 15, 2000, plaintiff was returned to U.S.P. Florence, CO, for refusing the surgery at Springfield, MO. where he remains.

(52) June 19, 2000, plaintiff filed his initial Civil Rights Complaint ("U.S. District Court, For The District Of Columbia, Case No. 00-1655(RWR)) which was filed in the wrong venue.

(53) September 20, 2000, the U.S. District Court For The District Of Columbia filed a Memorandum and Transfer Order ordering transfer of plaintiff's complaint to the appropriate District Court For The Middle District Of Pennsylvania. In the Court's Order the Court never specified which Court in Pennsylvania the case would be transferred to.

(54) October 19, 2000, plaintiff filed a Motion For Extention Of Time To Amend Civil Rights Complaint, was unsure which Court in Pennsylvania to file this motion and filed the motion in the Middle District Of Pennsylvania, Williamsport, Pennsylvania, with instructions to the Clerk to please transfer the motion

(11)

to the appropriate Court if that was not the Court for it to
be filed in.

(55)  October 20, 2000, plaintiff recieved a letter from the Clerk
for the United States District Court, District Of Columbia,
addressed to the Clerk for the United States District Court
For The Middle District Of Pennsylvania, P.O. Box 1148, Scran-
ton, Pennsylvania, 18501, informing the Clerk of the transfer
to that Court of plaintiff's Civil Right's Complaint.

## Claims For Relief

(56)  Plaintiff was injured by a Correctional Officer using un-
reasonable and excessive force causing trauma to plaintiff's
right thumb and hand. Before this injury plaintiff did not ever
have these problems with his hand.

(57)  Pursuant to **Title 18, USC, §4042,** the duty of the Bureau
of Prisons under federal law is to:

(2) provide suitable quarters and provide for the **safe-
keeping, care,** and subsistence of **all persons** charged with
or convicted of offenses against the United States, or held
as witnesses or otherwise; (3) provide for the **protection,**
instruction, and discipline of **all** persons charged or con-
victed of offenses against the United States.

(58)  This officer (Whom plaintiff cannot get his name) was
negligent in performing his duty by maliciously and sadisti-
cally using force to break plaintiff's hand after he was cuf-
fed and subdued at the end of an altercation with another

(12)

inmate. This officer as well as the Warden should be liable for the injuries sustained by plaintiff.

(59)     From March 26, 1997, it took until December, 1997 before plaintiff could get an xray of his hand which showed the hand was broken.

(60)     From March 26, 1997, it took until January 7, 1999 before plaintiff recieved the needed tendon repair to his right hand. If plaintiff would have recieved the proper medical care he is entitled to the tendon would have been repaired much sooner preventing the tendon from atrophing so plaintiff would not have needed the extensive tendon **graft** done in the surgery. This amounts to a deliberate indifference to plaintiff's serious medical needs by the defendants supporting plaintiff's claim of cruel and unusual punishment secured by the Eighth Amendment of the Constitution.

(61)     Plaintiff complained many times on the record as well as off the record over many months about his injury before the medical staff took the necessary action. The medical staff only told plaintiff to take massive doses of Motrin instead of giving plaintiff the correct treatment which should have been surgery immediately after the injury occurred to prevent the tendon from atrophying. The course of treatment chosen has left plaintiff permanantly disabled. Plaintiff has been told he will have problems with his hand for the rest of his life.

(62)    The foregoing substantially shows the defendants deliber-
ate indifference towards plaintiff's medical needs and consti-
tutes the unnecessary and wanton infliction of pain proscribed
by the Eighth Amendment.

(63)    The defendants intentional delay in a confirmed diagnosis
of many months before plaintiff could recieve the needed ten-
don surgery constitutes an Eighth Amendment violation for gross-
ly inadequate medical care.

