

**SABA, ENDLER & ASSOCIATES, L.L.P.**
BY:    PATRICK T. O'CONNELL, ESQUIRE
IDENTIFICATION NO. 76539
106 WEST FRONT STREET
BERWICK, PA 18603
(570) 752-5915

ATTORNEY FOR DEFENDANT,
Dr. Peter J. Terhaar

### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | CIVIL NO. 1:-CV-00-1957 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| MARGARET HARDEN, | : | |
| DR. MCGLORI, | : | |
| DR. MAXIMO R. VELASCO, JR., | : | |
| DR. ANTHONY BUSSANICH, | : | JURY TRIAL DEMANDED |
| and DR. PETER J. TERHAAR, | : | |
| | : | |
| Defendants | : | |

### DEFENDANT, DR. PETER J. TERHAAR'S
### MEMORANDUM OF LAW IN SUPPORT OF HIS
### MOTION FOR SUMMARY JUDGMENT

I.    PROCEDURAL HISTORY AND STATEMENT OF FACTS:

Magistrate Judge J. Andrew Smyser issued a Case Management Order on November 25, 2002 (Document 53). The Case Management Order specified that all "discovery shall be planned and commenced so as to be completed by June 16, 2003." The Case Management Order further obligated Plaintiff to submit expert reports to Defendant on or before June 30, 2003. The Case Management Order also specified that any dispositive Motion shall be filed on or before July 15, 2003.

As Plaintiff has not submitted any expert report indicating that Dr. Terhaar committed malpractice, failed to obtain an informed consent before proceeding with the surgery on Plaintiff's hand, or that the surgery was experimental Dr. Terhaar now moves for Summary Judgment.

II.  STATEMENT OF QUESTION INVOLVED:

WHETHER DR. TERHAAR IS ENTITLED TO SUMMARY JUDGMENT DUE TO THE FACT THAT PLAINTIFF HAS NOT DISCLOSED ANY EXPERT REPORT.

Suggested answer: Yes.

III.  ARGUMENT:

A.  STANDARD FOR SUMMARY JUDGMENT:

Rule 56(c) of the Federal Rules of Civil Procedure provides that if the pleadings, depositions, Answers to Interrogatories and Admissions on file,

together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, then a Motion for Summary Judgment may be granted.

The moving party has the initial burden of illustrating for the Court the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made a proper Motion for Summary Judgment, the burden switches to the non-moving party. Under Rule 56(e):

> When a Motion for Summary Judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, Summary Judgment, if appropriate, shall be entered against the adverse party.

In order to establish that an issue is genuine, the non-moving party must proffer evidence such that a reasonable jury could return a verdict in his/her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

    B.    SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF HAS NO EXPERT TESTIMONY TO SUPPORT HIS CLAIMS.

Plaintiff is apparently alleging malpractice and lack of informed consent claims against Dr. Terhaar for a surgery performed on January 7, 1999. This surgery was performed by Dr. Terhaar at the Bloomsburg Hospital, and the nature of the procedure was a repair of a malady known as a gamekeeper's thumb on Plaintiff's right hand (a copy of the report from this operation is attached hereto as Exhibit "A"). Apparently, Plaintiff has never sent this operative report, or any other records for that matter, to any expert to review Plaintiff's claims against Dr. Terhaar.

In order to establish a *prima facie* case of malpractice, the Plaintiff must establish through expert testimony: (1) a duty owed by the physician to the patient; (2) a breach of duty from the physician to the patient; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of the harm. Mitzelfelt v. Kamrin, M.D., 526 Pa. 54, 584 A.2d 888 (1990). A Plaintiff is also required to present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards and that such deviation was the proximate cause of the

4

harm suffered. <u>Brannan v. Lankenau Hospital</u>, 490 Pa. 588, 417 A.2d 196 (1980).

With respect to informed consent, Pennsylvania Courts place the burden upon the Plaintiff to establish through expert testimony the existence of all risks of the chosen treatment, alternative methods of treatment and risks of alternatives as well as causation. In <u>Festa v. Greenberg</u>, 354 Pa. Super. 346, 511 A.2d 1371 <u>appeal denied</u>, 515 Pa. 580, 527 A.2d 541 (1986), the Court specifically held that expert testimony is required to establish to the following three elements:

(1)   The existence of risks in the specific medical procedure;

(2)   The existence of alternative methods of treatment; and

(3)   The attending risks of such alternatives.

Because Plaintiff has failed to obtain expert support for either his

negligence or his informed consent claim, then therefore, Dr. Terhaar is entitled to Summary Judgment in his favor.

        Respectfully submitted,

        SABA, ENDLER & ASSOCIATES, L.L.P.

