TAM:GMT:mel:2002V00410

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL RAMOS,                          :
                                       :
              Plaintiff    :   CIVIL NO. 1:CV-00-1957
       v.                              :
                                       :   (Jones, J.)
MARGARET HARDEN, DR. MIGLORI, :   (Smyser, M.J.)
DR. MAXIMO R. VELASCO, JR.,   :
DR. ANTHONY BUSSANICH, and    :
DR. PETER J. TERIHAAR,        :
                                       :   FILED ELECTRONICALLY
              Defendants    :

EXHIBITS IN SUPPORT OF THE UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

THOMAS A. MARINO
United States Attorney

s/ G. Micheal Thiel
G. MICHAEL THIEL
Assistant U.S. Attorney
Atty. I.D. No. PA 72926
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17703
Telephone: 570-348-2800
Facsimile: 570-348-2830

Dated: July 15, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

EXHIBIT
1

| | | |
|---|---|---|
| MANUAL RAMOS, | ) | |
|   Plaintiff | ) | |
| | ) | 1:CV-00-1957 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|   Defendant | ) | |
| | ) | |

## DECLARATION OF L. CUNNINGHAM

I, L. Cunningham, hereby state:

1.    I am presently employed by the Federal Bureau of Prisons as the Supervisory Attorney at the United States Penitentiary, at Lewisburg, Pennsylvania. I am familiar with the above referenced case in which inmate Manual Ramos, Reg. No. 37563-053, complains that his thumb was injured in a use of force incident at FCI Allenwood in March 1997, and also complains that he did not receive adequate medical care for his thumb.

2.    The Bureau of Prisons has a three level administrative remedy process which is a method by which an inmate may seek formal review of a complaint related to any aspect of his confinement if less formal procedures have not resolved the problem. The procedure is codified at 28 C.F.R.§ 542.10 et seq. This process involves the filing of a request for administrative relief (BP-9) to the Warden of the institution where the inmate is confined. In the event the inmate is dissatisfied with the Warden's response, he may file an appeal (BP-10) to the Regional Director. The final step in the administrative remedy process is an appeal to the General Counsel (BP-11). See 28 C.F.R. Part 542, subpart B. A decision by the Bureau of Prisons is not final, and hence, not reviewable until relief has been denied by the General Counsel's Office. 28 C.F.R. 542.15.

3.    A review of Bureau of Prisons SENTRY system records indicates that inmate Ramos has failed to exhaust the administrative remedies available to him under the Bureau of Prisons' administrative remedy procedure regarding any use of force allegations or regarding the medical treatment of his right thumb.

4.    Inmate Ramos has successfully filed 22 requests for administrative remedies on a variety of other issues, but has not filed any with regard to the injury or subsequent medical treatment of his right thumb.

5.    Attached are true and accurate copies of Bureau of Prisons' SENTRY records on inmate Ramos' history of administrative remedy filings.  Inmate Ramos successfully filed requests for administrative remedy while confined at FCI Ft. Dix; FCI Allenwood; USP Allenwood; USP Lewisburg; USP Lompoc; and USP Florence.  Inmate Ramos has filed 19 requests for administrative remedy since he alleges injuring his thumb in March 1997, however none of these requests concerned allegations of improper medical care.

6.    Inmates may request blank copies of the Bureau of Prisons' request for administrative remedy forms from staff.  The subject matter of the request and supporting details are completed by the inmate.  As the attached SENTRY printout indicates, inmate Ramos had access to at least 19 administrative remedy forms after the date of his thumb injury, however, he chose to submit those requests concerning complaints regarding issues other than his thumb injury and subsequent medical care.

7.    Inmate Ramos did file an administrative tort claim on March 15, 1999, nearly two years after the alleged incident.  The administrative tort claim was denied by the Bureau of Prisons Northeast Regional Office on January 7, 2000.  A true and accurate copy is of the tort claim and denial letter is attached.


I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.


L. Cunningham                                    Date
Supervisory Attorney
United States Penitentiary
Lewisburg, PA

```
   LEW19          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      07-09-2003
PAGE 001 OF                                                         10:28:53
      FUNCTION: L-P SCOPE: REG    EQ 37563-053     OUTPUT FORMAT: FULL_____

------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------

DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____

DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____

SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____

EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _

RCV  OFC : EQ ____     ____     ____     ____     ____     ____
TRACK: DEPT: _____ _____ _____ _____ _____ _____

     PERSON: ___      ___      ___      ___      ___      ___
       TYPE: ___      ___      ___      ___      ___      ___
```

000003

```
EVNT FACL:  EQ ____      ____      ____      ____      ____      ____
RCV FACL.:  EQ ____      ____      ____      ____      ____      ____
RCV UN/LC:  EQ _____   _____    _____    _____    _____   _____

RCV QTR..:  EQ _____ _____  _____  _____  _____  _____

ORIG FACL:  EQ ____      ____      ____      ____      ____      ____
ORG UN/LC:  EQ _____   _____    _____    _____    _____   _____

ORIG QTR.:  EQ _____ _____  _____  _____  _____  _____
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
LEW19           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     07-09-2003
PAGE 002 OF        *         FULL SCREEN FORMAT            *       10:28:53

REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B
REMEDY ID: 93220-F1        SUB1: 15ZM SUB2:        QTR.: Z07-220LAD RCV OFC: FTD
UNT RCV..: UNIT 3      QTR RCV.: 5751-3            DATE RCV:  09-06-1995
UNT ORG..: UNIT 3      QTR ORG.: 5751-3            FACL RCV: FTD
EVT FACL.: FTD    ACC LEV: FTD  1                  FACL ORG: FTD
                                                     RESP DUE:  THU  09-21-1995
```

C03004

ABSTRACT.: WANTS A DETAINER TO BE LODGED
STATUS DT: 09-20-1995  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 09-06-1995
REMARKS..:


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: FTD
REMEDY ID: 93227-F1        SUB1: 11BM SUB2: 34AM DATE RCV:  09-06-1995
UNT RCV..: UNIT 3      QTR RCV.: 5751-3      FACL RCV: FTD
UNT ORG..: UNIT 3      QTR ORG.: 5751-3      FACL ORG: FTD
EVT FACL.: FTD    ACC LEV:  FTD  1            RESP DUE:  THU  09-21-1995
ABSTRACT.: WANTS TO BE WITHDRAWN FROM GED PROG/STAFF MISCONDUCT
STATUS DT: 09-20-1995  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 09-06-1995
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: ALM
REMEDY ID: 127106-F1        SUB1: 13HM SUB2:    DATE RCV:  02-03-1997
UNT RCV..: UNIT 4B      QTR RCV.: 4B      FACL RCV: ALM
UNT ORG..: UNIT 4B      QTR ORG.: 4B      FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:  ALM  1            RESP DUE:  SUN  02-23-1997

C00005

```
ABSTRACT.: REQUEST TO BE ASSIGNED TO A BOTTOM BUNK
STATUS DT: 02-11-1997  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 02-03-1997
REMARKS..:
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 143689-R1       SUB1: 20DS SUB2:  DATE RCV:  10-03-1997
UNT RCV..: II              QTR RCV.: DIS SEG  FACL RCV: ALP
UNT ORG..: II              QTR ORG.: DIS SEG  FACL ORG: ALP
EVT FACL.: ALP    ACC LEV:                      RESP DUE:
ABSTRACT.: APPEAL DHO HEARING
STATUS DT: 10-06-1997  STATUS CODE: REJ STATUS REASON: ONE OTH RSR
INCRPTNO.: 523038      RCT:   EXT:   DATE ENTD: 10-06-1997
REMARKS..: YOUR ADMINISTRATIVE REMEDY APPEAL MUST BE
           SUBMITTED TO THIS OFFICE IN ENGLISH.
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
   LEW19         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
PAGE 004 OF       *            FULL SCREEN FORMAT            *    10:28:53
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 143690-R1       SUB1: 20DS SUB2:  DATE RCV:  10-03-1997
UNT RCV..: II              QTR RCV.: DIS SEG  FACL RCV: ALP
UNT ORG..: II              QTR ORG.: DIS SEG  FACL ORG: ALP
EVT FACL.: ALP    ACC LEV:                      RESP DUE:
```

C00006

ABSTRACT.: APPEALS DHO HEARING
STATUS DT: 10-06-1997  STATUS CODE: REJ STATUS REASON: ONE RSR OTH
INCRPTNO.: 522431     RCT:    EXT:   DATE ENTD: 10-06-1997
REMARKS..: YOUR ADMINISTRATIVE REMEDY APPEAL MUST BE
           SUBMITTED TO THIS OFFICE IN ENGLISH.


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                 QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 143690-R2        SUB1: 20DS SUB2:  DATE RCV:  10-14-1997
UNT RCV..: II            QTR RCV.: DIS SEG    FACL RCV: ALP
UNT ORG..: II            QTR ORG.: DIS SEG    FACL ORG: ALP
EVT FACL.: ALP    ACC LEV:                        RESP DUE:
ABSTRACT.: APPEALS DHO HEARING
STATUS DT: 10-17-1997  STATUS CODE: REJ STATUS REASON: ONE RSR OTH
INCRPTNO.: 522431     RCT:    EXT:   DATE ENTD: 10-17-1997
REMARKS..: YOUR ADMINISTRATIVE REMEDY APPEAL MUST BE
           SUBMITTED IN ENGLISH.  PLEASE SEEK HELP FROM
           INSTITUTION STAFF.


G0002        MORE PAGES TO FOLLOW . . .


