TAM:GMT:mel:2002V00410

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:CV-00-1957 |
| v. | : | |
| | : | (Jones, J.) |
| MARGARET HARDEN, DR. MIGLORI, | : | (Smyser, M.J.) |
| DR. MAXIMO R. VELASCO, JR., | : | |
| DR. ANTHONY BUSSANICH, and | : | |
| DR. PETER J. TERIHAAR, | : | |
| | : | **FILED ELECTRONICALLY** |
| Defendants | : | |

**THE UNITED STATES' BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

This case was initiated by Manuel Ramos, an inmate formerly incarcerated at FCI Allenwood and USP Lewisburg. It was originally filed in the United States District Court for the District of Columbia against Kathleen Hawk Sawyer, the Director of the Bureau of Prisons, and Margaret Harden, Warden of FCI Allenwood. By Order dated September 20, 2000, Director Hawk was dismissed and the remainder of the case was transferred to this Court.

Ramos amended his complaint on November 13, 2000, and named four additional defendants: Dr. McGlori, Maximo R. Velasco, Dr. Anthony Bussanich, and Dr. Peter J. Terhaar. On May 20, 2002, the United States Attorney's Office filed a motion to dismiss the amended complaint on behalf of federal defendants Harden, McGlori,

Velasco, and Bussanich.[1]  The motion was granted in part and denied in part on September 26, 2002.  More specifically, as to the federal defendants: (1) the <u>Bivens</u> claims against defendants in their official capacities were dismissed because those claims are barred by the sovereign immunity of the United States; (2) the <u>Bivens</u> claims against defendants Harden and McGlori individually were dismissed because they were barred by the statute of limitations; (3) the <u>Bivens</u> claims against the other defendants were not dismissed on the basis of the statute of limitations; (4) the amended complaint was not dismissed at that time based on Ramos' failure to exhaust administrative remedies; (5) Ramos' FTCA claim was not dismissed on the statute of limitations; and, (6) the FTCA claim against the individual defendants was dismissed. It was further ordered that the United States be substituted as the proper FTCA defendant.

   The only remaining federal defendants to this action are Bussanich, Velasco, and the United States of America.  The only remaining claims are the negligent acts of force used by an unknown officer and the inadequate and delayed medical treatment rendered by Bussanich and Velasco which allegedly caused the inmate to lose the normal use of his right hand.

   Defendants submit that, as to the remaining <u>Bivens</u> claims against Bussanich and Velasco, Ramos has failed to exhaust his

---

[1] Dr. Terhaar is not a federal employee and is represented by private counsel.

administrative remedies. As to the FTCA medical claim, Ramos has not presented any expert medical testimony demonstrating that the United States' conduct varied from accepted standards of medical practice. Additionally, plaintiff has not presented any expert medical testimony demonstrating that any alleged deviation was a substantial factor in causing Ramos' injury. Accordingly, the United States requests summary judgment be granted in its favor and against plaintiff.[2]

## Statement of Facts and Procedural History

### Facts Regarding Exhaustion of the Bivens Claim

The Bureau of Prisons has established an administrative remedy procedure whereby an inmate can seek formal review of any aspect of his confinement. 28 C.F.R. § 542.10; Exh. 1 (Cunningham Decl.), ¶ 2. This procedure ordinarily requires that an inmate first file his complaint at the institution with the Warden. If the inmate is dissatisfied with the Warden's response, the inmate may appeal to the appropriate Regional Office within twenty calendar days of the Warden's response. If dissatisfied with the Regional Office's response, the inmate may appeal to the Office of

---

[2] In light of Ray v. Kertes, 285 F.3d 287, 293-97 (3d Cir. 2002), holding that the failure to exhaust administrative remedies is an affirmative defense, and Robinson v. Johnson, 313 F.3d 128, 135-37 (2002), holding that this defense, if not raised in an answer, should be raised at the first available opportunity, we are raising exhaustion at this time so as to promote judicial economy. See Robinson, 313 F.3d at 137. Accordingly, we reserve the right to address the merits of Ramos' claims or any other applicable defenses if unsuccessful on this motion.

the General Counsel in Washington, D.C., within thirty calendar days of the signed Regional Director's response. 28 C.F.R. § 542.15(a); Exh. 1, ¶ 2. An appeal to the General Counsel is considered the final administrative appeal in the Bureau of Prisons' Administrative Remedy Program. Id.

