UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | CIVIL NO.: 1:00-CV-1957 |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| MARGARET HARDEN, | : | |
| DR. MCGLORI, | : | (Magistrate Judge Smyser) |
| DR. MAXIMO R. VELASCO, JR., | : | |
| DR. PETER J. TERHAAR | : | |
| Defendants. | : | |

**PLAINTIFF'S BRIEF *IN OPPOSITION* TO
DEFENDANT- DR. TERHAAR'S MOTION FOR SUMMARY JUDGMENT**

I.     **COUNTER- STATEMENT OF FACTS**

Plaintiff (hereinafter "Mr. Ramos"), a federal prisoner proceeding *pro se*, commenced this action by filing a Complaint. In his Amended Complaint, Mr. Ramos alleged that on March 25, 1997, while confined at the Allenwood Federal Correctional Institution (hereinafter "FCI-Allenwood") in White Deer, Pennsylvania, a correctional officer, when using unreasonable and excessive force, fractured his

right thumb.[1] Mr. Ramos complained to the medical staff about the excruciating pain and swelling of his thumb. The medical staff brushed off his complaints for over two months and tortured him by merely prescribing him Motrin.

On May 21, 1997, Mr. Ramos was transferred from FCI-Allenwood to the United States Penitentiary at Allenwood (hereinafter "USP-Allenwood"). Mr. Ramos continued to complain of raw and piercing pain as well as swelling only to be told, for a long and tormenting six months, to take Motrin[2]. On November 19, 1997, Mr. Ramos was transferred to the United States Penitentiary at Lewisburg (hereinafter "USP-Lewisburg"). Mr. Ramos continued to report to medical staff that he was suffering intolerable pain.

Finally after eight and a half months of reporting to federal medical staff that his thumb was causing him to suffer acute pain and anguish, on December 4, 1997, Mr. Ramos finally had an X-ray taken which revealed that his thumb was, in deed, fractured and would need surgery. The medical report dated 12/14/97 revealed that Mr. Ramos had a avulsion fracture at the distal first metacarpal. (Exhibit A).

Mr. Ramos was forced to endure continued misery and he was also forced to

---

[1] Plaintiff's Amended Memorandum of Law in Support of Civil Rights Complaint was treated by the Court as his Amended Complaint. Inasmuch as this document contains an affidavit, Plaintiff incorporates that document herein by reference as setting forth factual issues for purposes of his response to Defendants' Motion for Summary Judgment.

[2] Mr. Ramos constantly informed the federal medical staff that Motrin upset his stomach.

beg federal medical staff for an additional two months until on February 9, 1998, the medical staff responded to his continued pleas for relief from his misery and recommended that Mr. Ramos should be evaluated by an orthopedic surgeon.

It took approximately one month more of continued pain and suffering, until on March 2, 1998, Defendant Dr. Velasco evaluated Mr. Ramos and confirmed that surgical repair of the tendon was needed. On June 10, 1998, (Exhibit B) surgery was cancelled because negligently, the PATS had not been done. It took seven months to reschedule the surgery with Defendant Terhaar.

On January 7, 1999, Defendant Terhaar's Report of Operation (Exhibit C) provided as follows:

> Mr. Ramos "had severe chronic instability involving his right thumb metacarpophalangeal joint. Intraoperatively, the ulnar collateral ligament was noted to be severely attenuated and redundant. It was not suitable for repair, therefore, a palmaris longus graft was taken from the ipsilateral extremity and utilized fro reconstruction.

Mr. Ramos did not receive information from Dr. Terhaar that the surgery was experimental or that he may have postoperative stiffness, infection, nerve and artery damage and may not have a full recovery of his thumb.[3]

Throughout January and February of 1999, Mr. Ramos complained of

---

[3]Defendant alleges that Mr. Ramos, who cannot read or write English, signed a consent form, yet Defendant has failed to produce said signed-form or evidence that a translator was present to make sure that Mr. Ramos adequately understood the risks involved.

continued agony in is right hand and wrist. On February 22, 1999, Mr. Ramos was transferred to the United States Penitentiary at Lompoc California. Mr. Ramos informed the medical staff that he was still experiencing extreme pain and the consulting physician informed him that the surgery performed by Defendant Terhaar was experimental and should not have been done. On May 24, 2000 (Exhibit G) Mr. Ramos was evaluated at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri because he had developed right hand paresthesia involving the right thumb, index, long finger, and lateral portion of ring finger. The evaluation concluded that Mr. Ramos has moderate to severe right carpal tunnel syndrome.

