# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | CIVIL NO.: 1:00-CV-1957 |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| MARGARET HARDEN, | : | |
| DR. MCGLORI, | : | (Magistrate Judge Smyser) |
| DR. MAXIMO R. VELASCO, JR., | : | |
| DR. PETER J. TERHAAR | : | |
| Defendants. | : | |

**PLAINTIFF'S BRIEF *IN OPPOSITION* TO DEFENDANTS', UNITED STATES OF AMERICA, VELASCO, AND BUSSANICH MOTION FOR SUMMARY JUDGMENT**

## I.    COUNTER- STATEMENT OF FACTS

Plaintiff (hereinafter "Mr. Ramos"), a federal prisoner proceeding *pro se*, commenced this action by filing a Complaint.  In his Amended Complaint, Mr. Ramos alleged that on March 25, 1997, while confined at the Allenwood Federal Correctional Institution (hereinafter "FCI-Allenwood") in White Deer, Pennsylvania, a correctional officer, when using unreasonable and excessive force, fractured his

right thumb.[1]  Mr. Ramos complained to the medical staff about the excruciating pain

and swelling of his thumb.  The medical staff brushed off his complaints for over two

months and tortured him by merely prescribing him Motrin. Before Mr. Ramos could

receive forms to file an internal grievance, on May 21, 1997, he was transferred from

FCI-Allenwood to the United States Penitentiary at Allenwood (hereinafter "USP-

Allenwood").  Mr. Ramos continued to complain of raw and piercing pain as well as

swelling only to be told, for a long and tormenting six months, to take Motrin[2]. Before

Mr. Ramos could receive forms  to submit an internal grievance, on November 19,

1997, he was transferred to the United States Penitentiary at Lewisburg (hereinafter

"USP-Lewisburg").  Mr. Ramos continued to report to medical staff that he was

suffering intolerable pain.

Finally after eight and one half months of complaining / reporting to federal

medical staff that his thumb was causing him to suffer acute pain and anguish, on

December 4, 1997, Mr. Ramos finally had an X-ray taken which revealed that his

thumb was, indeed, fractured and would need surgery.  The medical report dated

12/14/97 revealed that Mr. Ramos had a avulsion fracture at the distal first

---

[1]Plaintiff's Amended Memorandum of Law in Support of Civil Rights Complaint was treated by the Court as his Amended Complaint.  Inasmuch as this document contains an affidavit, Plaintiff incorporates that document herein by reference as setting forth factual issues for purposes of his response to Defendants' Motion for Summary Judgment.

[2] Mr. Ramos constantly informed the federal medical staff that Motrin upset his stomach.

metacarpal. (Exhibit A).

Mr. Ramos was forced to endure continued misery and he was also forced to beg federal medical staff for an additional two months until on February 9, 1998, the medical staff responded to his continued pleas for relief from his misery and recommended that Mr. Ramos should be evaluated by an orthopedic surgeon.

It was an additional month of continued pain and suffering, until on March 2, 1998, Defendant Dr. Velasco evaluated Mr. Ramos and confirmed that surgical repair of the tendon was needed. (Exhibit B, C). On June 10, 1998, (Exhibit D) surgery was cancelled because negligently, the PATS had not been done. It took Defendants seven months to reschedule the surgery with Defendant Terhaar.

Mr. Ramos alleges that Defendants United States and Velasco and Bussanich, both physicians at USP-Lewisburg, are liable for medical negligence and for deliberate indifference to his serious medical needs because they failed to adequately and promptly treat his hand injury and they allowed him to remain in a state of agony for approximately an additional year before they scheduled him for surgery.[3]

Defendant Terhaar's Report of Operation (Exhibit E, F) provided as follows:

_____

[3] It took an additional ten months, from March 2, 1998, until January 7, 1999, for Defendant Terhaar, a consulting surgeon, to perform the much needed surgery on Mr. Ramos' thumb. The surgery turned out to be unsuccessful and caused Mr. Ramos to lose the normal use of his hand.

Mr. Ramos "had severe chronic instability involving his right thumb metacarpophalangeal joint. Intraoperatively, the ulnar collateral ligament was noted to be severely attenuated and redundant. It was not suitable for repair, therefore, a palmaris longus graft was taken from the ipsilateral extremity and utilized for reconstruction.

