TAM:GMT:mel:2002V00410

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:CV-00-1957 |
| v. | : | (Smyser, M.J.) |
| | : | |
| MARGARET HARDEN, DR. MIGLORI, | : | |
| DR. MAXIMO R. VELASCO, JR., | : | |
| DR. ANTHONY BUSSANICH, and | : | |
| DR. PETER J. TERIHAAR, | : | |
| | : | FILED ELECTRONICALLY |
| Defendants | : | |

**REPLY BRIEF IN SUPPORT OF THE FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This case was initiated in the United States District Court for the District of Columbia by Manuel Ramos, a federal prisoner who at that time was proceeding *pro se*. On September 20, 2000, one of the defendants, Director Hawk, was dismissed and the remainder of the case was transferred to this Court.

Ramos subsequently amended his complaint on November 13, 2000, and named four additional defendants. Presently, the only remaining federal defendants to this action are Anthony Bussanich, Maximo R. Velasco, Jr., and the United States of America. The only remaining claims against these defendants are the negligent acts of force used by an unknown officer and the

inadequate and delayed medical treatment rendered by Bussanich and Velasco which allegedly caused the inmate to lose the normal use of his right hand.

Presently pending before the Court is defendants' motion for summary judgment. Ramos has opposed the motion and defendants submit the following in reply thereto.

## Argument

1. **Expert Testimony is Necessary with Respect to Ramos' FTCA and Bivens Claims**

The United States agrees with the plaintiff in that there is one exception to the general rule requiring expert testimony in a case such as this.[1] The exception applies "where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experiences and comprehension of even nonprofessional persons." McCabe v. prison Health Services, 1997 WL 710943, *12 (E.D. Pa. 1997)(copy attached). Ramos argues that the exception applies in this instance because there is medical literature (*see* Exhibit "H" attached to plaintiff's Brief in Opposition) that supports his claim.

---

[1] *See* page 12 of the original brief filed by the United States where it cites to the same case law as Ramos for this exception, however, because the United States believed that it was readily apparent that the exception did not apply to this case, it did not thoroughly address the issue at that time.

This argument is without merit. First, this article is nothing more than hearsay and as such, would be inadmissable at trial. Moreover, if one were to accept this argument, there would never be the need for expert testimony because there is a plethora of medical literature available concerning any disease, injury, or malady known to mankind, including literature discussing the proper diagnosis, prognosis and treatment of the same.

In order to properly determine whether the exception applies, we must ask and answer the following: whether the matter under investigation, here the diagnosis of an avulsion fracture which led to, or caused Game Keeper's Thumb with a Grade 3 Injury involving the Ulnar collateral Ligament (*see* Exhibit "F" attached to plaintiff's Brief in Opposition) and the treatment that Ramos received for the same, was so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experiences and comprehension of even nonprofessional persons. McCabe, 1997 WL 710943, *12 (E.D. Pa. 1997). Clearly, it is not, and thus, expert testimony is required. Moreover, Doctor Terhaar is an Orthopaedic Surgeon, a "specialist." The very reason the doctors at the prison requested Doctor Terhaar be brought in to examine and treat Ramos was because the matter under investigation was not even within the range of their own ordinary experiences as doctors.

Also, Ramos' argument assumes that everyone agrees that the surgery was unsuccessful because of a delay in diagnosis and/or a delay in performing the surgery and that the resulting pain and/or discomfort stems from the same. This is not true. The United States maintains that the surgery was successful and that the pain and/or discomfort that Ramos is now experiencing is due to the fact that he is suffering from carpal tunnel syndrome which is totally unrelated to the injury he allegedly sustained on March 26, 1997, and any and all treatment he received for that injury. *See* Exh. 1, Medical Record of Federal Prisoner in Transit.[2] As is evident from these records, Ramos suffers from carpal tunnel syndrome on the right side, the same side that Doctor Terhaar operated on for the unrelated injury he alleges occurred on March 26, 1997. Also, according to these records, Ramos has continually refused treatment for the carpal tunnel and at least an inference can be made that the source of the pain and numbness that he currently complains of is due to the carpal tunnel. Certainly, expert testimony is necessary to determine whether his current condition is a result of the carpal tunnel syndrome or, whether it is a result of the alleged negligence of the United States and/or Doctor Terhaar.

---

[2] These medical records were sent to counsel for the plaintiff on December 12, 2002 via Federal Express.

In light of the foregoing, Ramos' FTCA claim against the United States and his <u>Bivens</u> claims against defendants Bussanich and Velasco must be dismissed because plaintiff has failed to support his allegations against defendants with expert medical testimony as required.

