117 F.Supp.2d 443                                                                                   **Page 1**
(Cite as: 117 F.Supp.2d 443,  1997 WL 710943 (E.D.Pa.))
**C**

United States District Court,
E.D. Pennsylvania.

William McCABE, Plaintiff,
v.
PRISON HEALTH SERVICES, et. al., Defendants.

No. CIV.A. 94-7286.

Nov. 14, 1997.

State prisoner brought § 1983 and state law claims against medical care providers and medical records personnel. On defendants' motions for summary judgment, the District Court, Anita B. Brody, J., held that: (1) prisoner was not required to present expert testimony as to severity of his medical need or as to defendants' indifference to it; (2) fact issue existed as to whether medical care providers who had reason to know of inmate's condition were deliberately indifferent to it; (3) absent expert testimony, complaint failed to state claim for medical malpractice in Pennsylvania; and (4) complaint failed to state claim for negligence of medical records personnel.

Motions granted in part and denied in part.

West Headnotes

**[1] Civil Rights** ⟨key⟩1304
78k1304
     (Formerly 78k196.1, 78k192)

**[1] Civil Rights** ⟨key⟩1417
78k1417
     (Formerly 78k242(1))

To establish valid claim under § 1983, plaintiff must establish by preponderance of evidence that conduct of which he complains was committed by one acting under color of state law and that it deprived him of rights, privileges, or immunities guaranteed by Constitution.  42 U.S.C.A. § 1983.

**[2] Sentencing and Punishment** ⟨key⟩1546
350Hk1546

For state claim for deliberate indifference Eighth Amendment violation, prisoner must demonstrate both that (1) he had serious medical need, and also

that (2) prison official was aware of this need and was deliberately indifferent to it.    U.S.C.A. Const.Amends. 8, 14.

**[3] Sentencing and Punishment** ⟨key⟩1546
350Hk1546

"Serious medical need," as required for finding of deliberate indifference to prisoner's or detainee's medical needs in violation of Eighth Amendment, is one that has been diagnosed by physician as requiring treatment, or one that is so obvious that lay person would easily recognize necessity for doctor's attention, or one where delay in treatment results in unnecessary and wanton infliction of pain. U.S.C.A. Const.Amends. 8, 14.

**[4] Sentencing and Punishment** ⟨key⟩1546
350Hk1546

Fact that surgery is elective does not abrogate prison's duty, or power, to promptly provide necessary medical treatment for prisoners. U.S.C.A. Const.Amends. 8, 14.

**[5] Sentencing and Punishment** ⟨key⟩1546
350Hk1546

"Deliberate indifference" to prisoner's medical needs, as required to show violation of Eighth Amendment, exists where official knows of and disregards excessive risk to inmate health or safety. U.S.C.A. Const.Amends. 8, 14.

**[6] Sentencing and Punishment** ⟨key⟩1546
350Hk1546

Mere disagreement as to proper medical treatment for prisoner does not support claim of Eighth Amendment violation; court will defer to medical judgment of propriety of treatment.    U.S.C.A. Const.Amends. 8, 14.

**[7] Civil Rights** ⟨key⟩1420
78k1420
     (Formerly 78k242(5))

Prisoner alleging Eighth Amendment violation based on deliberate indifference to his serious medical needs was not required to present expert testimony as to severity of his medical need where severity of circulatory problem in his leg was acknowledged by

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                                    **Page 2**
(Cite as: 117 F.Supp.2d 443, 1997 WL 710943 (E.D.Pa.))

treating physicians and would have been apparent to lay person. U.S.C.A. Const.Amends. 8, 14.

[8] Civil Rights ☜1420
78k1420
            (Formerly 78k242(5))

Prisoner alleging Eighth Amendment violation based on deliberate indifference to his serious medical needs was not required to present expert testimony as to indifference element where he did not complain of inadequate diagnosis or treatment, but of refusal to provide care recommended by treating physicians for acknowledged condition. U.S.C.A. Const.Amends. 8, 14.

[9] Civil Rights ☜1358
78k1358
            (Formerly 78k207(1))

Only prison medical personnel shown to have personally known of prisoner's serious medical needs could be held liable for denial of treatment, in violation of prisoner's Eighth Amendment rights. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

[10] Federal Civil Procedure ☜2491.5
170Ak2491.5

Issue of material fact as to whether treating physicians were deliberately indifferent to serious medical needs of prisoner precluded summary judgment on prisoner's § 1983 claim alleging violation of his Eighth Amendment rights. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

[11] Health ☜821(3)
198Hk821(3)
            (Formerly 299k18.80(7) Physicians and Surgeons)

[11] Health ☜821(4)
198Hk821(4)
            (Formerly 299k18.80(7), 299k18.80(8) Physicians and Surgeons)

Under Pennsylvania law, unless matter is so simple, and lack of skill or want of care so obvious, as to be within range of ordinary experience and comprehension of even nonprofessional persons, prima facie case of medical malpractice requires

presentation of expert testimony that, to reasonable degree of medical certainty, acts of defendants deviated from acceptable medical standards, and that deviation constituted substantial factor in causing plaintiff's injury.

[12] Health ☜821(5)
198Hk821(5)
            (Formerly 299k18.80(8), 299k18.80(7) Physicians and Surgeons)

State prisoner failed to state malpractice claim against medical providers, under Pennsylvania law, absent expert testimony that decisions of providers to deny or delay prisoner's surgery, given their knowledge of his circulatory problems and standards of their profession, were negligent, and substantially caused prisoner's amputations.

[13] Negligence ☜202
272k202

Elements of negligence claim in Pennsylvania are: (1) legal duty or obligation to conform to certain standard of conduct; (2) failure to conform to that standard; (3) reasonably close causal connection between conduct and resulting injury; and (4) actual loss or damage.

[14] Prisons ☜10
310k10

State prisoner failed to state negligence claim against medical records personnel, under Pennsylvania law, absent showing that they violated any particular duty to transfer or obtain his records.