## Issue No. 1

### Additional Argument To Original Complaint
### Excessive Physical Force By Staff

(64) Discussion:

As stated above the duty of the Bureau of Prisons under
federal law is to:

(2) provide suitable quarters and provide for the safe-
keeping, care, and subsistence of all persons charged with or
convicted of offenses against the United States, or held as
witnesses or otherwise; (3) provide for the protection, in-
struction, and discipline of all persons charged with or con-
victed of offenses against the United States; **Title 18 USC,
§4042.**

(65)    Violations of this duty are actionable under the **Federal
Tort Claims Act; United States V. Muniz**, 374 US 150, 165, 83
SCT 1850 (1963); **Guy V. United States**, 492 F. Supp. 571 (N.D.

(14)

Cal. 1980).

(66)    The officer in question used excessive force against plain-
tiff which was not justified by any legitimate prison manage-
ment need, and was completely out of proportion to that need;
**Hudson V. McMillian**, 503 US 1, 112 SCT 995, 998-99 (1992).

(67)    Plaintiff was handcuffed when the officer in question
broke plaintiff's thumb maliciously and sadistically using
force to cause harm to plaintiff and in a case such as plain-
tiff's the contemporary standards of decency always are vio-
lated;  **supra.**, **Hudson V. McMillian**, 503 US, at 1000.

(68)    By using excessive force the officer violated plaintiff's
right to be free from cruel and unusual punishment.  On Court
found an Eight Amendment violation where "the Officers acted,
if not 'maliciously and sadistically', with at least a vicious-
ness going beyond' a good faith effort to maintain or restore
discipline;  **Fisher V. Koehler**, 692 F. Supp. 1519, 1563 (S.D.
N.Y. 1988), aff'd 902 F2d 2 (2nd Cir. 1990).

(69)    Every person, including an incarcerated felon, has the
right to be free from the fear of offensive bodily contact and
to be free from actual offensive bodily contact.  Any person
who violates either of these rights can be held liable, both
civilly and criminally.

(15)

(70)     The officer in question was reckless in how he treated plaintiff which constitutes an Eighth Amendment violation for the officer knew and disregarded an excessive risk to plaintiff's health and safety when he intentionally broke plaintiff's hand; Farmer V. Brennan, _____ US _____, 114 SCT 1970, 1977 (94) at 1979.

(71)     The primary question for Courts to answer is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm;" Hudson V. McMillian, at 998; Whitley V. Albers, 475 US 312, 320-21, 106 SCT 1078 (86); Howard V. Barnett, 21 F3d 868, 872 (8th Cir. 1994); Cummings V. Malone, 995 F2d 817, 822 (8th Cir. 1993); Romano V. Howarth, 998 F2d 101, 106 (2nd Cir. 1993). The fact that the officer in question intentionally twisted and pulled on plaintiff's thumb establishes an unnecessary and wanton infliction of cruel and unusally punishment.

(72)     The officer in question could very well be found liable for this injury when presented to a jury and the failure of the warden to investigate this officers conduct or to give plaintiff the officers name also makes the warden directly responsible for this injury.

(73)    Plaintiff states his Federal Tort Claim and this Biven's
Action are separate remedies under the federal law, but can
be joined in the same lawsuit; **Henderson V. Harris**, 672 F.Supp.
1054, 1063 (N.D. Ill. 1987); **Carlson V. Green**, 446 US 14, 22-23,
100 SCT 1468 (1980).


### Issue No.2

(74)    Deliberate Indifference To Serious Medical Need
Discussion:

        In order for a plaintiff to support a claim of
deliberate indifference towards his serious medical needs he
must show three (3) components established in **Estelle V. Gamble**,
429, US 97, 104, 97 SCT 285, 50 L.Ed.2d 251 (1976) that were
further clarified by the Supreme Court in **Farmer V. Brennan**, 551
US 825, 114 SCT 1970, 128 L.Ed.2d 811 (1994) and are (1) sub-
jective knowledge of arisk of serious harm; (2) disregard of
that risk; (3) by conduct that is more than mere negligence.