BY: _____
        PATRICK T. O'CONNELL, ESQ.
        Attorney for Defendant,
        Dr. Peter J. Terhaar
        I.D. # 76539
        106 West Front Street
        Berwick, PA 18603
        (570) 752-5915
        (570) 752-5918 Facsimile

**EXHIBIT "A"**



## THE BLOOMSBURG HOSPITAL
**BH**
BLOOMSBURG, PA 17815

# 39563-053

**REPORT OF OPERATION**

RAMOS, MANUEL
Bill No: 30105068
MR No: 289236

Surgery Date: 01/07/1999
Surgeon: Peter J Terhaar, D.O.
Assistants: None

Attending Physician: Peter J Terhaar, D.O.

Patient Location: 2STH 210

Preoperative Diagnosis: Chronic gamekeeper's thumb, right upper extremity (Grade III).

Postoperative Diagnosis: Chronic gamekeeper's thumb, right upper extremity (Grade III).

Operation: repair of gamekeeper's thumb, right hand, with reconstruction ulnar collateral ligament utilizing a palmaris longus tendon graft with suture anchors. Application of a thumb spica splint.

Findings and Procedures:

Gross pathology: preoperatively, this patient had signs, symptomatology and clinical evidence consistent with the aforementioned diagnosis. He had severe chronic instability involving the right thumb metacarpophalangeal joint. Intraoperatively, the ulnar collateral ligament was noted to be severely attenuated and redundant. It was not suitable for repair; therefore, a palmaris longus graft was taken from the ipsilateral extremity and utilized for reconstruction. This was attached to both the 1st metacarpal as well as the proximal phalanx utilizing suture anchors. Prior to the reconstruction, the joint could be gapped open approximately 45 degrees with very little stress. Intraoperatively after the graft was inserted, 5 degrees of stress was, this was quite stable, and only 5 degrees of excursion was obtainable.

Procedure: the patient was taken to the operating room where he was sterilely prepped and draped in the usual manner. The patient was identified, the operative site was verified. The patient was under general endotracheal anesthesia. The tourniquet was inflated about the right upper arm to 225 mmHg. Attention was turned to the right hand where the curvilinear incision was made over the 1st metacarpophalangeal joint. Sharp dissection carried on down to the extensor expansion. The adductor pollicis tendon and muscle were identified. Close inspection revealed a redundant ulnar collateral ligament underneath. The capsulotomy was then carried out and the proximal metacarpal base as well as the ulnar aspect of the proximal phalangeal base as well as the ulnar aspect of the metacarpal head were freshened up utilizing a rongeur. This was then further freshened utilizing a K-wire to provide a nice bleeding surface for reattachment of the tendon graft. After this was carried out, attention was turned to the palmaris longus which was harvested through two small stab incisions. This was then sutured to the bone with the aid of suture anchors utilizing 2.5 mm Zimmer Statak suture anchors over the metacarpal head and proximal phalanx. An excellent stable construct was achieved. Approximately 5 degrees of excursion could be achieved with radial stress. Following this, the ulnar capsule was imbricated utilizing 4-0 nylon suture sewing part of this into the adductor pollicis tendon. Irrigation was carried out within the wound several times before closure. The wound was closed with 5-0 nylon suture. Xeroform was applied followed by 4x4s, sterile Adaptic, sterile Webril, and a thumb spica splint was then applied with the thumb held in adduction. The tourniquet was

Report of Operation

# THE BLOOMSBURG HOSPITAL
## BH
BLOOMSBURG, PA 17815

*REPORT OF OPERATION*

RAMOS, MANUEL
Bill No: 30105068
MR No: 289236

deflated at the end of the procedure. The case was clean, classification elective, blood loss none, specimens none.

Disposition: the patient is discharged back to the Lewisburg facility with full instructions to ice and elevate the involved extremity prn pain and swelling for 20 minutes each waking hour times 48 hours, to call if he has any problems, to change the dressing and remove the sutures in approximately seven to ten days and reapply the splint at that time. I will follow-up with the patient at the facility within the next four weeks. Full instructions were given to leave the splint in place for approximately six weeks from today's date. Orders were written for Tylenol #3, two q. 4 hours prn pain. He is not to lift, not to drive, and to sponge bathe only.

Dictated by: Peter J Terhaar, D.O.

cc:   Peter J Terhaar, D.O.

*Dr. Bussanich
Lewisburg Correctional Facility
Lewisburg, PA 17837

PJT:cc
Doc#: 12820
Job#: 0043

*[signature] Bussanich 1/14/99*

Anthony Bussanich, M.D.
D: 01/07/1999; 10:04 A
T: 01/07/1999 11:16 A

---

Report of Operation   Page 2 of 2

*This report made possible through the generous support of the Bloomsburg Hospital Auxiliary.*
EXTRA COPY