LEW19          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
PAGE 005 OF       *            FULL SCREEN FORMAT         *      10:28:53


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                 QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 143689-R2        SUB1: 20DS SUB2:  DATE RCV:  10-14-1997
UNT RCV..: II            QTR RCV.: DIS SEG    FACL RCV: ALP
UNT ORG..: II            QTR ORG.: DIS SEG    FACL ORG: ALP
EVT FACL.: ALP    ACC LEV:                        RESP DUE:

C00007

```
ABSTRACT.: APPEAL DHO HEARING
STATUS DT: 10-17-1997  STATUS CODE: REJ STATUS REASON: ONE OTH RSR
INCRPTNO.: 523038    RCT:   EXT:   DATE ENTD: 10-17-1997
REMARKS..: YOUR ADMINISTRATIVE REMEDY APPEAL MUST BE
           SUBMITTED IN ENGLISH.  PLEASE SEEK HELP FROM
           INSTITUTION STAFF.


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B              QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 143690-R3       SUB1: 20DS SUB2:   DATE RCV:  10-27-1997
UNT RCV..: II          QTR RCV.: DIS SEG   FACL RCV: ALP
UNT ORG..: II          QTR ORG.: DIS SEG   FACL ORG: ALP
EVT FACL.: ALP    ACC LEV:                    RESP DUE:
ABSTRACT.: APPEALS DHO HEARING
STATUS DT: 10-28-1997  STATUS CODE: REJ STATUS REASON: ONE RSR OTH
INCRPTNO.: 522431    RCT:   EXT:   DATE ENTD: 10-28-1997
REMARKS..: YOUR ADMINISTRATIVE REMEDY APPEAL MUST BE
           SUBMITTED IN ENGLISH.  PLEASE SEEK HELP FROM
           INSTITUTION STAFF.


G0002      MORE PAGES TO FOLLOW . . .




    LEW19        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
PAGE 006 OF      *            FULL SCREEN FORMAT            *    10:28:53

REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B              QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 143689-R3       SUB1: 20DS SUB2:   DATE RCV:  10-27-1997
UNT RCV..: II          QTR RCV.: DIS SEG   FACL RCV: ALP
UNT ORG..: II          QTR ORG.: DIS SEG   FACL ORG: ALP
EVT FACL.: ALP    ACC LEV:                    RESP DUE:
```

C00C08

```
ABSTRACT.: APPEAL DHO HEARING
STATUS DT: 10-28-1997  STATUS CODE: REJ STATUS REASON: ONE OTH RSR
INCRPTNO.: 523038    RCT:   EXT:   DATE ENTD: 10-28-1997
REMARKS..: YOUR ADMINISTRATIVE REMEDY APPEAL MUST BE
           SUBMITTED IN ENGLISH.  PLEASE SEEK HELP FROM
           INSTITUTION STAFF.


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: NER
REMEDY ID: 165738-R1       SUB1: 20AM SUB2:    DATE RCV:   08-12-1998
UNT RCV..: UNIT 2          QTR RCV.: DIS SEG   FACL RCV: LEW
UNT ORG..: UNIT 2          QTR ORG.: DIS SEG   FACL ORG: LEW
EVT FACL.: LEW    ACC LEV: NER  1                RESP DUE:  FRI  09-11-1998
ABSTRACT.: APPEALS 07-30-1998 DHO FOR 203, 406
STATUS DT: 09-10-1998  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 601241     RCT: P EXT:   DATE ENTD: 08-12-1998
REMARKS..:


G0002       MORE PAGES TO FOLLOW . . .



  LEW19        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *   07-09-2003
  PAGE 007 OF     *             FULL SCREEN FORMAT           *   10:28:53

REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: WXR
REMEDY ID: 192124-R1       SUB1: 20DM SUB2:    DATE RCV:   07-28-1999
UNT RCV..: J              QTR RCV.: Z15-009LAD FACL RCV: LOM
UNT ORG..: J              QTR ORG.: Z15-009LAD FACL ORG: LOM
EVT FACL.: LOM    ACC LEV: WXR  2                RESP DUE:
```

000009

```
ABSTRACT.: DHO HEARING 06-08-99 CODE: 201 DEL. 6-14-99
STATUS DT: 07-28-1999  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.: 679826    RCT:   EXT:   DATE ENTD: 07-30-1999
REMARKS..: YOU HAD 20 DAYS FROM THE RECEIPT OF YOUR DHO REPORT
           ON 6-14-99 TO APPEAL. YOU EXCEEDED THIS LIMIT.


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: WXR
REMEDY ID: 192124-R2      SUB1: 20DM SUB2:    DATE RCV:  08-12-1999
UNT RCV..: J          QTR RCV.: Z15-009LAD  FACL RCV: LOM
UNT ORG..: J          QTR ORG.: Z15-009LAD  FACL ORG: LOM
EVT FACL.: LOM   ACC LEV: WXR  2           RESP DUE:  SAT  09-11-1999
ABSTRACT.: DHO HEARING 06-08-99 CODE: 201 DEL. 6-14-99
STATUS DT: 09-01-1999  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 679826    RCT: P EXT:   DATE ENTD: 08-13-1999
REMARKS..:


G0002       MORE PAGES TO FOLLOW . . .


   LEW19        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
   PAGE 008 OF      *           FULL SCREEN FORMAT           *    10:28:53


REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: LOM
REMEDY ID: 193795-F1      SUB1: 16FS SUB2: 25DS DATE RCV:  08-24-1999
UNT RCV..: J          QTR RCV.: Z15-009LAD  FACL RCV: LOM
UNT ORG..: J          QTR ORG.: Z15-009LAD  FACL ORG: LOM
EVT FACL.: LOM   ACC LEV:                   RESP DUE:
```

C00010

```
ABSTRACT.: STAFF NOT PROVIDING STAMPS & WANT PROPERTY RETURNED
STATUS DT: 08-24-1999  STATUS CODE: REJ STATUS REASON: INF RSF
INCRPTNO.:           RCT:    EXT:    DATE ENTD: 08-24-1999
REMARKS..:
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: FLP
REMEDY ID: 224020-F1      SUB1: 13BM SUB2: 10ZM DATE RCV:  10-13-2000
UNT RCV..: C             QTR RCV.: C08-232L      FACL RCV: FLP
UNT ORG..: C             QTR ORG.: C08-232L      FACL ORG: FLP
EVT FACL.: FLP    ACC LEV:  FLP 2 NCR 1 BOP 1   RESP DUE:
ABSTRACT.: CLAIMS HE SHOULD BE A MEDIUM SECURITY LEVEL INMATE
STATUS DT: 10-13-2000  STATUS CODE: REJ STATUS REASON: CON ONE SIG OTH
INCRPTNO.:           RCT:    EXT:    DATE ENTD: 10-13-2000
REMARKS..: YOU NEED TO PLACE YOUR SPECIFIC COMPLAINT IN THE
           SPACE PROVIDED ON THE BP-9 FORM.  IF YOU NEED
           ADDITIONAL SPACE, ONE 8 1/2 X 11 SHEET CAN BE USED.
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
   LEW19          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
PAGE 009 OF       *              FULL SCREEN FORMAT              *    10:28:53
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: FLP
REMEDY ID: 224020-F2      SUB1: 13BM SUB2: 10ZM DATE RCV:  10-26-2000
UNT RCV..: C             QTR RCV.: C08-232L      FACL RCV: FLP
UNT ORG..: C             QTR ORG.: C08-232L      FACL ORG: FLP
EVT FACL.: FLP    ACC LEV:  FLP 2 NCR 1 BOP 1   RESP DUE: WED 11-15-2000
```

```
ABSTRACT.: CLAIMS HE SHOULD BE A MEDIUM SECURITY LEVEL INMATE
STATUS DT: 11-03-2000  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 10-26-2000
REMARKS..:
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: NCR
REMEDY ID: 224020-R1     SUB1: 13BM SUB2: 10ZM DATE RCV:   11-24-2000
UNT RCV..: C            QTR RCV.: C08-232L     FACL RCV: FLP
UNT ORG..: C            QTR ORG.: C08-232L     FACL ORG: FLP
EVT FACL.: FLP    ACC LEV:  FLP  2 NCR  1 BOP  1   RESP DUE:  SUN  12-24-2000
ABSTRACT.: CLAIMS HE SHOULD BE A MEDIUM SECURITY LEVEL INMATE
STATUS DT: 12-08-2000  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 11-30-2000
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

```
   LEW19         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
PAGE 010 OF      *              FULL SCREEN FORMAT              *    10:28:53
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B                QTR.: Z07-220LAD RCV OFC: BOP
REMEDY ID: 224020-A1     SUB1: 13BM SUB2: 10ZM DATE RCV:   12-29-2000
UNT RCV..: C            QTR RCV.: C08-232L     FACL RCV: FLP
UNT ORG..: C            QTR ORG.: C08-232L     FACL ORG: FLP
EVT FACL.: FLP    ACC LEV:  FLP  2 NCR  1 BOP  1   RESP DUE:  TUE  02-27-2001
```

C00012

```
ABSTRACT.: CLAIMS HE SHOULD BE A MEDIUM SECURITY LEVEL INMATE
STATUS DT: 02-14-2001  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 01-10-2001
REMARKS..:
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: NCR
REMEDY ID: 274110-R1      SUB1: 20DM SUB2:   DATE RCV:  07-22-2002
UNT RCV..: B              QTR RCV.: B06-113L  FACL RCV: FLP
UNT ORG..: B              QTR ORG.: B06-113L  FACL ORG: FLP
EVT FACL.: FLP    ACC LEV:  NCR  1            RESP DUE:  FRI  09-20-2002
ABSTRACT.: DHO APPEAL/CODE 104,306,312/HEARING 06-18-2002
STATUS DT: 09-20-2002  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 960307   RCT: P EXT: P DATE ENTD: 08-01-2002
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
   LEW19         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     07-09-2003
 PAGE 011 OF      *            FULL SCREEN FORMAT             *     10:28:53
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: BOP
REMEDY ID: 274110-A1      SUB1: 20DM SUB2:   DATE RCV:  10-23-2002
UNT RCV..: B              QTR RCV.: B06-113L  FACL RCV: FLP
UNT ORG..: B              QTR ORG.: B06-113L  FACL ORG: FLP
EVT FACL.: FLP    ACC LEV:  NCR  1            RESP DUE:
```

C00043

```
ABSTRACT.: DHO APPEAL/CODE 104,306,312/HEARING 06-18-2002
STATUS DT: 10-23-2002   STATUS CODE: REJ STATUS REASON: ATT OTH RSA
INCRPTNO.: 960307    RCT:   EXT:   DATE ENTD: 10-24-2002
REMARKS..: YOUR APPEAL MUST BE FILED IN ENGLISH.



REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B
                                      QTR.: Z07-220LAD RCV OFC: BOP
REMEDY ID: 274110-A2      SUB1: 20DM SUB2:    DATE RCV:  11-12-2002
UNT RCV..: B              QTR RCV.: B06-113L  FACL RCV: FLP
UNT ORG..: B              QTR ORG.: B06-113L  FACL ORG: FLP
EVT FACL.: FLP     ACC LEV:  NCR  1              RESP DUE:
ABSTRACT.: DHO APPEAL/CODE 104,306,312/HEARING 06-18-2002
STATUS DT: 11-12-2002   STATUS CODE: REJ STATUS REASON: QUA ATT OTH RSA
INCRPTNO.: 960307    RCT:   EXT:   DATE ENTD: 11-13-2002
REMARKS..: YOUR APPEAL MUST BE FILED IN ENGLISH.
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
   LEW19          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-09-2003
PAGE 012 OF 012 *            FULL SCREEN FORMAT           *    10:28:53
```

```
REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B
                                      QTR.: Z07-220LAD RCV OFC: BOP
REMEDY ID: 274110-A3      SUB1: 20DM SUB2:    DATE RCV:  12-11-2002
UNT RCV..: B              QTR RCV.: B06-113L  FACL RCV: FLP
UNT ORG..: B              QTR ORG.: B06-113L  FACL ORG: FLP
EVT FACL.: FLP     ACC LEV:  NCR  1              RESP DUE:
```

C0014

```
ABSTRACT.: DHO APPEAL/CODE 104,306,312/HEARING 06-18-2002
STATUS DT: 12-11-2002  STATUS CODE: REJ STATUS REASON: OTH RSA
INCRPTNO.: 960307    RCT:    EXT:   DATE ENTD: 12-12-2002
REMARKS..: YOUR APPEAL MUST BE FILED IN ENGLISH.
           YOUR UNIT STAFF MAY ASSIST YOU IN GETTING HELP.



REGNO: 37563-053 NAME: RAMOS, MANUEL
RSP OF...: FLP UNT/LOC/DST: B            QTR.: Z07-220LAD RCV OFC: BOP
REMEDY ID: 274110-A4      SUB1: 20DM SUB2:    DATE RCV:   01-07-2003
UNT RCV..: B              QTR RCV.: B06-113L  FACL RCV: FLP
UNT ORG..: B              QTR ORG.: B06-113L  FACL ORG: FLP
EVT FACL.: FLP    ACC LEV: NCR  1            RESP DUE:
ABSTRACT.: DHO APPEAL/CODE 104,306,312/HEARING 06-18-2002
STATUS DT: 01-07-2003  STATUS CODE: REJ STATUS REASON: OTH RSA
INCRPTNO.: 960307    RCT:    EXT:   DATE ENTD: 01-13-2003
REMARKS..: YOUR APPEAL MUST BE FILED IN ENGLISH.
           YOUR UNIT STAFF MAY ASSIST YOU IN GETTING HELP.




            22 REMEDY SUBMISSION(S) SELECTED
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

C03015

# CLAIM FOR DAMAGE, INJURY OR DEATH

INSTRUCTIONS: Please read carefully the ins...jons on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO.
1105-0008
EXPIRES 4-30-88

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| U.S. DEPARTMENT OF JUSTICE<br>FEDERAL BUREAU OF PRISONS<br>WESTERN REGIONAL DIRECTOR<br>7950 Dublin Blvd, Third Floor<br>Dublin, CA 94568 | Manuel Ramos, Fed. Reg. # 37563-053<br>U.S.P. Lompoc<br>3901 Klein Blvd.<br>Lompoc, CA 93436 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M) |
|---|---|---|---|---|
| [ ] MILITARY  [ ] CIVILIAN | | | | |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.) On March 25, 1997, at about 10:30 a.m. while serving my sentence in Allenwood Medium, PA., the officer of Unit 4B brutally fractured my hand. I was immediately placed in segregation and denied proper medical care notwithstanding my severe pain and insistent requests for treatment. Four months after the incident I was transfered to Allenwood Penitentiary where I kept requesting medical attention and complaining of severe pain and inability to function with my right hand. I was only given massive doses of Motrin that was upsetting my stomach. On November 10/97, still without being treated I was transfered again to Lewisburgh Penitentiary. Four months after I finally was checked by the specialist who ordered immediate operation. (Cont. p2 Annexed)

## PROPERTY DAMAGE

9. NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

Inability of my right hand, mental anguish and severe pain

## 10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Cruel and unusual Punishment, excess of force, negligence, and discrimination.

## 11. WITNESSES

RECEIVED

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| I need the medical record in order to provide the name and addresses of doctor who ordered and performed the operation. | |

LEGAL
Western Regional Office

| 12. (See instructions on reverse.) AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>Inability of right hand,pain, anguish | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$ 5,000.000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| M Ramos | | 3-15-99 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-107
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

C00016

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act. 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 CFR Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.

C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

### INSTRUCTIONS

Complete all items - Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

### INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes, if yes give name and address of insurance company (Number, street, city, State, and Zip Code) and policy number    ☐ No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts)

19. Do you carry public liability and property damage insurance? ☐ Yes, if yes, give name and address of insurance carrier (Number, street, city, State, and Zip Code) ☐ No

REVISED    RECEIVED
LEGAL
C00017

UNITED STATE_ GOVERNMENT
Memorandum
Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

DATE: January 7, 2000

REPLY TO
ATTN OF: Henry J. Sadowski, Regional Counsel

SUBJECT: Your Administrative Tort Claim, No. T-WXR-99-88

TO: Manuel Martinez Ramos – Reg. No. 37563-053
USP Florence

Your Administrative Tort Claim No. T-WXR-99-88, dated March 15, 1999, and properly received in this office on March 22, 1999, has been considered for settlement as provided by the Federal Tort Claims Act, 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. You seek compensatory damages in the amount of $5,000,000.00 for an alleged personal injury. Specifically, you claim that staff at the Federal Correctional Institution (FCI) Allenwood, Pennsylvania, fractured your right hand on March 25, 1997. You further claim staff failed to provide adequate treatment for your right hand and delayed needed surgery until January 1999.

Your Administrative Tort Claim was answered on September 17, 1999 and was forwarded to the United States Penitentiary (USP) Lompoc. It was returned to this office since you were transferred to the United States Penitentiary (USP) Florence. In response to your Administrative Tort Claim, after careful review of this claim, I decided not to offer a settlement. Our investigation revealed no evidence that staff fractured your hand on March 25, 1997. Instead, records indicate that on March 26, 1997, you assaulted another inmate by striking him in the face several times with your fist. Afterward, you were placed in the Special Housing Unit and examined by medical staff. You made no complaints of an injury to your right hand, nor was any right hand injury found during the examination. Although you were seen by medical staff on many occasions after March 26, 1997, (including an examination for a unrelated left hand injury), you did not complain about your right hand until August 1, 1997. Records indicate you received care for this injury, including surgery in January 1999. There is no evidence of negligence on the part of staff.

Accordingly, your claim is denied. If you are dissatisfied with this decision you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date off this memorandum.

cc: Michael A. Zenk, Warden, FCI Allenwood
    File

Page 2 Continuation

The specialist found out that I had a broken bone that had mended incorrectly in the right hand and its tendon had splayed. For these reason I had to be operated soon. Nevertheless the staff didnot order the operation claiming lack of money.

On January 7/99, after more than 9 months since being ordered the operation by the specialist I was taken to a Mental Hospital where I had surgery performed on me which results have yet to be seen because I could not get the rehabilitation physiotherapy that I need because on February 22, 1999, I was transfered from Lewisburg Penitentiary to Lompoc Penitentiary in California.

For the above reasons I am claiming that due to the staff officer excess of force and brutality I sustained physical and mental injuries which got worse with the time due to the negligence of the B.O.P. to provide for me proper and timely medical attention which caused me severe and unnecessary pain during almost 2 years, the disfunction of my right hand and profund anguish.

I am also claiming that my Human, Civil, and Constitutional Rights have been violated, and I have been inflicted cruel and unusual punishment, and discriminated against.

Y. RAMOS

EXHIBIT

2

Certified from the record
Date _____ 11/5/01 _____
Mary E. D'Andrea, Clerk

Per _____ B. Paets _____
       Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

WA'IL MANSUR MUHANNAD, a/k/a,   :
ANTHONY AUSTIN,                 :
                                :
         Plaintiff              :
                                :
    v.                          :    CIVIL NO. 4:CV-99-0468
                                :
ARNOLD REYES, ET AL.,           :    (Judge McClure)
                                :
         Defendants             :         FILED
                                          WILLIAMSPORT, PA

O R D E R                              NOV 5 2001

November 5, 2001          MARY E. D'ANDREA, CLERK
                          Per_____ S. 40 _____
                                   DEPUTY CLERK

BACKGROUND:

This case initiated as a *Bivens* and Federal Tort Claims Act
("FTCA"), 28 U.S.C. §§ 2671-2680, lawsuit brought by Wa'il
Mansur Muhannad, a/k/a Anthony Austin, an inmate formerly
incarcerated at the United States Penitentiary, Lewisburg,
Pennsylvania ("USP Lewisburg").  On August 30, 2001, the court
granted summary judgment as to plaintiff's *Bivens* claims against
the individual defendants, leaving only plaintiff's FTCA medical
malpractice claim against the United States of America.  The
case concerns medical treatment plaintiff received in 1997 for a
fracture of his distal 2nd metacarpal on his left hand, which
medical treatment plaintiff claims was inadequate.

By order of September 13, 2001, the court placed the case
on its November 2001 trial list, to be tried non-jury, as the
sole remaining claim was that under the Federal Tort Claims Act.

On October 31, 2001, defendants filed a pretrial brief and
a trial brief, and on November 2, 2001 defendants filed

supplemental proposed conclusions of law.