A review of Ramos' administrative remedy log reveals that he has successfully filed twenty-two administrative remedies on a variety of issues while incarcerated with the Bureau of Prisons. Exh. 1, ¶¶ 3-4; pp. 4-15 (Administrative Remedy Generalized Retrieval). More specifically, he has successfully filed requests for administrative remedy while confined at FCI Fort Dix, New Jersey, FCI Allenwood, USP Allenwood, USP Lewisburg, USP Lompoc, California, and USP Florence, Colorado. Exh. 1, ¶ 5; pp. 4-15. Nineteen of the administrative remedy requests were filed since alleging he injured his thumb in March 1997; however, none of these concerned any use of force allegations which injured his right thumb or the subsequent medical treatment of his right thumb. Exh. 1, ¶¶ 3-5; pp. 4-15.

Inmates may request blank copies of the Bureau of Prisons' administrative remedy forms from staff. Exh. 1, ¶ 6. The subject matter of the request and supporting details are completed by the inmate. Id. As the record reveals, Ramos had access to at least nineteen administrative remedy forms after the date of his thumb injury, however, he chose to submit those requests concerning

issues other than his thumb injury and subsequent medical care. Id.

**Facts Regarding Exhaustion of the FTCA Claim**

On March 15, 1999, nearly two years after the alleged incident which injured his right thumb, Ramos filed an administrative tort claim alleging that staff at FCI Allenwood fractured his right hand on March 25, 1997, and that staff further failed to provide adequate medical treatment for his right hand and delayed needed surgery until January 1999.  Exh. 1, pp. 16-19;  The administrative tort claim, seeking compensatory damages of $5 million, was denied by the Bureau of Prisons on January 7, 2000.  Id. at p. 18.

**Procedural History**

On July 11, 2000, Ramos filed his complaint in the United States District Court for the District of Columbia against the Director of the Federal Bureau of Prisons and the Warden of FCI Allenwood.  By an Order dated September 18, 2000, the Court construed Ramos' complaint as a Bivens claim and as a claim under the FTCA and dismissed with prejudice the claim against the Director.  The remaining case was transferred to this Court.

Ramos amended his complaint, with leave of Court, on November 13, 2000, naming additional defendants.  On September 26, 2002, a motion to dismiss the federal defendants was granted in part and denied in part.  An answer to the complaint was filed on October 17, 2002.

On November 25, 2002, following a case management conference with the parties, the Court issued a scheduling order establishing, inter alia, case management deadlines for discovery, expert witness reports, the joinder of parties, amendments to the pleadings, and dispositive motions.

The deadline for the submission of Ramos' expert witness report was June 30, 2003. To date, Ramos has not produced any expert witness reports in support of his claims.

## Questions Presented

1. Should summary judgment be granted to defendants on the Bivens claims as Ramos has failed to exhaust his administrative remedies?

2. Should the FTCA claims be dismissed as Ramos is unable to establish his burden of proof?

## Argument

**A. Ramos Has Failed to Exhaust the Administrative Remedy Process Concerning the Bivens Portion of his Amended Complaint.**

Under the Prison Litigation Reform Act (hereinafter "PLRA"), a federal prisoner is required to exhaust his administrative remedies before filing a complaint. Specifically, the PLRA provides that ". . . [N]o action shall be brought with respect to prior conditions under . . . any . . . Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Third Circuit has held that, "no action shall be brought in federal court until such administrative remedies as are available have been exhausted." Nyhuis v. Reno,

6

204 F.3d 65, 78 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  As such, inmates are required to exhaust their "available administrative remedies prior to initiating a prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law." Fortes v. Harding, 19 F. Supp. 2d 323, 325 (M.D. Pa. 1998).

   The Supreme Court in Porter v. Nussle, 534 U.S. 516 (2002), requires an inmate to exhaust his available administrative remedies before bringing any type of suit.  In Porter, an inmate brought directly to court, a complaint which alleged he was assaulted by several corrections officers and told they would kill him if he reported the beating.  Id. at 520-21.  The inmate bypassed the exhaustion provisions established by the PLRA and filed suit pursuant to 28 U.S.C. § 1983.  The complaint was filed days before the statue of limitations expired, which clearly promoted him to bypass the administrative remedy requirement.  Id.  The Supreme Court concluded that, "[t]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532.