Mr. Ramos alleges that (1) Defendant Terhaar was negligent when he showed deliberate indifference to his serious medical needs by performing an experimental surgery on his right hand, (2) that Defendant Terhaar failed to inform him that the surgery was experimental and (3) that Defendant Terhaar was negligent in performing the surgery.

## II.  PROCEDURAL HISTORY

Because Mr. Ramos speaks and reads very little English the Court determined that he lacked the ability and knowledge to pursue his case adequately, thus, in an Order dated July 19, 2002, Judge Smyser granted a request for the appointment of counsel.

On July 11, 2003, Defendant Terhaar filed a Motion for Summary Judgment based upon Plaintiff not submitting an export report indicating that Defendant Terhaar (1) committed malpractice, (2) failed to obtain informed consent before proceeding with surgery of Mr. Ramos' hand, and (3) performed an experimental surgery. This Brief is in Opposition to Defendant's Motion.

### III.    COUNTER -QUESTIONS PRESENTED

A.    <u>Whether Defendant Terhaar is entitled to Summary Judgment on the medical malpractice claim that he performed an experimental surgery without the proper informed consent due to the fact that Plaintiff has not disclosed an expert report?</u>

   Suggested Answer: NO

### IV.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact and, viewing the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Abramson v. William Paterson College of N.J.,* 260 F.3d 265, 276 (3d Cir.2001). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);*Wastak v. Lehigh Valley Health Network,* 333 F.3d 120, 124 (3d Cir. (Pa.), 2003)

## V. COUNTER-ARGUMENT

A. <u>Whether Defendant Terhaar is entitled to Summary Judgment on the medical malpractice claim that he performed an experimental surgery without the proper informed consent due to the fact that Plaintiff has not disclosed an expert report?</u>

*INFORMED CONSENT*

Pennsylvania's informed consent doctrine maintains that a competent adult in a non-emergency setting must grant informed consent before treatment or surgery. *Festa v. Greenberg,* 354 Pa.Super. 346, 350, 511 A.2d 1371, 1373 (1986), *app. denied,* 515 Pa. 580, 527 A.2d 541 (1987). A doctor must "apprise the patient 'of such important matters as the nature of the therapy, the seriousness of the situation, the disease and organs involved and the potential results of the treatment.' " *Id.* (*quoting Salis v. United States,* 522 F.Supp. 989, 997 (M.D. Pa.1981)). If consent is not given, then the physician is considered to have committed a "technical battery." *Kaskie v. Wright,* 403 Pa.Super. 334, 340, 589 A.2d 213, 216, *app. denied,* 529 Pa. 634, 600 A.2d 954 (1991).

Pennsylvania uses the prudent patient standard, where the question is whether "the physician disclosed those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment." *Festa,* 354 Pa.Super. at 353, 511 A.2d at 1375. Normally in Pennsylvania, an expert is needed to establish

that alternatives and/or risks exist. *Id.* at 357, 511 A.2d at 1377, **however, an expert medical report is only necessary in those cases where the connection is not obvious.** *Maliszewski v. Rendon,* 374 Pa.Super. 109, 113, 542 A.2d 170, 172 (1988), *app. denied,* 520 Pa. 617, 554 A.2d 510 (1989). The patient must show either that he or she suffered " 'an injury, the risk of which was undisclosed, *or* the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment.' " *Id.* at 114, 542 A.2d at 172 (*quoting Neal v. Lu,* 365 Pa. Super. 464, 478, 530 A.2d 103, 111 (1987)).

 It is evidenced by the current dysfunction of Plaintiff's hand that there could be detrimental consequences of the surgery and because Defendant Terhaar had a duty to provide information to, and receive an informed consent from, Mr. Ramos regarding the experimental nature of the surgery as well as the possible consequences, and that Defendant Terhaar breached said duty when he did not provide said information nor received an informed consent, and Plaintiff was unable to make an informed decision whether to risk surgery or not, therefore, Plaintiff prays that this Honorable Court deny Defendants' Motion for Summary Judgment.

 Normally, in order to satisfy the burden of proving Defendant's were negligent in failing to provide Mr. Ramos with information regarding risks, Plaintiff must introduce expert testimony to show that Defendants' conduct varied from accepted

medical practice. *Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794 (1970); *Dornon v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966). This requirement stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. *McMahon v. Young*, 442 Pa. 484, 276 A.2d 534 (1971); *Florig v. Sears, Roebuck and Co.*, 388 Pa. 419, 130 A.2d 445 (1957).