Mr. Ramos did not receive information from his surgeon, Defendant Terhaar, that the surgery was experimental or that he may not have a full recovery of his thumb.[4] Throughout January and February of 1999, Mr. Ramos complained of continued agony in his right hand and wrist. On February 22, 1999, Mr. Ramos was transferred to the United States Penitentiary at Lompoc California. Mr. Ramos informed the medical staff that he was still experiencing extreme pain and the consulting physician informed him that the surgery performed by Defendant Terhaar was experimental and should not have been done. On May 24, 2000 (Exhibit G) Mr. Ramos was evaluated at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri because he had developed right hand paresthesia involving the right thumb, index, long finger, and lateral portion of ring finger. The evaluation concluded that Mr. Ramos has moderate to severe right carpal tunnel syndrome.

## II.  PROCEDURAL HISTORY

Because Mr. Ramos speaks and reads very little English the Court determined

---

[4]Defendant alleges that Mr. Ramos signed a consent form, yet Defendant has failed to produce said form or that a translator was present to make sure that Mr. Ramos adequately understood the risks involved.

that he lacked the ability and knowledge to pursue his case adequately, thus, in an Order dated July 19, 2002, Judge Smyser granted a request for the appointment of counsel.

On July 16, 2003 Federal Defendants, The United States of America, Bussanich, and Velasco filed a Motion for Summary Judgment stating that (1) regarding the <u>Bivens</u> Claims, Mr. Ramos has failed to exhaust his administrative remedies and (2) as to the FTCA claim, that Ramos has yet to provide any expert medical testimony demonstrating that the United States' conduct varied from accepted standards of medical practice or that any alleged deviation was a substantial factor in causing Mr. Ramos' injury.  This Brief is in Opposition to Defendants' Motion.

### III.    COUNTER -QUESTIONS PRESENTED

A.    <u>Whether Defendants are entitled to Summary Judgment based upon his failure to exhaust administrative remedies?</u>

Suggested Answer: NO

B.    <u>Whether Defendant, United States, is entitled to Summary Judgment on the FTCA and *Bivens* claims?</u>

Suggested Answer: NO

## IV.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact and, viewing the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Abramson v. William Paterson College of N.J.,* 260 F.3d 265, 276 (3d Cir.2001). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wastak v. Lehigh Valley Health Network,* 333 F.3d 120, 124 (3d Cir. 2003)

## V.   COUNTER-ARGUMENT

A.    Defendants are not entitled to Summary Judgment for failure to exhaust his administrative remedies when there were no administrative remedies available to him.

The PLRA requires a prisoner to exhaust all administrative remedies before bringing a suit regarding prison conditions. *See* 42 U.S.C.A. § 1997e(a); *see also Nyhuis v. Reno,* 204 F.3d 65, (3d Cir.2000) (holding that exhaustion of available remedies is condition precedent to filing a law suit).  In Lindsay v. Dunleavy 177 F.Supp.2d 398, 401 -402 (E.D.Pa.,2001), defendants argued that plaintiff did not exhaust the administrative remedies available. However, by the time Plaintiff learned that his jaw was broken, Plaintiff had already been transferred to Graterford. Defendants did not provide the Court with any information concerning what sort of

administrative remedies were available at either institution, but particularly what sort of administrative remedies were available at Graterford for an inmate complaining of conduct that occurred at a different facility.  Because there was remaining questions of fact regarding 1) whether plaintiff exhausted the available administrative remedies and 2) whether there were any administrative remedies available to exhaust, the Court denied the Motion to Dismiss on this basis. *See* 42 U.S.C.A. § 1997e(a) (must exhaust "available" administrative remedies).

In this case, Plaintiff made repeated requests for appropriate medical attention for an injury that was obviously serious, and in need of treatment, and he did see physicians as well as have surgery.  Mr. Ramos would not have known during the two years prior to surgery that a delay of surgery would cause his hand permanent damage, therefore, he would not have known to submit an internal complaint before the surgery.

It was only after the surgery when Mr. Ramos discovered that he lost substantial use of his hand, that he learned the delay in his surgery is what caused his injury.  Compare this to a prisoner, after being transferred to another facility, discovers that he has cancer due to being exposed to asbestos at a prior facility. Should prisoner's claim be dismissed because he did not file an internal grievance at the prior facility for an illness he had not know he had at that time or for a situation

he did not know was occurring?  Mr. Ramos, likewise, had no idea that for every day his surgery was delayed, his hand was getting worse.  It was only after his surgery he discovered why his hand would not recover.

Even if Mr. Ramos somehow knew the delay in surgery would cause him permanent injury, Defendants have not shown that there was an internal grievance procedure at each of the facilities in which Mr. Ramos was transferred, to complain about situations at a prior facility.  *See* Lindsay v. Dunleavy 177 F.Supp.2d 398, 401 -402 (E.D.Pa.,2001).