On page 13 of his brief, plaintiff claims that "it is undisputed that even though Mr. Ramos constantly reported his severe anguish and pain to federal medical staff, it took eight and one half months before the Defendant took an X-ray of his thumb."[3] While it is undisputed that the first X-ray was taken eight and one-half months after the alleged injury occurred, it is simply untrue that Ramos constantly complained of pain in his thumb. As the medical records clearly indicate, on March 26, 1997, the day the injury allegedly occurred, Ramos was seen by a Physician Assistant at the prison and the only injury noted at that time was "an abrasion to the left side of the neck about 3 inches long and 1 inch wide." No other injuries were noted and no medical attention was required. *See* Exh. 2, Inmate Injury

---

[3] While the following information has little or no relevance in determining whether or not expert testimony is necessary, counsel for the United States includes it herein as an example of how Ramos has continually misrepresented the facts in several filings with the Court, including his motion to stay this Court's determination on the instant motion because the United States failed to provide him with his medical records, when in fact the United States provided him with the records via Federal Express on December 12, 2002. (*See* the replies of the United States and Doctor Terhaar to plaintiff's motion to stay).

Assessment and Followup.  Between March 26, 1997, and July 31, 1997, Ramos was seen by medical staff at the prison at least seven times and he did not voice any complaints about his thumb.[4] *See* Exh. 3, BOP Medical Records from March 26, 1997, thru December 1997.

The first time Ramos complained of pain to his right thumb was on August 1, 1997, at which time he did relate it to the March 26, 1997 altercation.  *See* Exh. 3.  The next time Ramos complained of pain in his right thumb was in December of 1997, despite being seen by the medical staff on several occasions.  It was at this time that the x-ray was taken revealing a possible small avulsion fracture.  Id.

As the medical records clearly indicate, Ramos complained of problems with his thumb a grand total of three times in eight and one-half months despite being seen by medical staff on numerous occasions during that time period.  Again, counsel for the United States includes this information simply to show the Court that plaintiff has absolutely no evidentiary support for the bold

---

[4] There is an undated note contained in the file which is attached to the March 26, 1997, reference to the injury report that indicates Ramos complained of swelling to his right thumb after trauma for the past 15 days.  However, even if we presume that this complaint was made 15 days after March 26, 1997, it does not change the fact that Ramos was seen by the medical staff on at least seven occasions prior to August 1, 1997, at which time he had no complaints concerning his right thumb.

6

conclusory factual statements contained in his brief in opposition to defendant's motion for summary judgment.

## 2. **Bivens Claim for Excessive Use of Force.**

On page 13 of his brief, Ramos claims that "on March 26, 1997, a correctional officer, using excessive and unreasonable force, fractured Mr. Ramos' thumb." Interestingly, Ramos has not offered one shred of evidence to support this claim. The reason, because there is no evidence to support this claim. At his deposition, Ramos testified that on the morning of March 26, 1997, he punched his cell-mate in the face because he was passing gas all night long, thereafter his cell-mate put his hands around his neck and started choking him,[5] the guards arrived while he was still being choked and grabbed his thumb and threw him to the floor in order to separate the two inmates. Thereafter, Ramos was charged with and found guilty of assault. See Exh. 4, Deposition Transcript of Manuel Ramos, pp. 1, 9-12.

In light of the foregoing undisputed evidence provided by Ramos himself, it is patently clear that the force used by the guard was only used in a "good-faith effort to maintain or restore discipline," and, as such, Ramos' excessive use of force claim against the officer must be dismissed. Brooks v. Kuyler, 204 F.3d 102, 109 (3d Cir. 2000).

---

[5] This is consistent with the injury assessment form filled out by the Physician Assistant noting an abrasion on Ramos' neck. See Exh. 2.

### 3. **Exhaustion of Administrative Remedies**

The United States' position on plaintiff's failure to exhaust his administrative remedies is clearly set forth in its original brief.

### Conclusion

For the reasons stated above and in defendants' original brief, defendants' motion for summary judgment should be granted.

        Respectfully submitted,

        THOMAS A. MARINO
        United States Attorney

        s/ G. Michael Thiel
        G. MICHAEL THIEL
        Assistant U.S. Attorney
        Atty. I.D. No. PA 72926
        MICHELE E. LINCALIS
        Paralegal Specialist
        316 Federal Building
        240 West Third Street
        Williamsport, PA 17703
        Telephone: 570-348-2800
        Facsimile: 570-348-2830
        Email: mike.thiel@usdoj.gov

Dated: September 5, 2003

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL RAMOS, | : | |
|     Plaintiff | : | |
| | : | |
|     v. | : | Civil No. 1:CV-00-1957 |
| | : | (Smyser, M.J.) |
| MARGARET HARDEN, Warden, | : | |
| et al., | : | |
|     Defendants | : | ELECTRONICALLY FILED |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on September 5, 2003, she served a copy of the attached

**REPLY BRIEF IN SUPPORT OF THE FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

via electronic means by sending a copy to the electronic mail address stated below:

Addressee:

Andrew J. Ostrowski, Esquire
BAILEY, STRETTON & OSTROWSKI
4311 North Sixth Street
Harrisburg, PA 17110
ajostrows@msn.com

Patrick T. O'Connell, Esquire
SABA, ENDLER & ASSOCIATES, L.L.P.
106 West Front Street
Berwick, PA 18603
poconnell@sabalaw.com

                                          s/ Michele E. Lincalis
                                          MICHELE E. LINCALIS
                                          Paralegal Specialist