*444 *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

**1 Plaintiff William McCabe ("McCabe"), a prisoner in the State Correctional Institution at Cresson, filed this action, pursuant to 42 U.S.C. § 1983, on December 2, 1994 against Joseph D. Lehman, Commissioner of Corrections for the Commonwealth of Pennsylvania; the Pennsylvania Department of Corrections; John and Jane Doe Officers and Guards; and John and Jane *445 Doe Medical Providers. McCabe alleged these defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                          Page 3
(Cite as: 117 F.Supp.2d 443, *445, 1997 WL 710943, **1 (E.D.Pa.))

punishment. He also brought state law claims for negligence and gross negligence. Plaintiff has since twice amended his Complaint, substituting for the original named defendants various medical providers and medical records personnel affiliated with Delaware County, Graterford and Cresson prisons, namely: Prison Health Services, Inc.; Correctional Physician Service, Inc.; Executive Health Group National Health Services; Dr. Robert J. DiGiovanni; Dr. Pierce; Dr. Umar (incorrectly identified by plaintiff in his Complaint as Omar); Dr. Rahman; Dr. J. Ennis; Dr. Lewis Brandt; Dr. Anton Skerl; Dr. R. Samuel Magee; Dr. Charles J. Harvey; Altoona Hospital; Sandy Spence; Diane Harris; Betsy Cramer; Kim Christie; Linda Rensimer; and Chris Alvanitakis (incorrectly identified by plaintiff in his Complaint as Alvanitalis). [FN1]

> FN1. Although plaintiff identifies Prison Health Services, Correctional Physicians Service, Inc., and Executive Health Group as defendants in his Second Amended Complaint, he fails to name them in any specific count or to allege any facts against them. It is unclear what plaintiff intended; however, given the lack of any genuine issue of material fact as to these defendants, I shall grant summary judgment as to these defendants on all claims against them.

Before me for disposition are motions for summary judgment filed by defendant Alvanitakis individually, defendants Harris, Cramer, and Spence jointly, and a motion for summary judgment filed on behalf of all nineteen defendants. After granting every justifiable inference to Plaintiff, the non-moving party, I will grant the motions for summary judgment as to certain defendants, and deny them as to other defendants.

I. BACKGROUND

Plaintiff McCabe challenges the persistent failure of the defendants to attend to his medical needs during his incarceration, first at Delaware County Prison, and thereafter at SCI-Graterford and SCI-Cresson. [FN2] McCabe suffered severe pain in his left leg from 1990 to 1994. During this time, McCabe sought medical aid from medical providers at all three facilities without success. He repeatedly requested a surgery that had been recommended for his leg, to no avail. McCabe's leg pain did not cease until doctors amputated his leg in 1994.

However, his suffering continues, due to the inadequate prosthesis provided by the doctors at SCI-Cresson.

> FN2. The factual rendition that follows is that most favorable to McCabe, and is drawn from his Second Amended Complaint and Amended Supplement to Brief in Opposition to Defendants' Motion for Summary Judgment.

Around June 1990, while incarcerated at Delaware County Prison, McCabe felt extreme pain in his left calf. He complained to defendant Dr. Pierce, a private physician who was working under contract with Delaware County Prison (Second Amended Complaint ¶¶ 24-25). Dr. Pierce prescribed anti-coagulant drugs for McCabe's leg pain (Plaintiff's Amended Supplement to Brief in Opposition to Defendants' Motion for Summary Judgment, hereinafter "Plaintiff's Amended Supplement"). However, McCabe's leg continued to cause him severe pain and he returned to Dr. Pierce seeking further aid (Plaintiff's Amended Supplement). In August 1990, Dr. Pierce referred McCabe to Sacred Heart Hospital for diagnostic tests (Plaintiff's Amended Supplement). An arteriogram (an x-ray of an artery) showed that McCabe did have clogged arteries in his left leg and abdomen (Second Amended Complaint ¶¶ 26-28). Based on this test result, Dr. Pierce diagnosed McCabe with peripheral vascular disease and claudication of the left leg (Second Amended Complaint ¶ 34; Plaintiff's Amended Supplement). According to Dr. Pierce's own brief, this was a serious medical condition. (Brief of Defendant Dr. *446 Pierce in Support of Motion to Dismiss, Docket # 44).

**2 McCabe's leg pain persisted, and he continued to seek medical aid. In November 1990, Delaware County Prison officials referred McCabe to a vascular specialist for tests. McCabe went to defendant Dr. DiGiovanni, a private physician at Riddle Memorial Hospital (Second Amended Complaint ¶¶ 29-30). Dr. DiGiovanni examined McCabe, and wrote to Dr. Pierce explaining his findings. Dr. DiGiovanni diagnosed McCabe with a 75% Stenosis (blockage) at the origin of the left external iliac and complete occlusion (closure) of the left superficial artery (Plaintiff's Amended Supplement). Dr. DiGiovanni found that there were no indications of imminent limb loss (Second Amended Complaint ¶ 31). He recommended that McCabe have elective surgery on his left leg

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                              **Page 4**
**(Cite as: 117 F.Supp.2d 443, \*446, 1997 WL 710943, \*\*2 (E.D.Pa.))**

(Second Amended Complaint ¶ 31). Dr. DiGiovanni scheduled this surgery for January 1991 (Second Amended Complaint ¶ 31).

Delaware County Prison officials declined the surgery because of McCabe's imminent transfer to SCI-Graterford (Second Amended Complaint ¶ 32). McCabe was not transferred to SCI-Graterford until December 1991, eleven months later. Dr. Pierce also refused to authorize the surgery, and when McCabe asked him why, said "you know how the system works" (Plaintiff's Amended Supplement). Nonetheless, Dr. Pierce repeatedly noted in McCabe's medical records that McCabe suffered from severe peripheral vascular disease (Second Amended Complaint ¶ 34).

When McCabe was transferred to SCI-Graterford, in December 1991, his county prison medical records remained at Delaware County Prison, in accordance with the medical records regulations then in effect (Plaintiff's Amended Supplement). [FN3] The only medical information transmitted to SCI-Graterford was in the temporary transfer sheet, which notes, "C/o intermittent claudication in R/T PVD--vascular surgery consultation revealed need for surgery as elective only 11/90--Tx Medically c Trental" (Motion of Commonwealth Defendants Harris, Spence, and Cramer for Summary Judgment (Docket # 128), Exhibit D1--DC-7x Temporary Transfer Information).

> FN3. *See* Motion of Commonwealth Defendants Harris, Spence, and Cramer for Summary Judgment (Docket # 128), (Exhibit D14-DOC Medical Records Policy).