(75)    1). **Subjective Knowledge of a Risk of Serious Harm,** exists in
the present case before the Court. plaintiff was injured by the
officer in March 1997, and complained about his hand injury many
times only to be told to take massive doses of Motrin.  The
defendants did not complete the ordered X-Ray of plaintiff's
injury until December 1997, so plaintiff was left to suffer

(17)

needlessly without the proper care for this injury for many months before the diagnosis for a splayed tendon was made.   In the interin the tendon that should have been repaired soon after plaintiff's injury had atrophied to the point it could no longer be re-attached properly requiring the graft surgery plaintiff had undergone.

(76)    The defendant's as professional medical personnel knew or should have known the risks associated with serious injuries as plaintiff incurred and did not complete the diagnostic testing required for such an injury.

(77)    It is further shown in the records that plaintiff did not have the surgery to repair his torn and spalyed tendon until January 7, 1999 almost two (2) years after the injury occurred further causing a great possibility of permanent damage to plaintiff's nerve functions associated with such an injury.

(78)    Plaintiff did complain about severe pain and numbness many times in the record as well as many times off the record without receiving the adequate medical care.

(79)    2.)  **Disregard of that Risk;**  exists in this case and is shown in the medical records in delaying plaintiff's needed surgery to repair his splayed tendon knowing he needed something to be done.

(80)    3). **By conduct that is More than Mere Negligence**.  The defen-
dent's were made well aware that plaintiff sustained a serious
injury in March, 1997 and ordered the needed X-ray of his hand
but failed to do the X-ray until December, 1997.

(81)    Plaintiff did not have his tendon repaired until January,
1999 and by this time the tendon in question was atrophied beyond
re-attachment.  Plaintiff then had to have the surgical graft
done which failed to correct plaintiff's injury, only causing
further problems.

(82)    This conduct by the defendant's was not mere negligence,
but constituted grossly inadequate care.  The defendants refusal
to treat plaintiff for such a long period of time and the choice
made, i.e., graft surgery, shows a substantial deliberate in-
difference towards the care and safety of plaintiff's medical
health;  See **McElligott V. Foley, 182 F3d 1248 (11th Cir. 1999),
at 1254-55.**

## Issue No.3

(83)    Cruel and Unusual Punishment Standard Eighth Amendment
Discussion:

Inthe case **McElligot**, at 1257, the Eleventh Circuit
held:

> " **A core principle of eighth American juris-**
> **prudence in the area of medical care is that**
> **prison officals with knowledge of the need**
> **for care may not, by failing to provide care,**

cause a prisoner to needlessly suffer
the pain resulting from his or her
illness."

and,

(84) "In **Estelle**, the Supreme Court recognized that
the Eighth Amendment requires the government
"to provide medical care for those whom it is
punishing by incarceration" precisely because
the failure to do so," may actually produce
physical 'torture or a lingering death'" or,
[i]n less serious cases ... may result in pain
and suffering which no one suggests would serve
any penological purpose." The Court cited;
**Estelle**, 429 US, at 103, 97 SCT 285 (Quoting
**In re Kemmler**, 136 US 436, 447, 10 SCT 930, 34
L.Ed. 519 (1890)).

(85) Plaintiff has shown by facts in the record that the
defendants were deliberately indifferent towards plaintiff's
medical needs. The plaintiff had a broken hand and a torn
tendon of which plaintiff could not receive treatment for
twenty (20) months or more. A torn tendon that was eventually

(20)

surgically repaired with a graft due to the fact the tendon torn had atrophied over such a long period of time.

(86) The plaintiff **was** in pain the whole duration and suffered needlessly. This was a serious medical need and the fact that certain care has been labelled "elective" does not necessarily mean that your need for is not serious; **Monmouth County Correction Institution Inmates V. Lanzaro**, 834 F2d 326, 349 **(3rd Cir. 1987) cert.den., 486 US 1066 (1988).**

(87) These prison officials violated the Eighth Amendment by allowing plaintiff to suffer for a great length of time and delaying his treatment. For this delay plaintiff will now have problems with his hand for the rest of his life. This deliberate indifference and delay renders the defendants liable as if they had inflicted the pain themselves; **Brown V. Hughes**, 894 F2d 1533 (11th Cir. 1990).