As scheduled, the court held a final pretrial conference with plaintiff and defense counsel in the courtroom on November 2, 2001. At that time, the court discussed with plaintiff the order that the court had issued with respect to plaintiff's motion for subpoenas. The court also explained to plaintiff the substance of defendants' trial brief, which pointed out that under Pennsylvania law which is applicable to his FTCA claim, he is required as is any plaintiff in a medical malpractice case, to provide an expert witness to testify to a reasonable degree of medical certainty that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was a substantial factor in causing him harm. Plaintiff expressed understanding with that as the applicable law, but contended that if the court had appointed him an attorney when requested, the attorney would have retained the necessary medical expert witness to testify on his behalf. The court expressed disagreement with that conclusion, and advised plaintiff that under the law it would be futile for him to testify as to what took place without the necessary medical expert. Plaintiff advised the court that he did not have a medical expert, and had no funds with which to retain one. The court advised plaintiff and defense counsel that the case would therefore be dismissed, without trial, and that a final, appropriate order would be entered shortly.

Plaintiff then handed to the clerk a motion requesting that he be returned promptly and directly to USP-Marion after the completion of trial proceedings. The writ of habeas corpus ad testificandum by which plaintiff's presence was obtained directed his return to the place of his confinement. Beyond that, the court has no authority to dictate the manner or route of his transport.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The Federal Tort Claims Act medical malpractice claim against the United States of America is dismissed for failure of plaintiff to proffer a medical expert to testify on his behalf with respect to essential elements of his claim.

2. As the court previously granted defendants' motion for summary judgment on plaintiff's *Bivens* claims, the clerk is directed to enter final judgment in favor of all defendants and against the plaintiff on all claims.

3. Plaintiff's motion filed November 2, 2001 asking that he be returned promptly and directly to USP-Marion after the completion of trial proceedings is denied.

4. The clerk is directed to close the file.

James F. McClure, Jr.
United States District Judge

3

117 F.Supp.2d 443
(Cite as: 117 F.Supp.2d 443, 1997 WL 710943 (E.D.Pa.))
C



Page 1

United States District Court,
E.D. Pennsylvania.

William McCABE, Plaintiff,
v.
PRISON HEALTH SERVICES, et. al., Defendants.

No. CIV.A. 94-7286.

Nov. 14, 1997.

State prisoner brought § 1983 and state law claims against medical care providers and medical records personnel. On defendants' motions for summary judgment, the District Court, Anita B. Brody, J., held that: (1) prisoner was not required to present expert testimony as to severity of his medical need or as to defendants' indifference to it; (2) fact issue existed as to whether medical care providers who had reason to know of inmate's condition were deliberately indifferent to it; (3) absent expert testimony, complaint failed to state claim for medical malpractice in Pennsylvania; and (4) complaint failed to state claim for negligence of medical records personnel.

Motions granted in part and denied in part.

West Headnotes

[1] Civil Rights ☞192
78k192

[1] Civil Rights ☞196.1
78k196.1

[1] Civil Rights ☞242(1)
78k242(1)

To establish valid claim under § 1983, plaintiff must establish by preponderance of evidence that conduct of which he complains was committed by one acting under color of state law and that it deprived him of rights, privileges, or immunities guaranteed by Constitution. 42 U.S.C.A. § 1983.

[2] Sentencing and Punishment ☞1546
350Hk1546

For state claim for deliberate indifference Eighth Amendment violation, prisoner must demonstrate both that (1) he had serious medical need, and also that (2) prison official was aware of this need and was

deliberately indifferent to it. U.S.C.A. Const.Amends. 8, 14.

[3] Sentencing and Punishment ☞1546
350Hk1546

"Serious medical need," as required for finding of deliberate indifference to prisoner's or detainee's medical needs in violation of Eighth Amendment, is one that has been diagnosed by physician as requiring treatment, or one that is so obvious that lay person would easily recognize necessity for doctor's attention, or one where delay in treatment results in unnecessary and wanton infliction of pain. U.S.C.A. Const.Amends. 8, 14.

[4] Sentencing and Punishment ☞1546
350Hk1546

Fact that surgery is elective does not abrogate prison's duty, or power, to promptly provide necessary medical treatment for prisoners. U.S.C.A. Const.Amends. 8, 14.

[5] Sentencing and Punishment ☞1546
350Hk1546

"Deliberate indifference" to prisoner's medical needs, as required to show violation of Eighth Amendment, exists where official knows of and disregards excessive risk to inmate health or safety. U.S.C.A. Const.Amends. 8, 14.

[6] Sentencing and Punishment ☞1546
350Hk1546

Mere disagreement as to proper medical treatment for prisoner does not support claim of Eighth Amendment violation; court will defer to medical judgment of propriety of treatment. U.S.C.A. Const.Amends. 8, 14.

[7] Civil Rights ☞242(5)
78k242(5)

Prisoner alleging Eighth Amendment violation based on deliberate indifference to his serious medical needs was not required to present expert testimony as to severity of his medical need where severity of circulatory problem in his leg was acknowledged by treating physicians and would have been apparent to lay person. U.S.C.A. Const.Amends. 8, 14.

117 F.Supp.2d 443
(Cite as: 117 F.Supp.2d 443, 1997 WL 710943 (E.D.Pa.))

Page 2

[8] Civil Rights ⬳242(5)
78k242(5)

Prisoner alleging Eighth Amendment violation based on deliberate indifference to his serious medical needs was not required to present expert testimony as to indifference element where he did not complain of inadequate diagnosis or treatment, but of refusal to provide care recommended by treating physicians for acknowledged condition. U.S.C.A. Const.Amends. 8, 14.

[9] Civil Rights ⬳207(1)
78k207(1)

Only prison medical personnel shown to have personally known of prisoner's serious medical needs could be held liable for denial of treatment, in violation of prisoner's Eighth Amendment rights. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

[10] Federal Civil Procedure ⬳2491.5
170Ak2491.5

Issue of material fact as to whether treating physicians were deliberately indifferent to serious medical needs of prisoner precluded summary judgment on prisoner's § 1983 claim alleging violation of his Eighth Amendment rights. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

[11] Health ⬳821(3)
198Hk821(3)
                    (Formerly      299k18.80(7)
Physicians and Surgeons)

[11] Health ⬳821(4)
198Hk821(4)
                    (Formerly      299k18.80(7),
299k18.80(8) Physicians and Surgeons)

Under Pennsylvania law, unless matter is so simple, and lack of skill or want of care so obvious, as to be within range of ordinary experience and comprehension of even nonprofessional persons, prima facie case of medical malpractice requires presentation of expert testimony that, to reasonable degree of medical certainty, acts of defendants deviated from acceptable medical standards, and that deviation constituted substantial factor in causing plaintiff's injury.

[12] Health ⬳821(5)
198Hk821(5)

                    (Formerly      299k18.80(8),
299k18.80(7) Physicians and Surgeons)

State prisoner failed to state malpractice claim against medical providers, under Pennsylvania law, absent expert testimony that decisions of providers to deny or delay prisoner's surgery, given their knowledge of his circulatory problems and standards of their profession, were negligent, and substantially caused prisoner's amputations.

[13] Negligence ⬳202
272k202

Elements of negligence claim in Pennsylvania are: (1) legal duty or obligation to conform to certain standard of conduct; (2) failure to conform to that standard; (3) reasonably close causal connection between conduct and resulting injury; and (4) actual loss or damage.

[14] Prisons ⬳10
310k10

State prisoner failed to state negligence claim against medical records personnel, under Pennsylvania law, absent showing that they violated any particular duty to transfer or obtain his records.

*444 MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

**1 Plaintiff William McCabe ("McCabe"), a prisoner in the State Correctional Institution at Cresson, filed this action, pursuant to 42 U.S.C. § 1983, on December 2, 1994 against Joseph D. Lehman, Commissioner of Corrections for the Commonwealth of Pennsylvania; the Pennsylvania Department of Corrections; John and Jane Doe Officers and Guards; and John and Jane *445 Doe Medical Providers. McCabe alleged these defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. He also brought state law claims for negligence and gross negligence. Plaintiff has since twice amended his Complaint, substituting for the original named defendants various medical providers and medical records personnel affiliated with Delaware County, Graterford and Cresson prisons, namely: Prison Health Services, Inc.; Correctional Physician Service, Inc.; Executive Health Group National Health Services; Dr. Robert J. DiGiovanni; Dr. Pierce; Dr. Umar (incorrectly identified by plaintiff

117 F.Supp.2d 443
(Cite as: 117 F.Supp.2d 443, *445, 1997 WL 710943, **1 (E.D.Pa.))

in his Complaint as Omar); Dr. Rahman; Dr. J. Ennis; Dr. Lewis Brandt; Dr. Anton Skerl; Dr. R. Samuel Magee; Dr. Charles J. Harvey; Altoona Hospital; Sandy Spence; Diane Harris; Betsy Cramer; Kim Christie; Linda Rensimer; and Chris Alvanitakis (incorrectly identified by plaintiff in his Complaint as Alvanitalis). [FN1]

> FN1. Although plaintiff identifies Prison Health Services, Correctional Physicians Service, Inc., and Executive Health Group as defendants in his Second Amended Complaint, he fails to name them in any specific count or to allege any facts against them.  It is unclear what plaintiff intended; however, given the lack of any genuine issue of material fact as to these defendants, I shall grant summary judgment as to these defendants on all claims against them.

Before me for disposition are motions for summary judgment filed by defendant Alvanitakis individually, defendants Harris, Cramer, and Spence jointly, and a motion for summary judgment filed on behalf of all nineteen defendants.  After granting every justifiable inference to Plaintiff, the non-moving party, I will grant the motions for summary judgment as to certain defendants, and deny them as to other defendants.

I. BACKGROUND

Plaintiff McCabe challenges the persistent failure of the defendants to attend to his medical needs during his incarceration, first at Delaware County Prison, and thereafter at SCI-Graterford and SCI-Cresson. [FN2]  McCabe suffered severe pain in his left leg from 1990 to 1994.    During this time, McCabe sought medical aid from medical providers at all three facilities without success.  He repeatedly requested a surgery that had been recommended for his leg, to no avail.  McCabe's leg pain did not cease until doctors amputated his leg in 1994.  However, his suffering continues, due to the inadequate prosthesis provided by the doctors at SCI-Cresson.

> FN2. The factual rendition that follows is that most favorable to McCabe, and is drawn from his Second Amended Complaint and Amended Supplement to Brief in Opposition to Defendants' Motion for Summary Judgment.