   The exhaustion doctrine has been developed to facilitate judicial review by allowing the appropriate agency to develop a factual record and apply its expertise, to conserve judicial resources, and to allow the defendant agency the first opportunity

7

to correct its own errors. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). If a federal prisoner fails to follow the detailed procedures and guidelines to exhaust his administrative remedies, the action cannot be maintained. Furthermore, under settled Third Circuit law, an inmate who files a Bivens action seeking more than just money damages must exhaust his administrative remedies. Young v. Quinlan, 960 F.2d 351, 356 n.8 (3d Cir. 1992); Lyons v. United States Marshals Service, 840 F.2d 202 (3d Cir. 1988); Veteto v. Miller, 794 F.2d 98, 100 (3d Cir. 1986).

In the present case, Ramos has not completed the administrative remedy requirements set forth in 28 C.F.R. §§ 542.10 - 542.16. See Irwin v. Hawk, 40 F.3d 347, 348 (11th Cir. 1994) ("When Congress prescribes an administrative remedy, application of the exhaustion requirement is not a matter of judicial discretion"). The record presently before the Court establishes that Ramos is familiar with the administrative remedy procedure and that he has successfully filed twenty-two administrative remedies on a variety of issues. See Exh. 1, ¶ 4. As noted above, defendants raised Ramos' failure to exhaust his administrative remedies in their motion to dismiss filed in May 2002. The Court determined it was not appropriate to grant the motion to dismiss due to Ramos' allegation that he was denied forms to file grievances. This is without merit as *nineteen* of the twenty-two administrative remedies were filed by Ramos

8

subsequent to March 1997; however, none of them concerned the injury to, or the subsequent medical treatment of, his right thumb. Id., ¶¶ 4-5. Therefore, in light of Ramos' failure to exhaust the administrative remedy procedure, defendants should be granted summary judgment on the Bivens claim.[3]

**B. Ramos Has Failed to Provide Expert Testimony Within the Court Prescribed Deadline, And As Such, He Is Unable To Satisfy His Burden of Proof With Respect to His Claims of Negligent Medical Treatment.**

In the medical malpractice portion of his complaint, Ramos alleges that the Bureau of Prisons deviated from standard medical care by failing to adequately treat his injured hand and waited many months before scheduling him for surgery. In particular, it appears that Ramos believes that, due to the Bureau of Prisons' negligence and delay in treatment, he suffered severe and unnecessary pain, the dysfunction of his right hand and profound anguish.

---

[3] Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In Celotex, the Court held that "Rule 56(e)... requires that the non-moving party go beyond the pleadings by [his] own affidavits, or by 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'". Id. at 324. Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex, 477 U.S. at 325.

Under the FTCA, the Court must determine whether the United States is subject to tort liability by applying the substantive law of the state "where the act or omission occurred". 28 U.S.C. § 2674. In such an action, the law of the place where the alleged act or omission occurred, i.e. Pennsylvania, is to be applied. 28 U.S.C. § 1346(b); <u>Rodriguez v. United States</u>, 823 F.2d 735, 739 (3d Cir. 1987); <u>Smith v. United States</u>, 437 F. Supp. 1004, 1005 (E.D. Pa. 1977).

In order to state a <u>prima facie</u> case of medical malpractice in Pennsylvania, a plaintiff must show: (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm. <u>Mitzelfelt v. Kamrin</u>, 584 A.2d 888, 891 (Pa. 1990); <u>Flanagan v. Labe</u>, 666 A.2d 333, 335 (Pa. Super. 1995).

Moreover, the plaintiff must have "an ***expert*** witness testify to a 'reasonable degree of ***medical*** certainty, that the acts of the physician deviated from good and acceptable medical standards, <u>and</u> that such deviation was the ***proximate cause*** of the harm suffered.'" <u>Flanagan</u>, 666 A.2d at 335(emphasis in original) (quoting <u>Mitzelfelt</u>, 584 A.2d at 892); <u>Muhannad v. Reyes</u>, No. 4:CV-99-0468, <u>slip op.</u> (M.D. Pa., Nov. 5, 2001) (McClure, J.)(copy attached as Exhibit 2). See also <u>Joyce v. Boulevard Physical Therapy & Rehabilitation Center, P.C.</u>, 694 A.2d 648, 654 & n.3

(Pa. Super. 1997); <u>Maurer v. Trustees of the University of Pennsylvania</u>, 614 A.2d 754, 757-58 (Pa. Super. 1992) (en banc)(citing cases). Further, to be admissible, the expert's opinion must be rendered within a reasonable degree of medical certainty. <u>Montgomery v. South Philadelphia Medical Group</u>, 656 A.2d 1385, 1390 (Pa. Super. 1995).