The exception to the above rule requiring expert medical testimony is "where the matter under investigation is so simple, and the lack of skill; or want of care so obvious, as to be within the range of ordinary experiences and comprehension of even nonprofessional persons." *McCabe v. Prison Health Services*, 1997 WL 710943, 12 (E.D. Pa. 1997) *quoting Brannon v. Lakenau Hospital*, 417 A.2d 196 (1980); *see Ayers v. Parry,* 192 F.2d 181, 184 -185 (3d Cir. (1951) ("Occasionally expert testimony is not required where an injury ...is of such character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. This situation arises when an ulterior act or omission occurs, the explanation of which does not require scientific opinion."); *see* 70 C.J.S., Physicians and Surgeons, Sec. 62d(2); 41 Am.Jur. Physicians and Surgeons § 129; *see Natale v. Camden County Correctional Facility,* 318 F.3d 575, 579 (3d Cir. (N.J.), 2003) ("the jury itself is allowed 'to supply the

applicable standard of care and thus to obviate the necessity for expert testimony relative thereto.' " *Rosenberg,* 492 A.2d at 374 (*quoting Sanzari,* 167 A.2d at 632).

The factual predicate for a common knowledge case is one where " 'the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience.' " *Estate of Chin,* 734 A.2d at 785-86 (*quoting Rosenberg,* 492 A.2d at 375); *see Natale v. Camden County Correctional Facility,* 318 F.3d 575, 580 (3d Cir. (N.J.), 2003) citing the Supreme Court of New Jersey's recent decision in *Hubbard v. Reed,* 168 N.J. 387, 774 A.2d 495, 499-500 (2001) (holding that no affidavit of merit need be filed in "common knowledge" malpractice cases. "Where, however, common knowledge makes apparent a claim's merit, an expert's affidavit is unnecessary.")  In those cases, "the threshold of merit should be readily apparent from a reading of the plaintiff's complaint ... [and] an expert is no more qualified to attest to the merits of a plaintiff's claim than a non-expert." *Id.* at 500.

Defendant Terhaar, stated in January 1, 1999, in his Report of Operation (Exhibit E) that at the time of surgery, Mr. Ramos "had severe chronic instability involving his right thumb".  Defendant was required to disclose all risks associated with the experimental surgery to Mr. Ramos.  Exhibit F alleges that Defendant informed Mr. Ramos of all the risks and received a signed consent from him However, Defendant has failed to produce evidence of a signed consent form that

explained the risks, nor has Defendant produced evidence that a translator was present to translate the risks into English.

As evidenced by Exhibit H, it is common medical knowledge that there are risks that surgical repair will be ineffective if there is a delay in diagnosis and/or treatment of the condition, and Defendant has not provided any information to substantiate that the risks were disclosed to or discussed with Plaintiff.

Because if there is any evidence in the record from any source from which a reasonable inference in the Plaintiff's favor may be drawn, the Defendant simply cannot obtain a summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-51, 106 S.Ct. 2505,(1986). There is evidence that the Defendant deviated from standard medical practices, as a layperson can plainly see, because Defendant had a duty to provide information on the risks of an experimental surgery to Mr. Ramos, and that he breached that duty when he unnecessarily proceeded with the surgery without the informed consent of Mr. Ramos, which caused Mr. Ramos' pain and suffering which led to his permanent damages.

## VI.  CONCLUSION

For the foregoing reasons, and under the foregoing authorities, summary judgment must be denied.

                                                        Respectfully submitted,

Date:8/25/03                                s\ <u>Andrew J. Ostrowski, Esquire</u>  
                                                  PA Id. #: 66420  
                                                  4311 N. Sixth Street  
                                                  Harrisburg, PA 17110  
                                                  717-221-9500  
                                                  *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

    I, Andrew J. Ostrowski, hereby certifiy that the foregoing document is being served by first-class mail, addressed as follows:

Michael Thiel, Esquire
Assistant United States Attorney
U.S. Attorney's Office for the Middle District of Pennsylvania
Federal Building
P.O. Box 309
Scranton, PA 18501

Patrick O'Connell, Esquire
Suite 113
Park Building
400 Third Avenue
Kingston, PA 18704-5816

                                                                                     Andrew J. Ostrowski

July 21, 2003