Mr. Ramos submitted a timely written complaint on March 15, 1999 when it became apparent that the medical attention he received, was too little too late, and that Defendants, by common  medical knowledge (Exhibit H), knew that the delay in his gamekeeper's thumb surgery would result in severe and permanent injury.  The question is whether prior to March 1999, other than making requests for medical treatment, any administrative remedies were available to Plaintiff, and then, whether Plaintiff's attempts to seek relief were frustrated by prison personnel.

Defendants have not offered any evidence to suggest that there was an administrative remedy available to Plaintiff prior to March of 1999, and have not disputed that Plaintiff made repeated requests for the medical treatment that was

available to him, and which Defendants had a duty to provide.  Even after repeated Orders by the Court that Defendant must provide initial disclosures, Defendants never sent Plaintiff copies of any of the alleged administrative complaints Mr. Ramos allegedly made concerning other issues.  In fact, the only proof Defendant offers is in their "Exhibits to Brief in Support of Summary Judgment" where they show computerized print-outs of alleged attempts by Mr. Ramos to complain about other issues.  This report also shows that Mr. Ramos obviously did not understand the procedure, nor received the mandated help with the English language that the law requires because Defendants print-outs show that many of Mr. Ramos's complaints were rejected because they were in Spanish.

In addition, Plaintiff submitted a *pro se* motion for stay to exhaust administrative remedies to the Court stating that he was denied forms to file a grievance relative to the care, or lack of care, that he was being provided for his injured hand, and this signed filing with the Court should be construed as sufficient for Plaintiff to have established an issue of fact in this regard.  *See Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002).  Plaintiff had an obvious injury to his right hand in March 1997 that ultimately was shown to have required surgery, and there was nothing Defendants could have done to administratively remedy the situation after the fact.  Under the circumstances, Summary Judgment must be denied.

B.    Defendants are not entitled to Summary Judgment on the *Bivens* and FTCA claims because Mr. Ramos can establish his burden of proof without the initial use of an expert medical report and said proof is easily understandable by a layperson.

Plaintiff has raised *Bivens* claims against Defendants Velasco and Bussanich for deliberate indifference to his serious medical needs, and an FTCA claim against the United States for medical negligence.

1.    **Deliberate Indifference**

A prison system has a duty to provide prisoners with adequate medical care, *see, e.g., Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Durmer v. O'Carroll* 991 F.2d 64, 67 (3d Cir. 1993)**.** In order to succeed in an action claiming inadequate medical treatment under the Eighth Amendment, a prisoner must show more than negligence; he must show "deliberate indifference" to a serious medical need. *Monmouth County Correctional Institution Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). In *Lanzaro,* the court noted that deliberate indifference could exist in a variety of different circumstances, including where " 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care' " or where "[s]hort of absolute denial ... 'necessary medical treatment [i]s ... delayed for non-medical reasons,' " or where " 'prison authorities

prevent an inmate from receiving recommended treatment.' " *Lanzaro,* 834 F.2d at

346 (citations omitted); *Durmer v. O'Carroll,* 991 F.2d 64, 68 -69 (3d Cir. 1993).

The court had also have found "deliberate indifference" to exist where the

prison official persists in a particular course of treatment "in the face of resultant pain

and risk of permanent injury." *Napoleon,* 897 F.2d at 109-1.   As in the instant case,

Defendants persisted in prescribing Mr. Ramos Motrin every time he requested relief

from his agony, this particular course of treatment resulted not only in unnecessary

pain but in permanent injury to Mr. Ramos' hand.   Moreover, the fact that a

diagnostic x-ray was delayed for nearly nine months, and needed surgery was delayed

for over twelve additional months clearly supports a reasonable inference of

deliberate indifference, and defendants have offered no evidence to suggest that their

delay in treatment was medically prudent or reasonable.

The court in *Estelle,* 429 U.S. at 103 held that waiting over two weeks to treat

a medical need constitutes extreme indifference."An inmate must rely on prison

authorities to treat his medical needs; if the authorities fail to do so, those needs will

not be met." *Id.*  Although society does not expect that prisoners will have unqualified

access to healthcare, Mr. Ramos has alleged a sufficiently serious medical need such

that ignoring it for two years constitutes deliberate indifference. *See Hathaway v.

Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994) (holding "a two year delay in arranging

necessary surgery could support a finding of deliberate indifference"); *Lopez-Diaz v. County of Lancaster,* 2003 WL 1592001, 5 (E.D. Pa., 2003) *quoting Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see Douglas v. Hill*, 1996 WL: 716278 (E.D. Pa. 1996) ("denying defendants' motion for summary judgment where medical personnel failed to authorize recommended hernia surgery, despite awareness of plaintiff's complaints of pain.")