McCabe's leg pain persisted and worsened while he was at SCI-Graterford (Second Amended Complaint ¶ 35). On numerous occasions, McCabe visited the dispensary, seeking aid for his leg pain (Plaintiff's Amended Supplement). His medical records reflect that he complained about leg pain during his first month at Graterford, in January 1992. Again in March 1992, he complained about pain in his left foot. Then, in May 1992, his medical records state that he had "diminished dorsal pedic and posterior taken pulse left leg." In July 1992, he again complained about his left leg. Over and over again, McCabe complained to medical providers of his leg pain and of the increasing difficulty he was experiencing in walking. The doctors from whom

McCabe sought aid include defendants Drs. Umar, Rahman, Ennis, and Brandt, all of whom were medical care providers under contract with SCI-Graterford (Plaintiff's Amended Supplement). McCabe repeatedly asked Drs. Umar, Rahman, Ennis, and Brandt for the surgery on his left leg which had been recommended by Dr. DiGiovanni (Second Amended Complaint ¶ 35). At one point, Dr. Umar denied plaintiff the surgery because "the prison was not Burger King, and he [Mr. McCabe] could not have it his way." (Second Amended Complaint ¶ 36). While at Graterford, despite his repeated complaints of pain, and frequent requests for medical aid, no diagnostic studies or surgeries were performed on McCabe (Plaintiff's Amended Supplement).

\*\*3 In October 1992, McCabe was cleared for transfer to another prison, but his transfer was delayed until April 1993, \*447 when he was transferred to SCI-Cresson (Second Amended Complaint ¶ 41). McCabe did not seek care from October 1992 to April 1993, while he was awaiting transfer, because he was concerned that should he do so, his transfer would be delayed (Plaintiff's Amended Supplement).

When McCabe arrived at SCI-Cresson in April 1993, his medical condition was reviewed by medical staff. McCabe informed them that Drs. Pierce and Giovanni had diagnosed him with blocked arteries and recommended that he have surgery on his left leg (Plaintiff's Amended Supplement). McCabe's SCI-Cresson medical records reveal that he made frequent visits to the infirmary seeking aid for his leg pain and that he explicitly requested surgery (e.g., medical records dated 4/30/93; 5/04/93; 6/14/93; 6/15/93; 7/08/93; 7/14/93; 9/16/93; 9/21/93; 10/18/93; 10/25/93; 11/18/93; 12/16/93). From March 1993 to February 1994, McCabe also wrote many letters to defendant Dr. Skerl, the Medical Director of SCI-Cresson, asking for help for his unbearable leg pain (Plaintiff's Amended Supplement). On May 4, 1993, during one of McCabe's visits to the infirmary, Dr. Skerl noted on McCabe's chart, "please get old medical records regarding prior arteriogram." When Dr. Skerl saw McCabe again, he wrote on the dispensary record, "I need his old records, Not ordered yet." Dr. Skerl subsequently made several further notations about awaiting old records. The arteriogram record, confirming

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                    **Page 5**
(Cite as: 117 F.Supp.2d 443, *447,  1997 WL 710943, **3 (E.D.Pa.))

McCabe's condition, was finally received on November 18, 1993.

In December 1993, McCabe began experiencing serious heart problems, for which he was prescribed nitro-glycerine pills (Plaintiff's Amended Supplement). In January 1994, Dr. Skerl referred McCabe to defendant Altoona Hospital for tests on his heart (Plaintiff's Amended Supplement). On February 8, 1994, while at Altoona Hospital for "stress" tests on his heart, McCabe experienced tremendous pain in his left leg (Second Amended Complaint ¶¶ 45-46). That same day, McCabe was admitted for emergency quadruple coronary bypass surgery (Plaintiff's Amended Supplement). When he awoke from surgery, McCabe discovered a suture running from his left ankle up to his groin, indicating that a vein from his left leg had been used in his heart surgery (Plaintiff's Amended Supplement). While McCabe was recovering from his surgery, defendant Dr. Magee, a private physician affiliated with Altoona Hospital, diagnosed McCabe with "a completely occluded left external iliac artery and a completely occluded left superficial femoral artery" (the same diagnosis made over three years before by Dr. DiGiovanni) (Second Amended Complaint ¶¶ 49-50). Dr. Magee recommended that McCabe wait to have surgery on his left leg until he had recovered from his heart surgery (Second Amended Complaint ¶¶ 49-50). McCabe then returned to SCI-Cresson.

**4 On February 22, 1994, McCabe's left leg became completely numb, swollen, and discolored (Plaintiff's Amended Supplement). He was diagnosed with gangrene and his left leg was amputated below the knee (Plaintiff's Amended Supplement). The remaining portion of his left leg was also gangrenous and subsequently had to be removed (Plaintiff's Amended Supplement). [FN4]

> FN4. McCabe does not have expert medical testimony to prove the causal connections between the defendants' alleged earlier deliberate indifference to his severe leg pain and the amputations of his leg. As I discuss more fully in my analysis of his § 1983 claims below, without such evidence, McCabe will not be able to recover damages for his amputations. However, the absence of expert evidence on the amputations will not prevent McCabe from showing that the defendants were deliberately indifferent to his pain for three or four years before his amputations, and continue to be indifferent to his medical needs

following his amputations.

Finally, following the amputations, Dr. Skerl refused to authorize a prosthesis. Dr. Skerl finally gave McCabe a prosthesis, but McCabe continues to experience *448 distress and suffering when walking, because of the poor fit of the prosthesis (Plaintiff's Amended Supplement).

## II. DISCUSSION

The defendants seek summary judgment as a group on the ground that without an expert witness McCabe cannot establish a prima facie case for any of his federal or state claims. The motions filed by Alvanitakis, Harris, Spence, and Cramer further seek summary judgment based on the ground that Mr. McCabe has failed to allege any specific connections between these defendants and his injuries, and, therefore, has raised no genuine issue of material fact as to them. In opposing the defendants' motions, McCabe claims that there are disputed issues of material fact as to the defendants' deliberate indifference and negligence.

## A. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. When the moving party does not bear the burden of persuasion at trial, as is the case here, its burden "may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                                 **Page 6**
(Cite as: 117 F.Supp.2d 443, *448,  1997 WL 710943,  **4 (E.D.Pa.))