(88) In **Langley V. Coughlin**, 888 F2d 252, 254 (2nd Cir. 1989), the Court held:

> "Officials **must** provide reasonably necessary
> medical care ... which **would** **be** available
> to (the prisoner) if not incarcerated."
> Courts have defined "adequate medical
> services" as "services at a level reasonably

commensurate with modern medical science
and of a quality acceptable within prudent
professional standards."

(89)    The foregoing facts and arguments show an Eighth Amendment
violation of cruel and unusual punishment.  Plaintiff would
have received the needed tendon repair surgery, if he was in
the private sector, many months sooner.  In the private sector
plaintiff would have had the X-ray completed most likely the
same day of the injury and this would have shown the splayed
tendon as well as the broken bone.

(90)    In McGuckin V. Smith, 974 F2d 1050 (9th Cir. 1992), at
1059, the Court held:

"The [u]nnecessary and wanton infliction
of pain upon incarcerated individuals
under color of law constitutes a violation
of the Eighth Amendment and is actionable
under 42 USC, § 1983."  Such indifference
may be manifested in two ways.  It may
appear when prison officials deny, delay,
or intentionally interfere with medical
treatment. or it may be shown by the way
in which prison physicians provide
medical care;  Hudson V. McMillian,
supra; at 394.

(22)

(91)    The Court in supra, **McGuckin** at 1059-60 went on to hold:

> **"An individuals daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious need for medical treatment." (citations omitted)**

(92)    Other cases for the Court to review are; **Boretti V. Wiscomb**, 930 F2d 1150, 1154-55 (6th Cir. 1991); **Farinaro V. Coughlin**, 642 F.Supp. 276, 279 (S.D.N.Y. 1986); **Washington V. Dugger**, 860 F2d 1018, 1021 (11th Cir. 1978).

(93)    The defendants knew, or should of known plaintiff had a serious injury and delayed diagnosis as well as treatment for months, not days but months.  A clear case of deliberate indifference leading to cruel and unusual punishment; **Hathaway V. Coughlin**, 37 F3d 63, 67 (2nd Cir. 1994), so clearly inadequate as to amount to a **refusal** to provide essential care; **Torraco V. Maloney**, 923 F2d 231 (1st. Cir. (1991)**,** offending the evolving standards of decency that mark the progress of a maturing society; **Estelle V. Gamble**, 429 US 97, 102, 106, 97 SCT 285, 290, 292, 50 L.Ed.2d 251 (1976).

(23)

## Qualified Immunity & Defendants

(94)    It is clear the above defendants are not entitled to
qualified immunity.  As the Supreme Court has explained,
qualified immunity seeks to ensure that defendants reasonably
can anticipate when their conduct may give rise to liability,
by attaching liability only if the contours of the right's
violated are sufficiently clear that a reasonable official
would understand that what he is doing or not doing violates
that right;  **Conn V. Gabbert**, _____ US _____,
_____, 119 SCT 1292, 1295, 143 L.Ed.2d 399 (1999), at
1295 (Quoting **Harlow V. Fitzgerald**, 457 US 800, 818, 102 SCT
2727, 73 L.Ed.2d 396 (1982).  This is not to say that an
official action is protected by qualified immunity unless the
very action in question has been held unlawful;  but it is to
say that in the light of preexisting law the unlawfulness must
be apparent as in the case now at bar;  **Anderson V. Creighton**,
483 US 635, 640, 107 SCT 3034, 97 L.Ed.2d 523 (1987).

(95)    There is sufficient evidence for a jury to conclude that
all of the defendants were delibertately indifferent to plain-
tiff's serious medical needs and substantial suffering over
many months.  The defendants had fair warning that their
conduct violated the Eighth Amendment cruel and unusual punish-
ment clause of the Constitution.  Plaintiff has a clearly

established right to adequate medical treatment and prison
officials who deliberately ignore the serious medical needs
of inmates cannot claim that it was not apparent to a reasonable
person that such actions violated the law; **Hamilton V. Endell**,
981 F2d 1062, 1066 (9th Cir. 1992).