Around June 1990, while incarcerated at Delaware County Prison, McCabe felt extreme pain in his left calf.    He complained to defendant Dr. Pierce, a private physician who was working under contract

with Delaware County Prison (Second Amended Complaint ¶¶ 24-25).    Dr. Pierce prescribed anti-coagulant drugs for McCabe's leg pain (Plaintiff's Amended Supplement to Brief in Opposition to Defendants' Motion for Summary Judgment, hereinafter "Plaintiff's Amended Supplement"). However, McCabe's leg continued to cause him severe pain and he returned to Dr. Pierce seeking further aid (Plaintiff's Amended Supplement).    In August 1990, Dr. Pierce referred McCabe to Sacred Heart Hospital for diagnostic tests (Plaintiff's Amended Supplement).    An arteriogram (an x-ray of an artery) showed that McCabe did have clogged arteries in his left leg and abdomen (Second Amended Complaint ¶¶ 26-28). Based on this test result, Dr. Pierce diagnosed McCabe with peripheral vascular disease and claudication of the left leg (Second Amended Complaint ¶ 34; Plaintiff's Amended Supplement).    According to Dr. Pierce's own brief, this was a serious medical condition. (Brief of Defendant Dr. *446 Pierce in Support of Motion to Dismiss, Docket # 44).

**2 McCabe's leg pain persisted, and he continued to seek medical aid.    In November 1990, Delaware County Prison officials referred McCabe to a vascular specialist for tests.    McCabe went to defendant Dr. DiGiovanni, a private physician at Riddle Memorial Hospital (Second Amended Complaint ¶¶ 29-30). Dr. DiGiovanni examined McCabe, and wrote to Dr. Pierce explaining his findings.  Dr. DiGiovanni diagnosed McCabe with a 75% Stenosis (blockage) at the origin of the left external iliac and complete occlusion (closure) of the left superficial artery (Plaintiff's Amended Supplement).    Dr. DiGiovanni found that there were no indications of imminent limb loss (Second Amended Complaint ¶ 31).      He recommended that McCabe have elective surgery on his left leg (Second Amended Complaint ¶ 31).    Dr. DiGiovanni scheduled this surgery for January 1991 (Second Amended Complaint ¶ 31).

Delaware County Prison officials declined the surgery because of McCabe's imminent transfer to SCI-Graterford (Second Amended Complaint ¶ 32). McCabe was not transferred to SCI-Graterford until December 1991, eleven months later.  Dr. Pierce also refused to authorize the surgery, and when McCabe asked him why, said "you know how the system works"    (Plaintiff's    Amended    Supplement). Nonetheless, Dr. Pierce repeatedly noted in McCabe's medical records that McCabe suffered from severe peripheral vascular disease (Second Amended Complaint ¶ 34).

117 F.Supp.2d 443                                                                                                    **Page 4**
**(Cite as: 117 F.Supp.2d 443, \*446, 1997 WL 710943, \*\*2 (E.D.Pa.))**

When McCabe was transferred to SCI-Graterford, in December 1991, his county prison medical records remained at Delaware County Prison, in accordance with the medical records regulations then in effect (Plaintiff's Amended Supplement). [FN3] The only medical information transmitted to SCI- Graterford was in the temporary transfer sheet, which notes, "C/o intermittent claudication in R/T PVD--vascular surgery consultation revealed need for surgery as elective only 11/90--Tx Medically c Trental" (Motion of Commonwealth Defendants Harris, Spence, and Cramer for Summary Judgment (Docket # 128), Exhibit D1--DC-7x Temporary Transfer Information).

> FN3. *See* Motion of Commonwealth Defendants Harris, Spence, and Cramer for Summary Judgment (Docket # 128), (Exhibit D14-DOC Medical Records Policy).

McCabe's leg pain persisted and worsened while he was at SCI-Graterford (Second Amended Complaint ¶ 35). On numerous occasions, McCabe visited the dispensary, seeking aid for his leg pain (Plaintiff's Amended Supplement). His medical records reflect that he complained about leg pain during his first month at Graterford, in January 1992. Again in March 1992, he complained about pain in his left foot. Then, in May 1992, his medical records state that he had "diminished dorsal pedic and posterior taken pulse left leg." In July 1992, he again complained about his left leg. Over and over again, McCabe complained to medical providers of his leg pain and of the increasing difficulty he was experiencing in walking. The doctors from whom McCabe sought aid include defendants Drs. Umar, Rahman, Ennis, and Brandt, all of whom were medical care providers under contract with SCI-Graterford (Plaintiff's Amended Supplement). McCabe repeatedly asked Drs. Umar, Rahman, Ennis, and Brandt for the surgery on his left leg which had been recommended by Dr. DiGiovanni (Second Amended Complaint ¶ 35). At one point, Dr. Umar denied plaintiff the surgery because "the prison was not Burger King, and he [Mr. McCabe] could not have it his way." (Second Amended Complaint ¶ 36). While at Graterford, despite his repeated complaints of pain, and frequent requests for medical aid, no diagnostic studies or surgeries were performed on McCabe (Plaintiff's Amended Supplement).

\*\*3 In October 1992, McCabe was cleared for transfer to another prison, but his transfer was delayed until April 1993, \*447 when he was transferred to SCI-Cresson (Second Amended Complaint ¶ 41). McCabe did not seek care from October 1992 to April 1993, while he was awaiting transfer, because he was concerned that should he do so, his transfer would be delayed (Plaintiff's Amended Supplement).

When McCabe arrived at SCI-Cresson in April 1993, his medical condition was reviewed by medical staff. McCabe informed them that Drs. Pierce and Giovanni had diagnosed him with blocked arteries and recommended that he have surgery on his left leg (Plaintiff's Amended Supplement). McCabe's SCI-Cresson medical records reveal that he made frequent visits to the infirmary seeking aid for his leg pain and that he explicitly requested surgery (e.g., medical records dated 4/30/93; 5/04/93; 6/14/93; 6/15/93; 7/08/93; 7/14/93; 9/16/93; 9/21/93; 10/18/93; 10/25/93; 11/18/93; 12/16/93). From March 1993 to February 1994, McCabe also wrote many letters to defendant Dr. Skerl, the Medical Director of SCI-Cresson, asking for help for his unbearable leg pain (Plaintiff's Amended Supplement). On May 4, 1993, during one of McCabe's visits to the infirmary, Dr. Skerl noted on McCabe's chart, "please get old medical records regarding prior arteriogram." When Dr. Skerl saw McCabe again, he wrote on the dispensary record, "I need his old records, Not ordered yet." Dr. Skerl subsequently made several further notations about awaiting old records. The arteriogram record, confirming McCabe's condition, was finally received on November 18, 1993.

In December 1993, McCabe began experiencing serious heart problems, for which he was prescribed nitro-glycerine pills (Plaintiff's Amended Supplement). In January 1994, Dr. Skerl referred McCabe to defendant Altoona Hospital for tests on his heart (Plaintiff's Amended Supplement). On February 8, 1994, while at Altoona Hospital for "stress" tests on his heart, McCabe experienced tremendous pain in his left leg (Second Amended Complaint ¶¶ 45-46). That same day, McCabe was admitted for emergency quadruple coronary bypass surgery (Plaintiff's Amended Supplement). When he awoke from surgery, McCabe discovered a suture running from his left ankle up to his groin, indicating that a vein from his left leg had been used in his heart surgery (Plaintiff's Amended Supplement). While McCabe was recovering from his surgery, defendant Dr. Magee, a private physician affiliated with Altoona Hospital, diagnosed McCabe with "a completely occluded left external iliac artery and a completely

117 F.Supp.2d 443                                                                                      Page 5
(Cite as: 117 F.Supp.2d 443, *447, 1997 WL 710943, **3 (E.D.Pa.))

occluded left superficial femoral artery" (the same diagnosis made over three years before by Dr. DiGiovanni) (Second Amended Complaint ¶¶ 49-50). Dr. Magee recommended that McCabe wait to have surgery on his left leg until he had recovered from his heart surgery (Second Amended Complaint ¶¶ 49-50). McCabe then returned to SCI-Cresson.

**4 On February 22, 1994, McCabe's left leg became completely numb, swollen, and discolored (Plaintiff's Amended Supplement). He was diagnosed with gangrene and his left leg was amputated below the knee (Plaintiff's Amended Supplement). The remaining portion of his left leg was also gangrenous and subsequently had to be removed (Plaintiff's Amended Supplement). [FN4]

> FN4. McCabe does not have expert medical testimony to prove the causal connections between the defendants' alleged earlier deliberate indifference to his severe leg pain and the amputations of his leg. As I discuss more fully in my analysis of his § 1983 claims below, without such evidence, McCabe will not be able to recover damages for his amputations. However, the absence of expert evidence on the amputations will not prevent McCabe from showing that the defendants were deliberately indifferent to his pain for three or four years before his amputations, and continue to be indifferent to his medical needs following his amputations.

Finally, following the amputations, Dr. Skerl refused to authorize a prosthesis. Dr. Skerl finally gave McCabe a prosthesis, but McCabe continues to experience *448 distress and suffering when walking, because of the poor fit of the prosthesis (Plaintiff's Amended Supplement).

## II. DISCUSSION

The defendants seek summary judgment as a group on the ground that without an expert witness McCabe cannot establish a prima facie case for any of his federal or state claims. The motions filed by Alvanitakis, Harris, Spence, and Cramer further seek summary judgment based on the ground that Mr. McCabe has failed to allege any specific connections between these defendants and his injuries, and, therefore, has raised no genuine issue of material fact as to them. In opposing the defendants' motions, McCabe claims that there are disputed issues of material fact as to the defendants' deliberate indifference and negligence.

## A. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. When the moving party does not bear the burden of persuasion at trial, as is the case here, its burden "may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. [FN5] *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

> FN5. In *pro se* cases, I ordinarily construe a plaintiff's pleadings as affidavits for purposes of summary judgment motions. *See Reese v. Sparks,* 760 F.2d 64, 67 n. 3 (3d Cir.1985) (treating verified complaint of a prisoner acting *pro se* as an affidavit). This case presents an unusual situation, in that plaintiff was originally represented by counsel, but is now *pro se.* When McCabe filed his complaints, and through the middle of the discovery period, he was represented by counsel. His counsel filed a motion to withdraw as counsel on November 15, 1996, because of conflicts arising out of strategic decisions in the case. I initially denied his counsel's motion to withdraw,

and stayed proceedings until February 14, 1997 to afford McCabe the opportunity to secure another attorney to represent him. McCabe was unable to do so on his own, and I was unable to do so on his behalf. On June 20, 1997, I granted counsel's motion to withdraw. McCabe is now proceeding *pro se*, and has filed his response to defendants' summary judgment motions without the assistance of counsel.