As to the standard of care, the Pennsylvania courts have held that a physician or surgeon is neither a warrantor of a cure nor a guarantor of the result of his treatment.

> A physician who is not a specialist is required to possess and employ in the treatment of a patient the skill and knowledge usually possessed by physicians in the same or a similar locality, giving due regard to the advanced state of the profession at the time of the treatment; and in employing the required skill and knowledge he is also required to exercise the care and judgment of a reasonable man. However, a physician or surgeon is not bound to employ any particular mode of treatment of a patient, and, where among physicians or surgeons of ordinary skill and learning more than one method of treatment is recognized as proper, it is not negligence for the physician or the surgeon to adopt either of such methods.
>
>   The burden of proof in a malpractice action is upon the plaintiff to prove either (1) that the physician or surgeon did not possess and employ the required skill and knowledge or (2) that he did not exercise the care and judgment of a reasonable man in like circumstances....

<u>Maurer</u>, 614 A.2d at 758 (quoting <u>Donaldson v. Mafucci</u>, 156 A.2d 835, 838 (Pa. 1959)(omitting citations)). Additionally, the applicable standard of care may encompass more than one method of treatment. <u>Maurer</u>, 614 A.2d at 758 (citing <u>Brannan v. Lankenau</u>

11

Hospital, 417 A.2d 196, 200 (Pa. 1980)(jury may not decide which of two respected methods was the better)).

The requirement of expert medical testimony "stems from judicial concern that, absent guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances." McCabe v. Prison Health Services, 1997 WL 710943, *12 (E.D. Pa. 1997)(quoting Brannan v. Lakenau Hospital, 417 A.2d 196, 201 (1980))(copy attached as Exhibit 3).  The only exception to this rule is where "the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons."  McCabe, 1997 WL 710943 *12 (quoting Brannan, 417 A.2d at 196.)  Whether the care and treatment provided to Ramos by medical staff at USP Lewisburg fell below the standards for the profession are not questions within the range of knowledge of laypersons.  Accordingly, in order for plaintiff's FTCA claims to survive, he was required to submit expert medical testimony to support his prima facie case of medical negligence on or before June 30, 2003.  Ramos had an ample opportunity to secure an expert witness in order to support his medical malpractice claims.  Because he failed to do so, he cannot meet his burden of proof as specified by Pennsylvania law.  Defendant, therefore, is entitled to summary judgment under Fed. R. Civ. P. 56.

**Conclusion**

In that Ramos has failed to exhaust his administrative remedies and has presented no medical expert testimony to support his assertions of negligence, defendants' motion for summary judgment should be granted.

                                        Respectfully submitted,

                                        THOMAS A. MARINO
                                        United States Attorney

                                        s/ G. Micheal Thiel
                                        G. MICHAEL THIEL
                                        Assistant U.S. Attorney
                                        Atty. I.D. No. PA 72926
                                        MICHELE E. LINCALIS
                                        Paralegal Specialist
                                        316 Federal Building
                                        240 West Third Street
                                        Williamsport, PA 17703
                                        Telephone: 570-348-2800
                                        Facsimile: 570-348-2830

Dated: July 15, 2003

```
                    UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL RAMOS,                       :
            Plaintiff               :
                                    :
            v.                      :  Civil No. 1:CV-00-1957
                                    :  (Jones, J.)
MARGARET HARDEN, Warden,            :  (Smyser, M.J.)
et al.,                             :
            Defendants              :  ELECTRONICALLY FILED
```

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on July 15, 2003, she served a copy of the attached

**THE UNITED STATES' BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Andrew J. Ostrowski, Esquire
BAILEY, STRETTON & OSTROWSKI
4311 North Sixth Street
Harrisburg, PA 17110

Patrick T. O'Connell, Esquire
SABA, ENDLER & ASSOCIATES, L.L.P.
106 West Front Street
Berwick, PA 18603

                                              s/ Michele E. Lincalis
                                              MICHELE E. LINCALIS
                                              Paralegal Specialist