Under the circumstances present in this case, the Court cannot conclude as a matter of law that Defendants' conduct did not run afoul of the *Lanzaro* standard. It is therefore important that Summary Judgment be denied so that the trier of fact can hear Defendants' testimony in order to assess their credibility, and that Mr. Ramos' counsel be permitted to explore the medical staff's motivation on cross-examination.

**2.    Negligent Medical Care**

Normally, in order to satisfy the burden of proving Defendants, federal medical personnel, were negligent in failing to care for Mr. Ramos in a timely manner, Plaintiff must introduce expert testimony to show that Defendants' conduct varied from accepted medical practice. *Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794 (1970); *Dornon v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966).

The exception to the above rule requiring expert medical testimony is "where the matter under investigation is so simple, and the lack of skill; or want of care so obvious, as to be within the range of ordinary experiences and comprehension of even nonprofessional persons." *McCabe v. Prison Health Services*, 1997 WL 710943, 12 (E.D. Pa. 1997) *quoting Brannon v. Lakenau Hospital*, 417 A.2d 196 (1980); *see Ayers v. Parry,* 192 F.2d 181, 184 -185 (3d Cir. (1951).

On March 26, 1997, a correctional officer, using excessive and unreasonable force, fractured Mr. Ramos' thumb.  It is undisputed that even though Mr. Ramos constantly reported his severe anguish and pain to federal medical staff, it took eight and one half months before Defendant took an X-ray of his thumb.  There is no dispute that in February of 1998, Defendants, federal medical staff, knew surgery was required yet waited approximately one year until performing said surgery. There need not be expert testimony of how long is too long.  A reasonable trier of fact could assume that waiting two years until a fracture is operated on is much too long and caused unnecessary suffering. *Lopez-Diaz v. County of Lancaster,* 2003 WL 1592001, 4 (E.D. Pa., 2003). Moreover, the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) recognized that even in less serious cases, where the prisoner does not experience severe torment or a lingering death, the infliction of unnecessary suffering is inconsistent with standards of decency. *Atkinson*

*v. Taylor,* 316 F.3d 257, 266 (3d Cir.2003).

Because Defendants waited so long before giving Mr. Ramos the medical attention he needed, his thumb atrophied and was unable to be easily corrected through surgery. Defendant Terhaar, stated in January 1, 1999, in his Report of Operation (Exhibit E) that at the time of surgery, Mr. Ramos "had severe chronic instability involving his right thumb" which, according to Exhibit H, made surgical repair difficult given the lapse of time between the ijury and the treatment.

Mr. Ramos WILL NOT have difficulty proving, without an expert medical testimony, that the initial denial of treatment and the ultimate delay in surgery caused the permanent dysfunction of his right hand, because all medical evidence about the prompt medical attention needed for Game Keeper's thumb, proves his allegation, furthermore, Dr. Terhaar, Mr. Ramos' surgeon, can provide the same testimony at trial.

Because if there is any evidence in the record from any source from which a reasonable inference in the Plaintiff's favor may be drawn, the Defendant simply cannot obtain a summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-51, 106 S.Ct. 2505, (1986). There is evidence that the medical staff deviated from standard medical practices, as a layperson can plainly see, because Defendant had a duty to provide timely medical service to Mr. Ramos, and that they breached that duty

when they unnecessarily delayed a known medical need for two years and that negligence caused Mr. Ramos' pain and suffering which led to his permanent damages, therefore, Plaintiff prays that this Honorable Court deny Defendants' Motion for Summary Judgment.

## VI.   CONCLUSION

For the foregoing reasons, and under the foregoing authorities, summary judgment must be denied.

Respectfully submitted,

Date: August 25, 2003                  s\ <u>Andrew J. Ostrowski, Esquire</u>
                                        PA Id. #: 66420
                                        4311 N. Sixth Street
                                        Harrisburg, PA 17110
                                        717-221-9500
                                        *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew J. Ostrowski, hereby certifiy that the foregoing document is being served by first-class mail, addressed as follows:

Michael Thiel, Esquire
Assistant United States Attorney
U.S. Attorney's Office for the Middle District of Pennsylvania
Federal Building
P.O. Box 309
Scranton, PA 18501

Patrick O'Connell, Esquire
Suite 113
Park Building
400 Third Avenue
Kingston, PA 18704-5816

S\ <u>Andrew J. Ostrowski</u>

August 25, 2003