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).   The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.*, but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. [FN5]   *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548;  *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

> FN5. In *pro se* cases, I ordinarily construe a plaintiff's pleadings as affidavits for purposes of summary judgment motions.   *See Reese v. Sparks,* 760 F.2d 64, 67 n. 3 (3d Cir.1985) (treating verified complaint of a prisoner acting *pro se* as an affidavit).   This case presents an unusual situation, in that plaintiff was originally represented by counsel, but is now *pro se.*   When McCabe filed his complaints, and through the middle of the discovery period, he was represented by counsel. His counsel filed a motion to withdraw as counsel on November 15, 1996, because of conflicts arising out of strategic decisions in the case.   I initially denied his counsel's motion to withdraw, and stayed proceedings until February 14, 1997 to afford McCabe the opportunity to secure another attorney to represent him.   McCabe was unable to do so on his own, and I was unable to do so on his behalf.   On June 20, 1997, I granted counsel's motion to withdraw.   McCabe is now proceeding *pro se,* and has filed his response to defendants' summary judgment motions without the assistance of counsel.
>
> Given this hybrid posture, I issued a Notice on October 10, 1997, instructing plaintiff to restate his claims in affidavit form and affirm the truth of his factual assertions.   Upon reexamination of the pleadings, given that plaintiff restates the bulk of his factual assertions in his *pro se* response to the defendants' summary judgment motions, I have decided not to require the plaintiff to submit new affidavits.   I shall construe his pleadings as affidavits for purposes of this decision.

**5 To determine whether summary judgment is appropriate, I must determine *449 whether any genuine issue of material fact exists.   An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* If the evidence favoring the nonmoving party is "merely colorable," "not significantly probative," or amounts to only a "scintilla," summary judgment may be granted. *See id.* at 249-50, 252, 106 S.Ct. 2505;  *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). Of course, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505;  *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).     Moreover, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW,* 974 F.2d at 1363.   Thus, my inquiry at the summary judgment stage is only the "threshold inquiry of determining whether there is the need for a trial," that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250-52, 106 S.Ct. 2505.

**B. § 1983 CLAIMS**

[1] To establish a valid claim under 42 U.S.C. § 1983, the plaintiff must establish by a preponderance of the evidence that the conduct of which he complains was committed by one acting under color of state law and that it deprived him of rights, privileges, or immunities guaranteed by the Constitution.   *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir.1994);  *Carter v. City of Phila.,* 989 F.2d 117, 119 (3d Cir.1993).   The plaintiff here claims that a panoply of state actors (defendants Pierce, Skerl, Umar, Rahman, Ennis, Brandt, Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis) deprived him of his Eighth Amendment right to be free from cruel and unusual punishment by exhibiting deliberate indifference to his serious medical needs. [FN6]

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                                    Page 7
(Cite as: 117 F.Supp.2d 443, *449, 1997 WL 710943, **5 (E.D.Pa.))

FN6. I will focus on the alleged deprivation of plaintiff's rights, as defendants do not contest that they acted under color of state law. The only defendant who has raised this issue during the course of the litigation is Dr. Skerl. In his motion to dismiss, Skerl argued that the plaintiff did not allege sufficient facts demonstrating that Skerl was acting under color of state law at the time of the complained of conduct. In my Order and Explanation of March 26, 1996, denying Skerl's motion to dismiss, I noted, *inter alia,* that Skerl, by his own admission, was acting as Medical Director of S.C.I.-Cresson, a state prison, when he treated McCabe. I, therefore, determined that Skerl acted under color of state law for purposes of McCabe's § 1983 action. *See also West v. Atkins,* 487 U.S. 42, 51, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (physician under contract with state to provide medical services to inmates at state prison acted under color of state law, within meaning of § 1983, when he treated inmate).

1. Standard for Deliberate Indifference

**6 [2] In order to substantiate his § 1983 claim, plaintiff must demonstrate that each defendant exhibited "deliberate indifference" in violation of his constitutional rights. The Supreme Court identified the basic standard for a deliberate indifference claim in *Estelle v. Gamble,* 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976): "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate *450 indifference to serious medical needs." For conduct to rise to the level of deliberate indifference, plaintiff must demonstrate "an unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind" and "offend[s] evolving standards of decency." *Id.* Plaintiff can satisfy this standard by demonstrating both that (1) plaintiff had a serious medical need, and also that (2) the defendant was aware of this need and was deliberately indifferent to it. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979); *see also Wilson v. Seiter,* 501 U.S. 294, 296-98, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

[3][4] As to the first element, under the Constitution, prison officials must provide care only for "serious medical needs." *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. The Third Circuit defines a medical need as "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987); *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,* 649 F.2d 860 (3d Cir.1981). The fact that a surgery is elective "does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners." *Johnson v. Bowers,* 884 F.2d 1053, 1056 (8th Cir.1989); *see also Hathaway v. Coughlin,* 37 F.3d 63, 64- 69 (2d Cir.1994)(upholding a jury verdict on Eighth Amendment claim in favor of plaintiff where defendants delayed plaintiff's elective hip surgery for two years). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. *See Monmouth County,* 834 F.2d at 347. For instance, *Estelle* makes clear that if "unnecessary and wanton infliction of pain," results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment. 429 U.S. at 103, 105, 97 S.Ct. 285.

**7 [5] The Supreme Court has held that the level of culpability entailed by the second element, deliberate indifference, falls somewhere between mere negligence (carelessness) and actual malice (intent to cause harm). *Farmer,* 511 U.S. at 836-37, 114 S.Ct. 1970 (holding that a prison official can be found reckless or deliberately indifferent if "the official knows of and disregards an excessive risk to inmate health or safety ..."). *See also Young v. Quinlan,* 960 F.2d 351, 360-61 (3d Cir.1992) (holding that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate"). In the context of claims arising under the Eighth Amendment, courts have said that state of mind is typically not a proper issue for resolution on summary judgment. *See, e.g., Wilson v. Seiter,* 893 F.2d 861, 866 (6th Cir.1990), *vacated on other grounds,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