(96)   Federal Court complains generally need only give "fair
notice" of what the plaintiff's claim is and the grounds upon
which it rests; **Lawler V. Marshal**, 898 F2d 1196, 1199 (6th Cir.
1990);  accord, **Brownlee V. Conine**, 957 F2d 353, 354 (7th Cir.
1992).

### Demand For Judgement

Wherefore:

(97)       The foregoing establishes defendnats violated
clearly established rights to medical treatment with un-
reasonable delay constituting deliberate indifference to
said medical treatment, excessive force by an officer
wherein plaintiff suffered permenant damage from the incident,
violating plaintiff's right to be free from cruel and unusual
punishment.  Plaintiff demands relief in the following:

(98)       Plaintiff moves this honorable Court to grant
him trial by jury on the above violation of law and grant him
actual or nominal damages to be determined by said jury for
his out of pocket expenses as well as for mental and physical
suffering to begin at five million ($5,000,000) dollars.

(99)  Plaintiff moves the Court to grant him punitive damages from each of the defendants, to be determined by a jury or five million dollars ($5,000,000) per each defendant for their wrongful acts were/are done intentionally, and maliciously.

## Injunctive Relief

 An Order for the Bureau of Prisons to refrain from re-taliation for the filing of this Civil Rights Complaint, and prevent the Bureau of Prisons from transferring plaintiff on deisel therapy for filing said complaint.

(101)  Plaintiff requests the Court order an Expansion of the Record to include the following additional materials:

(1)  Complete copies of **all** Medical Records in plaintiff's files.

(2)  The employment history records of all individually named defendants to include disciplinary actions taken against defendants.

(3)  Any and all new discovery produced by the defendants, and, or, their attorneys.

## In Conclusion

 Wherefore,

Plaintiff has established rights violated by

(26)

defendants were violated intentionally  and maliciously, and
prays the Court grant releif as requested and set a trial date
before a jury.



Dated this ___G_____ day of _NOVEMBER_____, 2000.




                              Respectfully Submitted,




                              M. RAMOS_____
                              Manuel Ramos, pro se.
                              Register Number 37563-053
                              U.S. Penitentiary
                              P.O. Box 7000
                              Florence, CO  81226

## Affidavit In Support Of Civil Rights Complaint

Pursuant to Title 28 USC, § 1746, the affiant, Manual Ramos, swears under penalty of perjury that the facts stated in the foregoing civil rights complaint are true based on his personal knowledge, and that the facts stated on information and belief are true to the best of his knowledge and belief.

Dated this _____6_____ day of _NOVEMBER_____, 2000.


_McRAMOS_____
Manuel Ramos, pro se.

(28)

## Certificate of Service

I, Manuel Ramos, hereby certify that I have served
_____7_____ true and correct copies of the foregoing
Civil Rights Complaint and supporting motions upon the
defendants, and or their attorney of record, i.e., Clerk
of the Court to be served upon the defendants, (U.S.
Attorney), by placing same in a sealed, postage prepaid envelope
addressed to:


United States District Court
Clerk's Office
Middle District of Pennsylvania
P.O. Box 1148
Scranton, PA  18501


and deposited same in the U.S. Postal Mail at U.S.P.
Florence, P.O. Box 7000, Florence, CO., 81226 on this
_____6_____ day of _____NOVEMBER_____, 2000.



M. RAMOS
_____
Manuel Ramos, pro se.

(29)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. 1:CV-00-1957 |
| | : | (Jones, J.) |
| MARGARET HARDEN, Warden, | : | (Smyser, M.J.) |
| et al., | : | |
| Defendants | : | |

CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on October 17, 2002, she served a copy of the attached

**FEDERAL DEFENDANTS' ANSWER TO THE COMPLAINT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Andrew J. Ostrowski, Esquire
BAILEY, STRETTON & OSTROWSKI
4311 North Sixth Street
Harrisburg, PA 17110

David W. Saba, Esquire
Suite 113, Park Building
400 Third Avenue
Kingston, PA 18704

MICHELE E. LINCALIS
Paralegal Specialist