Given this hybrid posture, I issued a Notice on October 10, 1997, instructing plaintiff to restate his claims in affidavit form and affirm the truth of his factual assertions. Upon reexamination of the pleadings, given that plaintiff restates the bulk of his factual assertions in his *pro se* response to the defendants' summary judgment motions, I have decided not to require the plaintiff to submit new affidavits. I shall construe his pleadings as affidavits for purposes of this decision.

**\*\*5** To determine whether summary judgment is appropriate, I must determine **\*449** whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence favoring the nonmoving party is "merely colorable," "not significantly probative," or amounts to only a "scintilla," summary judgment may be granted. *See id.* at 249-50, 252, 106 S.Ct. 2505; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). Of course, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992). Moreover, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW,* 974 F.2d at 1363. Thus, my inquiry at the summary judgment stage is only the "threshold inquiry of determining whether there is the need for a trial," that is, "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250-52, 106 S.Ct. 2505.

### B. § 1983 CLAIMS

[1] To establish a valid claim under 42 U.S.C. § 1983, the plaintiff must establish by a preponderance of the evidence that the conduct of which he complains was committed by one acting under color of state law and that it deprived him of rights, privileges, or immunities guaranteed by the Constitution. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir.1994); *Carter v. City of Phila.,* 989 F.2d 117, 119 (3d Cir.1993). The plaintiff here claims that a panoply of state actors (defendants Pierce, Skerl, Umar, Rahman, Ennis, Brandt, Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis) deprived him of his Eighth Amendment right to be free from cruel and unusual punishment by exhibiting deliberate indifference to his serious medical needs. [FN6]

> FN6. I will focus on the alleged deprivation of plaintiff's rights, as defendants do not contest that they acted under color of state law. The only defendant who has raised this issue during the course of the litigation is Dr. Skerl. In his motion to dismiss, Skerl argued that the plaintiff did not allege sufficient facts demonstrating that Skerl was acting under color of state law at the time of the complained of conduct. In my Order and Explanation of March 26, 1996, denying Skerl's motion to dismiss, I noted, *inter alia,* that Skerl, by his own admission, was acting as Medical Director of S.C.I.-Cresson, a state prison, when he treated McCabe. I, therefore, determined that Skerl acted under color of state law for purposes of McCabe's § 1983 action. *See also West v. Atkins,* 487 U.S. 42, 51, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (physician under contract with state to provide medical services to inmates at state prison acted under color of state law, within meaning of § 1983, when he treated inmate).

### 1. Standard for Deliberate Indifference

**\*\*6** [2] In order to substantiate his § 1983 claim, plaintiff must demonstrate that each defendant exhibited "deliberate indifference" in violation of his

117 F.Supp.2d 443                                                                                                    Page 7
(Cite as: 117 F.Supp.2d 443, *449, 1997 WL 710943, **6 (E.D.Pa.))

constitutional rights. The Supreme Court identified the basic standard for a deliberate indifference claim in *Estelle v. Gamble,* 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976): "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate **\*450** indifference to serious medical needs." For conduct to rise to the level of deliberate indifference, plaintiff must demonstrate "an unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind" and "offend[s] evolving standards of decency." *Id.* Plaintiff can satisfy this standard by demonstrating both that (1) plaintiff had a serious medical need, and also that (2) the defendant was aware of this need and was deliberately indifferent to it. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979); *see also Wilson v. Seiter,* 501 U.S. 294, 296-98, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

[3][4] As to the first element, under the Constitution, prison officials must provide care only for "serious medical needs." *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. The Third Circuit defines a medical need as "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987); *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,* 649 F.2d 860 (3d Cir.1981). The fact that a surgery is elective "does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners." *Johnson v. Bowers,* 884 F.2d 1053, 1056 (8th Cir.1989); *see also Hathaway v. Coughlin,* 37 F.3d 63, 64- 69 (2d Cir.1994)(upholding a jury verdict on Eighth Amendment claim in favor of plaintiff where defendants delayed plaintiff's elective hip surgery for two years). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. *See Monmouth County,* 834 F.2d at 347. For instance, *Estelle* makes clear that if "unnecessary and wanton infliction of pain," results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment. 429 U.S. at 103, 105, 97 S.Ct. 285.

**\*\*7** [5] The Supreme Court has held that the level of culpability entailed by the second element, deliberate indifference, falls somewhere between mere negligence (carelessness) and actual malice (intent to cause harm). *Farmer,* 511 U.S. at 836-37, 114 S.Ct. 1970 (holding that a prison official can be found reckless or deliberately indifferent if "the official knows of and disregards an excessive risk to inmate health or safety ..."). *See also Young v. Quinlan,* 960 F.2d 351, 360-61 (3d Cir.1992) (holding that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate"). In the context of claims arising under the Eighth Amendment, courts have said that state of mind is typically not a proper issue for resolution on summary judgment. *See, e.g., Wilson v. Seiter,* 893 F.2d 861, 866 (6th Cir.1990), *vacated on other grounds,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

[6] In evaluating claims of deliberate indifference, courts have distinguished between denial of medical treatment, like that alleged here, and inadequate medical treatment. Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation; courts will defer to medical judgments of the propriety of treatment. [FN7] *See Monmouth County,* 834 F.2d at 346 (citing **\*451** *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)). On the other hand, the denial of medical treatment requested by an inmate states a cause of action under § 1983. The Third Circuit has stated that where prison authorities deny reasonable requests for medical treatment, and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," deliberate indifference is manifest. *Monmouth County,* 834 F.2d at 346 (citing *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir.1976) ). Furthermore, short of total denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out. *Id.* at 346-47 (citing *Ancata v. Prison Health Servs.,* 769 F.2d 700, 704 (11th Cir.1985)) ("if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."). *See also Hathaway,* 37 F.3d at 66 (holding that a two year delay in arranging necessary surgery could support a finding of deliberate indifference); *Douglas v. Hill,* 1996 WL 716278, \*8 (E.D.Pa.1996) (denying defendants' motions for summary judgment where medical personnel failed to authorize recommended hernia surgery, despite awareness of plaintiff's complaints of pain).

FN7. Note that evidence of medical malpractice is not enough to substantiate a

claim of "deliberate indifference". *See Estelle,* 429 U.S. at 105-06, 97 S.Ct. 285 (medical malpractice is insufficient basis upon which to establish an Eighth amendment violation); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979) (negligent medical treatment is not actionable under 8th amendment); *Unterberg v. Correctional Medical Systems, Inc.,* 799 F.Supp. 490, 497 (E.D.Pa.1992) (medical malpractice is not deliberate indifference).

**\*\*8** Although an isolated failure to treat, without more, is ordinarily not actionable, it "may in fact rise to the level of a constitutional violation if the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment." *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987). For example, offensive and outrageous acts serve as proof of deliberate indifference. *See e.g., Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Estelle,* 429 U.S. at 105-06, 97 S.Ct. 285.

2. Expert Testimony

The defendants in the case before me base their joint motion for summary judgment on the § 1983 claims on the ground that without an expert witness to testify on his behalf McCabe cannot present a prima facie case of deliberate indifference. However, they cite no legal authority mandating the conclusion that a plaintiff must present expert testimony in order to withstand a motion for summary judgment (or, indeed, to prevail at trial) in an Eighth Amendment deliberate indifference case. [FN8]    **\*452** In fact, there is no general requirement in the Third Circuit that a plaintiff present expert testimony in Eighth Amendment deliberate indifference cases. [FN9] *See Rizzolo v. Rivas* (in dismissing a defendant doctor's motion for summary judgment on a § 1983 claim alleging deliberate indifference to a plaintiff prisoner's medical needs, the court expressly said "[t]here is no requirement that plaintiff proceed with a medical expert to establish his alleged constitutional claim.") 1988 WL 50630 (D.N.J.1988), *aff'd,* 891 F.2d 283 (3d Cir.1989). [FN10]

> FN8. The defendants, in their Joint Summary Judgment Motion, assert "[t]estimony as to the standard of care is also necessary to the federal claims, which require not only medical negligence but also showing of deliberate or reckless disregard for the patient's condition." After this

proposition, they cite two cases, *United States ex rel. Gittlemacker v. Philadelphia County,* 413 F.2d 84 (3d Cir.1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970), and *Mitchell v. Hendricks,* 431 F.Supp. 1295 (E.D.Pa.1977), neither of which mention expert testimony. Defendants presume that plaintiff must prove medical negligence in order to prove deliberate indifference. This is not the case, where, as here, a plaintiff does not claim improper diagnosis, but a total lack of care.

I received varying arguments in response to my Notice of October 10, 1997 inviting supplemental submissions on the issue of whether a plaintiff must present expert testimony in order to withstand summary judgment on an Eighth Amendment deliberate indifference claim. For example, defendants Harris, Spence, and Cramer state that they are not aware of any general requirement of expert testimony in such cases. On the other hand, defendants Correctional Physicians Service, Inc, Umar, Rahman, Ennis, and Brandt assert that the law requires an expert in order to proceed, but cite no supporting cases for this proposition. Defendant Skerl presents the most potentially persuasive argument, that McCabe will need expert medical testimony at trial in order to show that the denial of surgery *caused* his amputations. This may well be so, however it goes to the extent of damages, not to determining the defendants' indifference to McCabe's serious medical need. McCabe alleges not only that his leg had to be amputated, but also that plaintiffs denied him surgery in the face of nearly four years of chronic and substantial pain, and refused him an adequate prosthesis following his amputations. At trial, McCabe will not be able to obtain damages for the amputations if he cannot show causation. However, he does not need an expert to argue that his Eighth Amendment rights were violated when he was diagnosed with a serious medical condition (peripheral vascular disease) and suffered severe pain for almost four years, yet was denied medical treatment. Deliberate indifference to this prolonged and severe pain is itself sufficient for an award of damages.