[6] In evaluating claims of deliberate indifference, courts have distinguished between denial of medical treatment, like that alleged here, and inadequate medical treatment. Mere disagreement as to the proper medical treatment does not support a claim of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                                                          **Page 8**
**(Cite as: 117 F.Supp.2d 443, \*450,  1997 WL 710943, \*\*7 (E.D.Pa.))**

an Eighth Amendment violation;  courts will defer
to medical judgments of the propriety of treatment.
[FN7]  *See Monmouth County,* 834 F.2d at 346
(citing *\*451 Bowring v. Godwin,* 551 F.2d 44, 48
(4th Cir.1977)).   On the other hand, the denial of
medical treatment requested by an inmate states a
cause of action under § 1983.  The Third Circuit has
stated that where prison authorities deny reasonable
requests for medical treatment, and such denial
exposes the inmate "to undue suffering or the threat
of tangible residual injury," deliberate indifference
is manifest.  *Monmouth County,* 834 F.2d at 346
(citing *Westlake v. Lucas,* 537 F.2d 857, 860 (6th
Cir.1976)).   Furthermore, short of total denial, if
necessary medical treatment is delayed for non-
medical reasons, a case of deliberate indifference
has been made out.  *Id.* at 346-47 (citing *Ancata v.
Prison Health Servs.,* 769 F.2d 700, 704 (11th
Cir.1985)) ("if necessary medical treatment [i]s ...
delayed for non-medical reasons, a case of
deliberate indifference has been made out.").  *See
also Hathaway,* 37 F.3d at 66 (holding that a two
year delay in arranging necessary surgery could
support a finding of deliberate indifference);
*Douglas v. Hill,* 1996 WL 716278, *8
(E.D.Pa.1996) (denying defendants' motions for
summary judgment where medical personnel failed
to authorize recommended hernia surgery, despite
awareness of plaintiff's complaints of pain).

> FN7. Note that evidence of medical malpractice is
> not enough to substantiate a claim of "deliberate
> indifference".  *See Estelle,* 429 U.S. at 105-06, 97
> S.Ct. 285 (medical malpractice is insufficient basis
> upon which to establish an Eighth amendment
> violation);  *Inmates of Allegheny County Jail v.
> Pierce,* 612 F.2d 754, 762 (3d Cir.1979) (negligent
> medical treatment is not actionable under 8th
> amendment);  *Unterberg v. Correctional Medical
> Systems, Inc.,* 799 F.Supp. 490, 497
> (E.D.Pa.1992) (medical malpractice is not
> deliberate indifference).

**\*\*8** Although an isolated failure to treat, without
more, is ordinarily not actionable, it "may in fact
rise to the level of a constitutional violation if the
surrounding circumstances suggest a degree of
deliberateness, rather than inadvertence, in the
failure to render meaningful treatment."  *Gill v.
Mooney,* 824 F.2d 192, 196 (2d Cir.1987).   For
example, offensive and outrageous acts serve as
proof of deliberate indifference.  *See e.g., Rhodes
v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392,
69 L.Ed.2d 59 (1981); *Estelle,* 429 U.S. at 105-06,

97 S.Ct. 285.

**2. Expert Testimony**

 The defendants in the case before me base their
joint motion for summary judgment on the § 1983
claims on the ground that without an expert witness
to testify on his behalf McCabe cannot present a
prima facie case of deliberate indifference.
However, they cite no legal authority mandating the
conclusion that a plaintiff must present expert
testimony in order to withstand a motion for
summary judgment (or, indeed, to prevail at trial) in
an Eighth Amendment deliberate indifference case.
[FN8] **\*452** In fact, there is no general requirement
in the Third Circuit that a plaintiff present expert
testimony in Eighth Amendment deliberate
indifference cases. [FN9]  *See Rizzolo v. Rivas* (in
dismissing a defendant doctor's motion for summary
judgment on a § 1983 claim alleging deliberate
indifference to a plaintiff prisoner's medical needs,
the court expressly said "[t]here is no requirement
that plaintiff proceed with a medical expert to
establish his alleged constitutional claim.")   1988
WL 50630 (D.N.J.1988), *aff'd,* 891 F.2d 283 (3d
Cir.1989).  [FN10]

> FN8. The defendants, in their Joint Summary
> Judgment Motion, assert "[t]estimony as to the
> standard of care is also necessary to the federal
> claims, which require not only medical negligence
> but also showing of deliberate or reckless disregard
> for the patient's condition."      After this
> proposition, they cite two cases, *United States ex
> rel. Gittlemacker v. Philadelphia County,* 413 F.2d
> 84 (3d Cir.1969), *cert. denied,* 396 U.S. 1046, 90
> S.Ct. 696, 24 L.Ed.2d 691 (1970), and *Mitchell v.
> Hendricks,* 431 F.Supp. 1295 (E.D.Pa.1977),
> neither of which mention expert testimony.
> Defendants presume that plaintiff must prove
> medical negligence in order to prove deliberate
> indifference.  This is not the case, where, as here,
> a plaintiff does not claim improper diagnosis, but a
> total lack of care.
> I received varying arguments in response to my
> Notice of October 10, 1997 inviting supplemental
> submissions on the issue of whether a plaintiff must
> present expert testimony in order to withstand
> summary judgment on an Eighth Amendment
> deliberate indifference claim.   For example,
> defendants Harris, Spence, and Cramer state that
> they are not aware of any general requirement of
> expert testimony in such cases.   On the other
> hand, defendants Correctional Physicians Service,
> Inc, Umar, Rahman, Ennis, and Brandt assert that

the law requires an expert in order to proceed, but cite no supporting cases for this proposition. Defendant Skerl presents the most potentially persuasive argument, that McCabe will need expert medical testimony at trial in order to show that the denial of surgery *caused* his amputations. This may well be so, however it goes to the extent of damages, not to determining the defendants' indifference to McCabe's serious medical need. McCabe alleges not only that his leg had to be amputated, but also that plaintiffs denied him surgery in the face of nearly four years of chronic and substantial pain, and refused him an adequate prosthesis following his amputations. At trial, McCabe will not be able to obtain damages for the amputations if he cannot show causation. However, he does not need an expert to argue that his Eighth Amendment rights were violated when he was diagnosed with a serious medical condition (peripheral vascular disease) and suffered severe pain for almost four years, yet was denied medical treatment. Deliberate indifference to this prolonged and severe pain is itself sufficient for an award of damages.

FN9. Nor is there such a requirement in any other Circuit, so far as I can tell. *See Ledford v. Sullivan,* 105 F.3d 354, 358-60 (7th Cir.1997) (holding that an expert is not essential to establishing deliberate indifference, analyzing whether other circuits have found an expert to be necessary to prove deliberate indifference, and concluding that they have not).