> FN9. Nor is there such a requirement in any other Circuit, so far as I can tell. *See Ledford v. Sullivan,* 105 F.3d 354, 358-60 (7th Cir.1997)(holding that an expert is not essential to establishing deliberate indifference, analyzing whether other

117 F.Supp.2d 443                                                                Page 9
**(Cite as: 117 F.Supp.2d 443, \*452, 1997 WL 710943, \*\*8 (E.D.Pa.))**

circuits have found an expert to be necessary to prove deliberate indifference, and concluding that they have not).

FN10. *See also Ledford,* 105 F.3d at 358-60 (distinguishing deliberate indifference from malpractice: "Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward [plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care."); *Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir.1994) (holding that the courts of the Second Circuit "have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony. The inquiry remains whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law."); *Abdush-Shahid v. Coughlin,* 933 F.Supp. 168, 181 n. 3 (N.D.N.Y.1996) (finding that a plaintiff claiming serious medical need is not required to present expert medical testimony to support his claims in order to survive summary judgment).

[7] In certain circumstances, courts do require expert testimony in deliberate indifference cases on the first element, the severity of the medical need, namely, *if* a jury would not able to decide whether a plaintiff's medical condition is "serious" enough to implicate the Eighth Amendment. *Boring v. Kozakiewicz,* 833 F.2d 468, 473-74 (3d Cir.1987); *see also Shoop v. Dauphin County,* 766 F.Supp. 1327, 1331-32 (M.D.Pa.1991), *aff'd,* 945 F.2d 396 (3d Cir.1991). Here, McCabe need not present an expert witness on the first element because the severity of his medical need was acknowledged by the doctors who initially treated him, defendants Pierce and DiGiovanni, and would be apparent to a lay person. [FN11] McCabe's medical need was not only serious from the beginning--blocked arteries and severe leg pain is not equivalent to the scalp condition in *Boring* or the mild concussion in *Shoop*--, but under the framework of *Estelle* and *Young v. Quinlan,* I may look to the *result* of McCabe's need going untreated to gauge its seriousness. No expert needs to tell a layperson that

four years of suffering from chronic and severe leg pain is serious. [FN12] *See, e.g., Colburn v. \*453 Upper Darby Township,* 946 F.2d 1017, 1023 (3d Cir.1991) (to qualify as serious medical need, lack of treatment must lead to substantial suffering, injury or death); *Monmouth County,* 834 F.2d at 347 (medical need is serious if it has been diagnosed by a physician as requiring treatment or where denial or delay in treatment causes the inmate to suffer a permanent loss); *Graves v. Pennsylvania Dep't of Corrections,* 1994 WL 394853 (E.D.Pa.1994) (interpreting "serious medical need" as threat of grave impact on inmate's health).

FN11. *See Douglas v. Hill,* 1996 WL 716278 (E.D.Pa.1996) (finding that where elective hernia surgery was recommended by a doctor, this presents a sufficiently serious medical need to withstand summary judgment motion by defendants, with no mention of expert testimony).

FN12. Again, while McCabe may have difficulty proving, without medical testimony, that the denial of his surgery *caused* the amputation of his left leg, he does not need an expert witness in order to argue to the jury that the defendants' failure to provide him with medical care for his leg during the four years he was requesting surgery and complaining of chronic leg pain led to the "unnecessary and wanton infliction of pain" condemned by the Supreme Court in *Estelle.* 429 U.S. at 103, 105, 97 S.Ct. 285. The Supreme Court has expressly rejected the idea that a "significant injury" is required to find wrongdoing under the Eighth Amendment: the deliberate indifference analysis is contextual and depends on the particular interrelationship of the seriousness of the plaintiff's medical need and the actions (or inactions) of the defendants. *Hudson v. McMillian,* 503 U.S. 1, 8-11, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

\*\*9 [8] Expert testimony is not required on the second element, defendants' alleged deliberate indifference, because McCabe does not complain of inadequate diagnosis or treatment, which might require expert testimony. Rather, McCabe complains about the systemic and individual failure to provide him with the care he requested, and that Dr. DiGiovanni had recommended--a failure produced by non-medical reasons. [FN13] *See Durmer v. O'Carroll,* 991 F.2d 64, 67-68 & n. 10 (3d Cir.1993) (reversing summary judgment for defendants on

denial of medical care claim, where there was some evidence in the record that plaintiff did not receive his prescribed care for non-medical reasons, e.g., a nurse's comment that "this is jail. This is not the real world, you can forget physical therapy"). McCabe's case falls within the parameters of *Estelle* and its progeny: he experienced, and repeatedly complained of, severe pain in his leg for nearly four years, a doctor recommended, and even scheduled, surgery, after finding serious arterial occlusion, and various prison officials in three different prisons ignored McCabe's repeated efforts to obtain his surgery, to the point of canceling his scheduled surgery. *See Douglas v. Hill,* 1996 WL 716278, *8 (E.D.Pa.1996) (denying defendants' motions for summary judgment on deliberate indifference claim where medical personnel were aware of plaintiff's complaints of pain, and of the recommended hernia surgery, but failed to authorize the surgery).

> FN13. As plaintiff states in his Response to Defendant Dr. Umar's Motion to Dismiss, "Plaintiff does not allege that Defendant Umar misdiagnoses Plaintiff's condition; rather, Defendant Umar *knew* that Plaintiff needed an operation, yet ignored it." At 7.

3. Defendants' Personal Involvement

[9][10] Although McCabe need not present an expert witness to proceed to trial, he must provide evidence that, if believed by a reasonable fact-finder, would show that each of the defendants knew, or should have known, of his serious medical need, and was deliberately indifferent to it. *See Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir.1988) (holding that to incur liability in a civil rights action, the Defendant must have some type of personal involvement in the incidents that are alleged to have violated the Plaintiff's civil rights); *Payton v. Vaughn,* 798 F.Supp. 258 (E.D.Pa.1992) (holding that to impose liability for a § 1983 violation, the Plaintiff must establish with particularity that a named Defendant was directly and personally involved in the deprivation of the Plaintiff's rights).

If there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of plaintiff, then that is enough of a showing to thwart imposition of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there is any evidence in the record from any source from which a reasonable inference in the plaintiff's favor may be drawn, the

moving party simply cannot obtain a summary judgment. *Id.* As to McCabe's § 1983 claims, sufficient questions of fact that must be presented to a jury have been raised as to defendants Pierce, Umar, and Skerl, but not as to the other defendants. I will analyze in turn each defendant charged with a § 1983 violation.

*454 4. Dr. Pierce

**10 Defendant Pierce is party to this action as a private physician working under contract with defendant Prison Health Services (Second Amended Complaint at ¶ 9). While at Delaware County Prison, McCabe went to Dr. Pierce on numerous occasions complaining of extreme pain in his left leg. McCabe maintains that defendant Pierce diagnosed him with "severe PVD" (peripheral vascular disease), knew that Dr. DiGiovanni diagnosed McCabe with total blockage of certain arteries in his left leg, knew that surgery on his left leg had been recommended by Dr. DiGiovanni, knew that plaintiff was in great pain, and yet failed to authorize the surgery for non-medical reasons (Plaintiff's Amended Supplement). Defendant Pierce does not deny Mr. McCabe's serious medical need (Brief of Defendant Dr. Pierce in Support of Motion to Dismiss, Doc. # 44).

Drawing all justifiable inferences for McCabe, I find that plaintiff has raised a genuine issue of material fact as to whether Dr. Pierce denied him surgery for non-medical reasons. Failure to treat qualifies as "deliberate indifference". *See, e.g., Young v. Quinlan,* 960 F.2d 351, 361 (3d Cir.1992) (intentional failure to act to prevent suffering from harm is deliberate indifference); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979) (failure to provide adequate treatment is evidence of deliberate indifference). Accordingly, I DENY the defendants' motion for summary judgment as to the § 1983 claim against Dr. Pierce;

5. Dr. Umar

Defendant Umar is being sued in his capacity as a medical care provider for S.C.I.-Graterford and as an employee of defendant Correctional Physicians Service. (Second Amended Complaint at ¶ 11). McCabe complained of his severe pain to Dr. Umar, and sought medical aid, including the recommended surgery, from him, only to be denied because "the prison was not Burger King" (Second Amended Complaint at ¶¶ 35-37).

117 F.Supp.2d 443                                                                        Page 11
(Cite as: 117 F.Supp.2d 443, *454, 1997 WL 710943, **10 (E.D.Pa.))

These facts demonstrate deliberate indifference--namely, that Dr. Umar was aware of McCabe's medical need, yet did not act upon it. The allegations in the Second Amended Complaint indicate that Dr. Umar examined McCabe, and then refused to send him for tests or surgery. (Second Amended Complaint at ¶¶ 35- 36). The alleged facts further demonstrate that, even after plaintiff asked for surgery to alleviate his intense pain, Dr. Umar continued to refuse treatment. (Second Amended Complaint at ¶ 36). Denial of medical treatment often qualifies as deliberate indifference. *See, e.g., Young v. Quinlan,* 960 F.2d at 361; *Inmates of Allegheny County Jail,* 612 F.2d at 762.

Furthermore, the allegations indicate that Dr. Umar was deliberately rude and indecent in dealing with plaintiff's suffering. (Second Amended Complaint at ¶ 36: the "Burger King" comment). Offensive and outrageous acts serve as proof of deliberate indifference. *See e.g., Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Estelle,* 429 U.S. at 105-06, 97 S.Ct. 285.

**11 Plaintiff thus raises genuine issues of fact for trial regarding defendant Umar's behavior towards his serious medical need. Accordingly, I DENY summary judgment on the § 1983 claim as to Dr. Umar;

6. Dr. Skerl

Defendant Skerl is being sued in his capacity as Medical Director of S.C.I.- Cresson, and as an employee or agent of defendant Executive Health Group (Second Amended Complaint at ¶ 10). McCabe made numerous visits to Dr. Skerl, and wrote many letters to Dr. Skerl explaining the leg pain he was suffering, and requesting Dr. Skerl's help (Plaintiff's Amended Supplement). McCabe's claims that he repeatedly sought help from Dr. Skerl are corroborated by his medical records, which reveal frequent visits to the infirmary by McCabe because of leg pain. *455 (e.g., SCI-Cresson medical records dated 4/30/93; 5/04/93; 6/14/93; 6/15/93; 7/08/93; 7/14/93; 9/16/93; 9/21/93; 10/18/93; 10/25/93; 11/ 18/93; 12/16/93). McCabe further maintains that Dr. Skerl first denied him a prosthesis and then provided him with an inadequate one, leading to further pain and suffering. (Plaintiff's Amended Supplement).