FN10. *See also Ledford,* 105 F.3d at 358-60 (distinguishing deliberate indifference from malpractice: "Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward [plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care."); *Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir.1994) (holding that the courts of the Second Circuit "have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony. The inquiry remains whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law."); *Abdush-Shahid v. Coughlin,* 933 F.Supp. 168, 181 n. 3 (N.D.N.Y.1996) (finding that a plaintiff claiming

serious medical need is not required to present expert medical testimony to support his claims in order to survive summary judgment).

[7] In certain circumstances, courts do require expert testimony in deliberate indifference cases on the first element, the severity of the medical need, namely, *if* a jury would not able to decide whether a plaintiff's medical condition is "serious" enough to implicate the Eighth Amendment. *Boring v. Kozakiewicz,* 833 F.2d 468, 473-74 (3d Cir.1987); *see also Shoop v. Dauphin County,* 766 F.Supp. 1327, 1331-32 (M.D.Pa.1991), *aff'd,* 945 F.2d 396 (3d Cir.1991). Here, McCabe need not present an expert witness on the first element because the severity of his medical need was acknowledged by the doctors who initially treated him, defendants Pierce and DiGiovanni, and would be apparent to a lay person. [FN11] McCabe's medical need was not only serious from the beginning--blocked arteries and severe leg pain is not equivalent to the scalp condition in *Boring* or the mild concussion in *Shoop* --, but under the framework of *Estelle* and *Young v. Quinlan,* I may look to the *result* of McCabe's need going untreated to gauge its seriousness. No expert needs to tell a layperson that four years of suffering from chronic and severe leg pain is serious. [FN12] *See, e.g., Colburn v. *453 Upper Darby Township,* 946 F.2d 1017, 1023 (3d Cir.1991) (to qualify as serious medical need, lack of treatment must lead to substantial suffering, injury or death); *Monmouth County,* 834 F.2d at 347 (medical need is serious if it has been diagnosed by a physician as requiring treatment or where denial or delay in treatment causes the inmate to suffer a permanent loss); *Graves v. Pennsylvania Dep't of Corrections,* 1994 WL 394853 (E.D.Pa.1994) (interpreting "serious medical need" as threat of grave impact on inmate's health).

FN11. *See Douglas v. Hill,* 1996 WL 716278 (E.D.Pa.1996) (finding that where elective hernia surgery was recommended by a doctor, this presents a sufficiently serious medical need to withstand summary judgment motion by defendants, with no mention of expert testimony).

FN12. Again, while McCabe may have difficulty proving, without medical testimony, that the denial of his surgery *caused* the amputation of his left leg, he does not need an expert witness in order to argue to the jury that the defendants' failure to provide him with medical care for his leg during the four years he was requesting surgery and

complaining of chronic leg pain led to the "unnecessary and wanton infliction of pain" condemned by the Supreme Court in *Estelle.* 429 U.S. at 103, 105, 97 S.Ct. 285. The Supreme Court has expressly rejected the idea that a "significant injury" is required to find wrongdoing under the Eighth Amendment: the deliberate indifference analysis is contextual and depends on the particular interrelationship of the seriousness of the plaintiff's medical need and the actions (or inactions) of the defendants. *Hudson v. McMillian,* 503 U.S. 1, 8-11, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

**9 [8] Expert testimony is not required on the second element, defendants' alleged deliberate indifference, because McCabe does not complain of inadequate diagnosis or treatment, which might require expert testimony. Rather, McCabe complains about the systemic and individual failure to provide him with the care he requested, and that Dr. DiGiovanni had recommended--a failure produced by non-medical reasons. [FN13] *See Durmer v. O'Carroll,* 991 F.2d 64, 67-68 & n. 10 (3d Cir.1993) (reversing summary judgment for defendants on denial of medical care claim, where there was some evidence in the record that plaintiff did not receive his prescribed care for non-medical reasons, e.g., a nurse's comment that "this is jail. This is not the real world, you can forget physical therapy"). McCabe's case falls within the parameters of *Estelle* and its progeny: he experienced, and repeatedly complained of, severe pain in his leg for nearly four years, a doctor recommended, and even scheduled, surgery, after finding serious arterial occlusion, and various prison officials in three different prisons ignored McCabe's repeated efforts to obtain his surgery, to the point of canceling his scheduled surgery. *See Douglas v. Hill,* 1996 WL 716278, *8 (E.D.Pa.1996) (denying defendants' motions for summary judgment on deliberate indifference claim where medical personnel were aware of plaintiff's complaints of pain, and of the recommended hernia surgery, but failed to authorize the surgery).

> FN13. As plaintiff states in his Response to Defendant Dr. Umar's Motion to Dismiss, "Plaintiff does not allege that Defendant Umar misdiagnoses Plaintiff's condition; rather, Defendant Umar *knew* that Plaintiff needed an operation, yet ignored it." At 7.

3. Defendants' Personal Involvement

[9][10] Although McCabe need not present an expert witness to proceed to trial, he must provide evidence that, if believed by a reasonable fact-finder, would show that each of the defendants knew, or should have known, of his serious medical need, and was deliberately indifferent to it. *See Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir.1988) (holding that to incur liability in a civil rights action, the Defendant must have some type of personal involvement in the incidents that are alleged to have violated the Plaintiff's civil rights); *Payton v. Vaughn,* 798 F.Supp. 258 (E.D.Pa.1992) (holding that to impose liability for a § 1983 violation, the Plaintiff must establish with particularity that a named Defendant was directly and personally involved in the deprivation of the Plaintiff's rights).

If there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of plaintiff, then that is enough of a showing to thwart imposition of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there is any evidence in the record from any source from which a reasonable inference in the plaintiff's favor may be drawn, the moving party simply cannot obtain a summary judgment. *Id.* As to McCabe's § 1983 claims, sufficient questions of fact that must be presented to a jury have been raised as to defendants Pierce, Umar, and Skerl, but not as to the other defendants. I will analyze in turn each defendant charged with a § 1983 violation.

*454 4. Dr. Pierce

**10 Defendant Pierce is party to this action as a private physician working under contract with defendant Prison Health Services (Second Amended Complaint at ¶ 9). While at Delaware County Prison, McCabe went to Dr. Pierce on numerous occasions complaining of extreme pain in his left leg. McCabe maintains that defendant Pierce diagnosed him with "severe PVD" (peripheral vascular disease), knew that Dr. DiGiovanni diagnosed McCabe with total blockage of certain arteries in his left leg, knew that surgery on his left leg had been recommended by Dr. DiGiovanni, knew that plaintiff was in great pain, and yet failed to authorize the surgery for non-medical reasons (Plaintiff's Amended Supplement). Defendant Pierce does not deny Mr. McCabe's serious medical

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                                      **Page 11**
(Cite as: 117 F.Supp.2d 443, *454, 1997 WL 710943, **10 (E.D.Pa.))

need (Brief of Defendant Dr. Pierce in Support of Motion to Dismiss, Doc. # 44).