Genuine issues of material fact as to Dr. Skerl's knowledge of and possible indifference to McCabe's

serious medical need exist. Accordingly, I DENY summary judgment on the § 1983 claim as to defendant Skerl;

7. Doctors Rahman, Ennis, and Brandt

The only assertions that McCabe makes against defendants Rahman, Ennis, and Brandt are that he saw them while at Graterford, complained to them of leg pain, and none of them "would commit to surgery only medication" (Plaintiff's Amended Supplement). McCabe does not contend that these doctors knew, or should have known, how severe his medical need was, or that they failed to authorize surgery for non-medical reasons.

Drawing every justifiable inference for the plaintiff, he has not presented enough that a reasonable fact-finder could find for him on his § 1983 claims against these defendants. Accordingly, I GRANT summary judgment on the § 1983 claims as to defendants Rahman, Ennis, and Brandt;

8. The Medical Records Personnel

McCabe alleges that defendant Spence failed to obtain his records from Delaware County Prison and to forward his records from SCI-Graterford to SCI-Cresson; that defendants Harris and Cramer failed to obtain his records from Delaware County Prison and SCI-Graterford; and that defendants Christie, Rensimer, and Alvanitakis failed to forward his records to SCI-Graterford. McCabe does not allege that these defendants knew of his serious medical need or exhibited deliberate indifference. He does not offer any evidence showing that these particular defendants failed to obtain or transfer his records or that the supposed lack of records contributed to his injuries. [FN14]

> FN14. Defendants Spence, Cramer, and Harris aver that they had no responsibility for plaintiff's medical records at all, and McCabe has not offered evidence to the contrary. (Spence Decl.; Cramer Interrog. Responses ¶ 23; Alvanitakis Aff. ¶ ¶ 1, 5, 6, 8, 10).

Accordingly, there is no genuine issue of material fact as to these defendants, and I GRANT summary judgment on the § 1983 claims as to defendants Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis.

C. STATE LAW CLAIMS

117 F.Supp.2d 443
(Cite as: 117 F.Supp.2d 443, *455, 1997 WL 710943, **11 (E.D.Pa.))

Page 12

**12 In addition to his federal civil rights claims, Plaintiff McCabe brings state law claims for both negligence and gross negligence against defendants Pierce, Skerl, Umar, Rahman, Ennis, and Brandt, and brings claims for ordinary negligence against defendants DiGiovanni, Magee, Harvey and Altoona Hospital. [FN15] I will treat these as medical malpractice claims. Finally, he brings claims for gross negligence against medical records personnel Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis.

> FN15. I will call these first two groups of defendants "the medical providers."

1. Medical Providers

[11] The malpractice inquiry differs from that under the Eighth Amendment in that it specifically requires comparison of the *actions* of particular defendants with the *standards* of their profession. [FN16] Under *456 Pennsylvania law, in order to establish a prima facie case of medical malpractice, the plaintiff generally must present an expert who will testify, to a reasonable degree of medical certainty, that the acts of the defendants deviated from the acceptable medical standards, and that the deviation constituted a substantial factor in causing the plaintiff's injury. [FN17] *Mitzelfelt v. Kamrin*, 526 Pa. 54,61, 584 A.2d 888, 892 (1990) (citing *Brannan v. Lankenau Hospital*, 490 Pa. 588, 417 A.2d 196 (1980)). *See also Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 480 (3d Cir.1979) (adopting Pennsylvania's requirement for expert testimony in legal malpractice actions). This requirement stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. *Brannan,* 490 Pa. at 595, 417 A.2d at 199 (1980).

> FN16. *See Ledford v. Sullivan,* 105 F.3d 354, 358-60 (7th Cir.1997) (distinguishing deliberate indifference from malpractice: "Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward [plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.").

> FN17. There are four elements to the prima facie case of medical malpractice in Pennsylvania: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm." *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 250, 661 A.2d 397, 399 (1995).

[12] The only exception to the requirement of expert witness testimony in medical malpractice claims is where the matter is "so simple, and lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons." *Brannan,* 490 Pa. 588, 417 A.2d 196 (quoting *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963)). Whether the decisions of the medical providers to deny or delay McCabe's surgery, given their knowledge of McCabe's condition and the standards of their profession, were negligent, and substantially caused McCabe's amputations, is not a matter within the competence of the ordinary layperson, and, therefore, requires expert testimony. McCabe has no expert witness to testify on his behalf. Accordingly, I GRANT summary judgment on the state law claims as to defendants DiGiovanni, Pierce, Skerl, Umar, Rahman, Ennis, Brandt, Magee, Harvey, and Altoona Hospital.

2. Medical Records Personnel

[13][14] In order to withstand summary judgment on his gross and ordinary negligence claims against the medical records defendants, McCabe must present evidence on the four negligence elements: (1) a legal duty or obligation to conform to a certain standard of conduct; (2) a failure to conform to that standard; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage. *Farber v. Engle,* 525 A.2d 864 (Pa.Cmwlth.1987). McCabe claims a duty for each of the defendants to transfer or obtain his medical records (Second Amended Complaint at ¶¶ 15-20), but does not specify any standard; similarly, he claims that each of the prisons at which he was incarcerated failed to transfer or acquire his full medical records, but does not provide the slightest substantiation for the claimed negligence of each of the defendants (Second Amended Complaint at ¶ ¶ 60-66). [FN18]

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                    **Page 13**
**(Cite as: 117 F.Supp.2d 443, *456, 1997 WL 710943, **12 (E.D.Pa.))**

FN18. In their motions for summary judgment, the Commonwealth defendants assert that McCabe has not raised issues of material fact as to their negligence; in his responses, McCabe provides no new allegations or evidence. Defendant Spence avers that she had no contact with McCabe and no responsibility concerning non-SCI medical records. Defendant Cramer avers that she had no involvement with plaintiff at all. While Defendant Harris admits that she had both contact with McCabe and responsibility for obtaining medical records, she argues that she was not negligent, because: she met with McCabe twice to obtain authorizations for release of his arteriogram record, she followed up on the first request, and, finally, nothing in Dr. Skerl's record request for the arteriogram record suggested urgency.

Defendant Alvanitakis also moved separately for summary judgment. In his Amended Supplement to Brief in Opposition to Defendants Motion for Summary Judgment, McCabe states that Alvanitakis "prepared a DC-7X form-- Temporary Transfer Information" on November 19, 1991, in preparation for his transfer to Graterford, and then, that this form "outlined the Plaintiffs' medication's and the recommendation for 'needed Vascular surgery.' " Alvanitakis avers that she was in charge of all of the criminal record history for inmates, and had no responsibility for medical records. Delaware County Prison had an independent contractor, Prison Health Services, which provided medical care, and kept all records. McCabe has not provided any evidence showing that Alvanitakis was responsible for medical records; furthermore, in his Amended Supplement, McCabe says that Alvanitakis did provide the necessary information.

**\*457 \*\*13** Giving him the benefit of every doubt, McCabe has not raised a genuine issue of material fact as to the negligence of the medical records personnel defendants. Accordingly, I GRANT summary judgment on the state law claims against defendants Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis. [FN19]

FN19. The Commonwealth defendants,

Spence, Harris, and Cramer, also claim sovereign immunity from tort liability. As I find that McCabe has not raised genuine issues of material fact as to their negligence, I need not reach the issue of sovereign immunity.

### ORDER

AND NOW, this ____ day of November, 1997, upon consideration of the motions made by defendants Prison Health Services, Correctional Physicians Services, Executive Health Group, DiGiovanni, Skerl, Pierce, Magee, Umar, Harvey, Rahman, Ennis, Brandt, Altoona Hospital, Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis and the responses filed by plaintiff McCabe, IT IS ORDERED:

1) that, with regard to the motion of DEFENDANT ALVANITAKIS for summary judgment on the state law and § 1983 claims against her, such motion is GRANTED;

2) that, with regard to the motion of DEFENDANTS SPENCE, HARRIS AND CRAMER for summary judgment on the state law and § 1983 claims against them, such motion is GRANTED;

3) that, with regard to the joint motion on behalf of all defendants for summary judgment on the state law and § 1983 claims against them, such motion is GRANTED on all claims as to DEFENDANTS PRISON HEALTH SERVICES, CORRECTIONAL PHYSICIANS SERVICES, EXECUTIVE HEALTH GROUP, DIGIOVANNI, RAHMAN, ENNIS, BRANDT, MAGEE, HARVEY, ALTOONA HOSPITAL, SPENCE, HARRIS, CRAMER, CHRISTIE, RENSIMER, AND ALVANITAKIS;

4) and that, with regard to the joint motion on behalf of all defendants for summary judgment on the state law and § 1983 claims against them, such motion is GRANTED on the state law claims as to DEFENDANTS SKERL, PIERCE AND UMAR and DENIED on the § 1983 claims as to DEFENDANTS SKERL, PIERCE AND UMAR.

117 F.Supp.2d 443, 1997 WL 710943 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL RAMOS,                          :
            Plaintiff            :
                                 :
            v.                   :    Civil No. 1:CV-00-1957
                                 :    (Jones, J.)
MARGARET HARDEN, Warden,               :    (Smyser, M.J.)
et al.,                                :
            Defendants           :    ELECTRONICALLY FILED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on July 15, 2003, she served a copy of the attached

**EXHIBITS IN SUPPORT OF THE UNITED STATES'
MOTION FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Andrew J. Ostrowski, Esquire
BAILEY, STRETTON & OSTROWSKI
4311 North Sixth Street
Harrisburg, PA 17110

Patrick T. O'Connell, Esquire
SABA, ENDLER & ASSOCIATES, L.L.P.
106 West Front Street
Berwick, PA 18603

                                      s/ Michele E. Lincalis
                                      MICHELE E. LINCALIS
                                      Paralegal Specialist