Drawing all justifiable inferences for McCabe, I find that plaintiff has raised a genuine issue of material fact as to whether Dr. Pierce denied him surgery for non-medical reasons. Failure to treat qualifies as "deliberate indifference". *See, e.g., Young v. Quinlan,* 960 F.2d 351, 361 (3d Cir.1992) (intentional failure to act to prevent suffering from harm is deliberate indifference); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979) (failure to provide adequate treatment is evidence of deliberate indifference). Accordingly, I DENY the defendants' motion for summary judgment as to the § 1983 claim against Dr. Pierce;

5. Dr. Umar

Defendant Umar is being sued in his capacity as a medical care provider for S.C.I.-Graterford and as an employee of defendant Correctional Physicians Service. (Second Amended Complaint at ¶ 11). McCabe complained of his severe pain to Dr. Umar, and sought medical aid, including the recommended surgery, from him, only to be denied because "the prison was not Burger King" (Second Amended Complaint at ¶¶ 35-37).

These facts demonstrate deliberate indifference-- namely, that Dr. Umar was aware of McCabe's medical need, yet did not act upon it. The allegations in the Second Amended Complaint indicate that Dr. Umar examined McCabe, and then refused to send him for tests or surgery. (Second Amended Complaint at ¶¶ 35- 36). The alleged facts further demonstrate that, even after plaintiff asked for surgery to alleviate his intense pain, Dr. Umar continued to refuse treatment. (Second Amended Complaint at ¶ 36). Denial of medical treatment often qualifies as deliberate indifference. *See, e.g., Young v. Quinlan,* 960 F.2d at 361; *Inmates of Allegheny County Jail,* 612 F.2d at 762.

Furthermore, the allegations indicate that Dr. Umar was deliberately rude and indecent in dealing with plaintiff's suffering. (Second Amended Complaint at ¶ 36: the "Burger King" comment). Offensive and outrageous acts serve as proof of deliberate indifference. *See e.g., Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59

(1981); *Estelle,* 429 U.S. at 105-06, 97 S.Ct. 285.

**11 Plaintiff thus raises genuine issues of fact for trial regarding defendant Umar's behavior towards his serious medical need. Accordingly, I DENY summary judgment on the § 1983 claim as to Dr. Umar;

6. Dr. Skerl

Defendant Skerl is being sued in his capacity as Medical Director of S.C.I.- Cresson, and as an employee or agent of defendant Executive Health Group (Second Amended Complaint at ¶ 10). McCabe made numerous visits to Dr. Skerl, and wrote many letters to Dr. Skerl explaining the leg pain he was suffering, and requesting Dr. Skerl's help (Plaintiff's Amended Supplement). McCabe's claims that he repeatedly sought help from Dr. Skerl are corroborated by his medical records, which reveal frequent visits to the infirmary by McCabe because of leg pain. *455 (e.g., SCI-Cresson medical records dated 4/30/93; 5/04/93; 6/14/93; 6/15/93; 7/08/93; 7/14/93; 9/16/93; 9/21/93; 10/18/93; 10/25/93; 11/18/93; 12/16/93). McCabe further maintains that Dr. Skerl first denied him a prosthesis and then provided him with an inadequate one, leading to further pain and suffering. (Plaintiff's Amended Supplement).

Genuine issues of material fact as to Dr. Skerl's knowledge of and possible indifference to McCabe's serious medical need exist. Accordingly, I DENY summary judgment on the § 1983 claim as to defendant Skerl;

7. Doctors Rahman, Ennis, and Brandt

The only assertions that McCabe makes against defendants Rahman, Ennis, and Brandt are that he saw them while at Graterford, complained to them of leg pain, and none of them "would commit to surgery only medication" (Plaintiff's Amended Supplement). McCabe does not contend that these doctors knew, or should have known, how severe his medical need was, or that they failed to authorize surgery for non-medical reasons.

Drawing every justifiable inference for the plaintiff, he has not presented enough that a reasonable fact-finder could find for him on his § 1983 claims against these defendants. Accordingly, I GRANT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                        **Page 12**
(Cite as: 117 F.Supp.2d 443, *455, 1997 WL 710943, **11 (E.D.Pa.))

summary judgment on the § 1983 claims as to defendants Rahman, Ennis, and Brandt;

8. The Medical Records Personnel

McCabe alleges that defendant Spence failed to obtain his records from Delaware County Prison and to forward his records from SCI-Graterford to SCI-Cresson; that defendants Harris and Cramer failed to obtain his records from Delaware County Prison and SCI-Graterford; and that defendants Christie, Rensimer, and Alvanitakis failed to forward his records to SCI-Graterford. McCabe does not allege that these defendants knew of his serious medical need or exhibited deliberate indifference. He does not offer any evidence showing that these particular defendants failed to obtain or transfer his records or that the supposed lack of records contributed to his injuries. [FN14]

> FN14. Defendants Spence, Cramer, and Harris aver that they had no responsibility for plaintiff's medical records at all, and McCabe has not offered evidence to the contrary. (Spence Decl.; Cramer Interrog. Responses ¶ 23; Alvanitakis Aff. ¶ ¶ 1, 5, 6, 8, 10).

Accordingly, there is no genuine issue of material fact as to these defendants, and I GRANT summary judgment on the § 1983 claims as to defendants Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis.

C. STATE LAW CLAIMS

**12 In addition to his federal civil rights claims, Plaintiff McCabe brings state law claims for both negligence and gross negligence against defendants Pierce, Skerl, Umar, Rahman, Ennis, and Brandt, and brings claims for ordinary negligence against defendants DiGiovanni, Magee, Harvey and Altoona Hospital. [FN15] I will treat these as medical malpractice claims. Finally, he brings claims for gross negligence against medical records personnel Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis.

> FN15. I will call these first two groups of defendants "the medical providers."

1. Medical Providers

[11] The malpractice inquiry differs from that under the Eighth Amendment in that it specifically requires comparison of the *actions* of particular defendants with the *standards* of their profession. [FN16] Under *456 Pennsylvania law, in order to establish a prima facie case of medical malpractice, the plaintiff generally must present an expert who will testify, to a reasonable degree of medical certainty, that the acts of the defendants deviated from the acceptable medical standards, and that the deviation constituted a substantial factor in causing the plaintiff's injury. [FN17] *Mitzelfelt v. Kamrin,* 526 Pa. 54,61, 584 A.2d 888, 892 (1990) (citing *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980)). *See also Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 480 (3d Cir.1979) (adopting Pennsylvania's requirement for expert testimony in legal malpractice actions). This requirement stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. *Brannan,* 490 Pa. at 595, 417 A.2d at 199 (1980).

> FN16. *See Ledford v. Sullivan,* 105 F.3d 354, 358-60 (7th Cir.1997) (distinguishing deliberate indifference from malpractice: "Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward [plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.").

> FN17. There are four elements to the prima facie case of medical malpractice in Pennsylvania: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm." *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 250, 661 A.2d 397, 399 (1995).

[12] The only exception to the requirement of expert witness testimony in medical malpractice claims is where the matter is "so simple, and lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons." *Brannan,* 490 Pa. 588, 417 A.2d 196 (quoting *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963)). Whether the decisions of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                    **Page 13**
(Cite as: 117 F.Supp.2d 443, *456, 1997 WL 710943, **12 (E.D.Pa.))

the medical providers to deny or delay McCabe's surgery, given their knowledge of McCabe's condition and the standards of their profession, were negligent, and substantially caused McCabe's amputations, is not a matter within the competence of the ordinary layperson, and, therefore, requires expert testimony. McCabe has no expert witness to testify on his behalf. Accordingly, I GRANT summary judgment on the state law claims as to defendants DiGiovanni, Pierce, Skerl, Umar, Rahman, Ennis, Brandt, Magee, Harvey, and Altoona Hospital.

2. Medical Records Personnel

[13][14] In order to withstand summary judgment on his gross and ordinary negligence claims against the medical records defendants, McCabe must present evidence on the four negligence elements: (1) a legal duty or obligation to conform to a certain standard of conduct; (2) a failure to conform to that standard; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage. *Farber v. Engle,* 525 A.2d 864 (Pa.Cmwlth.1987). McCabe claims a duty for each of the defendants to transfer or obtain his medical records (Second Amended Complaint at ¶¶ 15-20), but does not specify any standard; similarly, he claims that each of the prisons at which he was incarcerated failed to transfer or acquire his full medical records, but does not provide the slightest substantiation for the claimed negligence of each of the defendants (Second Amended Complaint at ¶¶ 60-66). [FN18]

> FN18. In their motions for summary judgment, the Commonwealth defendants assert that McCabe has not raised issues of material fact as to their negligence; in his responses, McCabe provides no new allegations or evidence. Defendant Spence avers that she had no contact with McCabe and no responsibility concerning non-SCI medical records. Defendant Cramer avers that she had no involvement with plaintiff at all. While Defendant Harris admits that she had both contact with McCabe and responsibility for obtaining medical records, she argues that she was not negligent, because: she met with McCabe twice to obtain authorizations for release of his arteriogram record, she followed up on the first request, and, finally, nothing in Dr. Skerl's record request for the arteriogram record suggested urgency.
> Defendant Alvanitakis also moved separately for summary judgment. In his Amended Supplement

to Brief in Opposition to Defendants Motion for Summary Judgment, McCabe states that Alvanitakis "prepared a DC-7X form--Temporary Transfer Information" on November 19, 1991, in preparation for his transfer to Graterford, and then, that this form "outlined the Plaintiffs' medication's and the recommendation for 'needed Vascular surgery.'" Alvanitakis avers that she was in charge of all of the criminal record history for inmates, and had no responsibility for medical records. Delaware County Prison had an independent contractor, Prison Health Services, which provided medical care, and kept all records. McCabe has not provided any evidence showing that Alvanitakis was responsible for medical records; furthermore, in his Amended Supplement, McCabe says that Alvanitakis did provide the necessary information.

*457 **13 Giving him the benefit of every doubt, McCabe has not raised a genuine issue of material fact as to the negligence of the medical records personnel defendants. Accordingly, I GRANT summary judgment on the state law claims against defendants Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis. [FN19]

> FN19. The Commonwealth defendants, Spence, Harris, and Cramer, also claim sovereign immunity from tort liability. As I find that McCabe has not raised genuine issues of material fact as to their negligence, I need not reach the issue of sovereign immunity.

## ORDER

AND NOW, this ____ day of November, 1997, upon consideration of the motions made by defendants Prison Health Services, Correctional Physicians Services, Executive Health Group, DiGiovanni, Skerl, Pierce, Magee, Umar, Harvey, Rahman, Ennis, Brandt, Altoona Hospital, Spence, Harris, Cramer, Christie, Rensimer, and Alvanitakis and the responses filed by plaintiff McCabe, IT IS ORDERED:

1) that, with regard to the motion of DEFENDANT ALVANITAKIS for summary judgment on the state law and § 1983 claims against her, such motion is GRANTED;

2) that, with regard to the motion of DEFENDANTS SPENCE, HARRIS AND CRAMER for summary judgment on the state law and § 1983 claims against them, such motion is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.Supp.2d 443                                                                                      **Page 14**
(Cite as: 117 F.Supp.2d 443, *457, 1997 WL 710943, **13 (E.D.Pa.))

GRANTED;

3) that, with regard to the joint motion on behalf of all defendants for summary judgment on the state law and § 1983 claims against them, such motion is GRANTED on all claims as to DEFENDANTS PRISON HEALTH SERVICES, CORRECTIONAL PHYSICIANS SERVICES, EXECUTIVE HEALTH GROUP, DIGIOVANNI, RAHMAN, ENNIS, BRANDT, MAGEE, HARVEY, ALTOONA HOSPITAL, SPENCE, HARRIS, CRAMER, CHRISTIE, RENSIMER, AND ALVANITAKIS;

4) and that, with regard to the joint motion on behalf of all defendants for summary judgment on the state law and § 1983 claims against them, such motion is GRANTED on the state law claims as to DEFENDANTS SKERL, PIERCE AND UMAR and DENIED on the § 1983 claims as to DEFENDANTS SKERL, PIERCE AND UMAR.

117 F.Supp.2d 443, 1997 WL 710943 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works