UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL RAMOS,                          : CIVIL NO: 1:CV-00-1957
                                       :
            Plaintiff                  :
                                       :
      v.                               :
                                       : (Magistrate Judge Smyser)
DR. MAXIMO R. VELASCO, JR.,            :
DR. ANTHONY BUSSANICH,                 :
DR. PETER J. TERHAAR and               :
THE UNITED STATES OF AMERICA,          :
                                       :
            Defendants                 :


**MEMORANDUM AND ORDER**


     The plaintiff, a federal prisoner proceeding *pro se*,
commenced this action by filing a complaint in the United States
District Court for the District of Columbia.


     In his complaint, the plaintiff alleged that on March 25,
1997, while confined at the Allenwood Federal Correctional
Institution in White Deer, Pennsylvania, a correctional officer
fractured the plaintiff's right thumb.  The plaintiff alleged
that he filed an administrative claim which was denied.  The
complaint named as defendants: Kathleen Hawk Sawyer, Director of
the Bureau of Prisons; and Margaret Harden, Warden of the
Allenwood Federal Correctional Institution.

By an Order dated September 18, 2000, Judge Richard W. Roberts of the United States District Court for the District of Columbia construed the plaintiff's complaint as a *Bivens*[1] claim and as a claim under the Federal Tort Claims Act.[2] Judge Roberts dismissed with prejudice the claim against defendant Kathleen Hawk Sawyer and he ordered that the case be transferred to this court. The Clerk of this Court received the case file on November 1, 2000.

On November 8, 2000, the plaintiff filed a motion for an extension of time to amend his complaint. The plaintiff sought thirty days to amend his complaint to include additional defendants and to "bring his Civil action in proper form."

On November 13, 2000, the plaintiff filed a document with the court containing several titles including "Complaint," "Motion to Submit Amended Memorandum of Law in Support of Civil Rights Complaint under Bivens v. Six Unknown Agents, 403 US 388 (1971); 28 USC ¶¶ 1331, 1391(a)(b) and Federal Tort Claims Act,

---

1.
   *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

2.
   28 U.S.C. §§ 1346, 2671 *et seq.*

2

28 USC §§ 1346(b), 2671-80," and "Amended Memorandum of Law in
Support of Civil Rights Complaint under Bivens v. Six Unknown
Agents, 403 US 388 (1971); 28 USC ¶¶ 1331, 1391(a)(b) and
Federal Tort Claims Act, 28 USC §§ 1346(b), 2671-80."

By an Order dated November 15, 2000, we reviewed the
complaint and concluded that the complaint failed to state a
*Bivens* claim against defendant Harden because the plaintiff had
not alleged that defendant Harden actually participated in or
had actual knowledge of and acquiesced in the events forming the
basis of his claim.  We further concluded that the complaint
failed to state a claim under the Federal Tort Claims Act
against defendant Harden because the only proper defendant in a
Federal Torts Claim Act case is the United States.  The Order of
November 15, 2000 also granted the plaintiff's motion for an
extension of time to file an amended complaint and ordered the
plaintiff to file an amended complaint within thirty days.  We
warned the plaintiff that if he were to fail to file an amended
complaint, we would recommend that this action be dismissed for
failure to state a claim upon which relief can be granted.

After the Order of November 15, 2000, the plaintiff did
not file an amended complaint.

In a Report and Recommendation dated December 21, 2000, we recommended that the complaint be dismissed pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e for failure to state a claim upon which relief may be granted. At the time we issued the Order of November 15, 2000 and the Report and Recommendation of December 21, 2000, the document filed by the plaintiff on November 13, 2000 was not in the file.

By an Order dated January 25, 2001, Judge Kane adopted our Report and Recommendation and dismissed the complaint. The plaintiff appealed that order to the United States Court of Appeals for the Third Circuit. By an Order dated December 20, 2001 the Third Circuit vacated the order of January 26, 2001 dismissing the plaintiff's complaint and remanded the case to the district court. The Third Circuit directed that the court consider the document filed by the plaintiff on November 13, 2000 as an amended complaint.

The plaintiff alleges the following facts in his amended complaint.

On March 26, 1997, the plaintiff was involved in an alteration with another inmate at the Allenwood Federal

4

Correctional Institution (FCI-Allenwood).  The officer who subdued and handcuffed the plaintiff used unreasonable and excessive force and broke the plaintiff's thumb.

The plaintiff complained to medical staff about severe pain and swelling.  The defendants prescribed Motrin.  Defendant McGlori informed the plaintiff that he would order an x-ray of the plaintiff's injured hand.  However, an x-ray was not taken of the hand until December 4, 1997.   In the meantime, on May 21, 1997, the plaintiff was transferred from FCI-Allenwood to the United States Penitentiary at Allenwood (USP-Allenwood). The plaintiff continued to complain of pain only to be told to take Motrin.  The plaintiff complained that Motrin upset his stomach.

On November 19, 1997, the plaintiff was transferred from USP-Allenwood to the United States Penitentiary at Lewisburg (USP-Lewisburg).  The plaintiff continued to complain of pain. On December 4, 1997, an x-ray was taken which revealed a small avulsion fracture at the distal first metacarpal.  On February 9, 1998, surgical repair of the tendon in the plaintiff's hand was recommended.   The plaintiff continued to complain of severe pain in his right hand and thumb.   On January 7, 1999,

5

defendant Terhaar, a consulting surgeon, performed surgery on
the plaintiff's thumb.  Throughout January and February of 1999,
the plaintiff complained of severe pain in his right hand and
wrist.

On February 22, 1999, the plaintiff was transferred from
USP-Lewisburg to the United States Penitentiary at Lompoc,
California (USP-Lompoc).  The plaintiff continued to complain of
severe pain in his right hand and wrist.

On March 15, 1999, the plaintiff filed an administrative
tort claim.

On May 19, 1999, the plaintiff was told by a consulting
doctor that he had carpal tunnel syndrom and medial nerve
entrapment.  The consulting doctor told the plaintiff that the
surgery that was performed by defendant Terhaar was experimental
and should not have been done.  The plaintiff continued to
complain of severe pain in his right hand and wrist.

On October 7, 1999, the plaintiff was transferred from
USP-Lompoc to the United States Penitentiary at Florence,
Colorado (USP-Florence).   While at USP-Florence, the plaintiff

was seen by a consulting doctor who also diagnosed the plaintiff with carpal tunnel syndrome.  This consulting doctor recommended surgery but the plaintiff declined the surgery out of fear caused by the past experimental surgery performed on him.

The plaintiff's administrative tort claim was denied on January 7, 2000.

On May 23, 2000, the plaintiff was transferred to the Medical Center for Federal Prisoners in Springfield, Missouri. The plaintiff was again diagnosed with carpal tunnel syndrome and median nerve entrapment.  Surgery was again recommended and the plaintiff again declined surgery out of fear.

On June 15, 2000, the plaintiff was returned to USP-Florence where he remains incarcerated.

The plaintiff claims that defendant Harden, the Warden at FCI-Allenwood, failed to investigate the acts of the officer who broke his hand and failed to turn over the officer's name or the accident report on the incident.  The plaintiff further claims that defendant Harden failed to ensure that he be given adequate medical care.

The plaintiff claims that doctor McGlori, a doctor at FCI-Allenwood, is liable for deliberate indifference to his serious medical needs.  He alleges that defendant McGlori did not adequately treat his hand, did not complete the necessary x-ray and did not ensure that he received surgery in time to prevent the tendon in his hand from becoming atrophied.

The plaintiff claims that defendants Velasco and Bussanich, doctors at USP-Lewisburg, are also liable for deliberate indifference to his serious medical needs.  He alleges that they failed to adequately treat his hand injury and waited many months before scheduling him for surgery, a surgery which turned out to be unsuccessful and caused him to lose the normal use of his hand.

The plaintiff claims that defendant Terhaar showed deliberate indifference to his serious medical needs by performing an experimental surgery (which the plaintiff calls a "monkey experiment") on his right hand.  The plaintiff also alleges that defendant Terhaar did not inform him that the surgery was experimental and was negligent in performing the surgery.  The plaintiff alleges that as a result of defendant Terhaar's malpractice he lost the normal use of his right hand,

8

has permanent numbness and is now fearful of all Bureau of Prisons doctors.

The plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

By an Order dated February 20, 2002, Judge Kane remanded the case to the undersigned for further consideration.

By an Order dated February 28, 2002, we directed the Clerk of Court to serve the amended complaint on the defendants.

By an Order dated July 19, 2002, the plaintiff's motion for the appointment of counsel was conditionally granted.  On September 13, 2002, Andrew J. Ostrowski, Esquire, entered his appearance on behalf of the plaintiff.

By an Order dated September 26, 2003, the *Bivens* claims against the defendants in their official capacities were dismissed, the *Bivens* claims against defendants Harden and McGlori in their individual capacities were dismissed, the Eighth Amendment claim against defendant Terhaar was dismissed, the FTCA claims against the individual defendants were dismissed

and the United States was substituted as the proper defendant with regard to the FTCA claim.

On October 7, 2002, defendants Velasco, Bussanich and the United States filed an answer to the amended complaint. On October 22, 2002, defendant Terhaar filed an answer to the amended complaint.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). The case is scheduled for a jury trial beginning on November 3, 2003.

On July 11, 2003, defendant Terhaar filed a motion for summary judgment, a statement of materials facts and a brief in support of his motion. On July 15, 2003, defendants Velasco, Bussanich and the United States filed a motion for summary judgment, a statement of facts, a brief and exhibits in support of their motion.

On July 22, 2003, the plaintiff filed a "Motion Pursuant to Rule 56(f) to Stay Plaintiff's Response to Defendants' Motion for Summary Judgment, to Request Appointment of an Expert Witness, and to Direct Defendants to Provide Plaintiff with

10

Defendants' Disclosures."  By an Order dated July 24, 2003, we granted in part and denied in part the plaintiff's motion.  The plaintiff was granted an extension of time until August 25, 2003 within which to respond to defendants' motions for summary judgment, the plaintiff's request for fees to secure an expert witness was denied without prejudice to an application pursuant to Standing Order 01-1, and the defendants were ordered to make any initial disclosures not already made to the plaintiff as required by Rule 26 of the Federal Rules of Civil Procedure on or before August 11, 2003.

On August 25, 2003, the plaintiff filed briefs in opposition to the motions for summary judgment and responses to the defendants' statements of material facts.  On August 29, 2003, the plaintiff filed exhibits in support of his briefs in opposition.  On September 4, 2003, defendant Terhaar filed a reply brief in support of his motion for summary judgment, and on September 5, 2003, defendants Velasco, Bussanich and the United States filed a reply brief in support of their motion for summary judgment.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson*, *supra*, 477 U.S. at 248. In

12

determining whether an issue of material fact exists, the court
must consider all evidence in the light most favorable to the
non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d
56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of
summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient
to establish the existence of an element essential to that
party's case, and on which that party will bear the burden of
proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such
circumstances, 'there can be no genuine issue as to any material
fact, since a complete failure of proof concerning an essential
element of the nonmoving party's case necessarily renders all
other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247
(3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

We will first address defendant Terhaar's motion for
summary judgment.

Defendant Terhaar performed surgery on the plaintiff's
right hand.  The Report of Operation from the surgery describes
the operation as "repair of gamekeeper's thumb, right hand, with

13

reconstruction ulnar collateral ligament utilizing a palmaris longus tendon graft with suture anchors. Application of a thumb spica splint." *Doc. 87, Exhibit E.*

In the Report and Recommendation of July 19, 2002, we noted that the plaintiff's amended complaint may be construed to raise state law malpractice and lack of informed consent claims against defendant Terhaar as well as possibly a substantive due process claim based on the alleged failure to inform the plaintiff that the surgery was experimental.

Defendant Terhaar contends that he is entitled to summary judgment on the plaintiff's claims because the plaintiff has not presented any expert testimony to support his claims.

First, we address the plaintiff's malpractice claim against defendant Terhaar.

In order to establish a prima facie case of medical malpractice under Pennsylvania law, a plaintiff must establish: (1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered

14

by the patient; and (4) damages suffered by the patient that were a direct result of that harm. *Mitzelfelt v. Kamrin*, 584 A.2d 888, 891 (Pa. 1990). "Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003). There is a very narrow exception to the requirement of expert testimony "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons." *Id.* (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997)).

The plaintiff has not presented expert testimony that Defendant Terhaar deviated from good and acceptable medical standards or that any such deviation was the proximate cause of the harm suffered by the plaintiff. A gameskeeper's thumb and repair of such a thumb are not matters within the knowledge or experience of lay persons. This is not a case that is so simple, and lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of

non-professional persons such that expert testimony is not required.  Because the plaintiff has not presented expert testimony to support his malpractice claim, we will grant defendant Terhaar summary judgment on that claim.

Next, we turn to the plaintiff's informed consent claim against defendant Terhaar.

"It has long been the law in Pennsylvania that a physician must obtain informed consent from a patient before performing a surgical or operative procedure."  *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748 (Pa. 2002)(quoting *Morgan v. MacPhail*, 704 A.2d 617, 619 (Pa. 1997)).  In Pennsylvania, "[a] claim of a lack of informed consent sounds in the intentional tort of battery because an operation performed without the patient's consent is deemed to be the equivalent to a technical assault."  *Valles v. Albert Einstein Medical Center*, 805 A.2d 1232, 1237 (Pa. 2002).  "[I]t is the conduct of the unauthorized procedure that constitutes the tort."  *Id.*  "A lack of informed consent or a lack of consent claim is actionable even if the subject surgery was properly performed and the overall result is beneficial."  *Montgomery, supra,* 798 A.2d at 749.  To obtain informed consent, a doctor must provide the patient with

16

"material information necessary to determine whether to proceed

with the surgical or operative procedure or to remain in the

present condition." *Valles, supra,* 805 A.2d at 1237 (quoting

*Duttry v. Patterson*, 771 A.2d 1255, 1258 (Pa. 2001)). "This

information must give the patient 'a true understanding of the

nature of the operation to be performed, the seriousness of it,

the organs of the body involved, the disease or incapacity

sought to be cured, and the possible results.'" *Id.*


        In an informed consent case, expert testimony is

necessary to establish the existence and magnitude of risks with

a specific medical procedure, the existence of alternative

methods of treatments and the feasibility and existence of risks

attendant with such alternatives. *Festa v. Greenberg*, 511 A.2d

1371, 1376-77 (Pa.Super.Ct. 1986), *appeal denied*, 527 A.2d 541

(Pa. 1987). *See also* 40 P.S. §1301.811-A(c)[3] ("Expert testimony

is required to determine whether the procedure constituted the

type of procedure set forth in subsection (a) [the type of

procedure subject to the  informed consent requirement] and to

identify the risks of that procedure, the alternatives to that

_____

3.  40 P.S. § 1301.811-A(c) was repealed by the Medical Care
Availability and Reduction of Error (MCARE) Act, P.L. 154, No. 13,
§ 5104(a)(2) (March 20, 2002) and recodified at 40 P.S.
§ 1303.504(c).

procedure and the risks of these alternatives."). Additionally, expert testimony is necessary to establish the causal nexus between the injury alleged to have occurred and the tortious conduct in those cases where the connection is not obvious. *Maliszewski v. Rendon*, 542 A.2d 170, 172 (Pa.Super.Ct. 1988), *appeal denied*, 554 A.2d 510 (Pa. 1989).

The plaintiff has not presented expert testimony identifying the risks[4] of the surgery performed by defendant Terhaar, the alternatives to that surgery and the risks of those alternatives. The plaintiff has also not presented expert testimony that the problems he experienced with his hand after the surgery were caused by the surgery performed by defendant

---

4. We note that the plaintiff cites to various pages from what appear to be either websites or other publications for the proposition that it is common medical knowledge that there are risks that surgical repair of gamekeeper's thumb will be ineffective if there is a delay in diagnosis and/or treatment. *Doc. 87, Exhibit H.* These pages are not the equivalent of expert testimony. The statements in the pages are hearsay. Pursuant to F.R.E. 803(18), statements in a published treatise, periodical or pamphlet on a subject of history, medicine, or other science or art, established as reliable authority by the testimony or admission of the witness, by other expert testimony, or by judicial notice are not excluded by the hearsay rule to the extent the treatise or publication is called to the attention of an expert witness upon cross-examination or relied upon by an expert witness in direct examination. In the instant case, the plaintiff has not established that the publications cited are reliable authority and the plaintiff has not used the publications in connection with the testimony of an expert witness.

Terhaar.  Because the plaintiff has not presented expert
testimony to support his informed consent claim, we will grant
defendant Terhaar summary judgment on that claim.

As stated previously, we noted in the Report and
Recommendation dated July 19, 2002 that the plaintiff's
complaint could possibly be construed to contain a substantive
due process claim against defendant Terhaar based on the alleged
failure to inform the plaintiff that the surgery was
experimental. *See White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.
1990)("We hold that convicted prisoners . . .  retain a limited
right to refuse treatment and a related right to be informed of
the proposed treatment and viable alternatives. . . . Prisoners
have a right to such information as is reasonably necessary to
make an informed decision to accept or reject proposed
treatment, as well as a reasonable explanation of the viable
alternative treatments that can be made available in a prison
setting.").

Although defendant Terhaar did not address the claim as a
due process claim, defendant Terhaar does state in his motion
for summary judgment that he is entitled to summary judgment
because the plaintiff has not presented expert testimony that

19

the surgery was experimental.  The substantive due process claim
based on the right to be informed of the proposed treatment and
viable alternatives is similar to the state law informed consent
claim.  The plaintiff has not presented expert testimony that
the surgery performed by defendant Terhaar was experimental.
Just as we concluded that the plaintiff's informed consent claim
failed for lack of expert testimony, we conclude that the
plaintiff's substantive due process claim fails for lack of
expert testimony regarding whether the surgery was experimental,
the nature and extent of the risks of the surgery and any
feasible alternatives.  Accordingly, we will grant defendant
Terhaar summary judgment on the due process claim.

    We address next the motion for summary judgment filed by
defendants Velasco, Bussanich and the United States.

    The plaintiff's claim against the United States is a
Federal Torts Claim Act (FTCA) claim based on the delay of the
federal officials in providing surgery for the plaintiff's hand.

    The FTCA provides, in relevant part, that the "United
States shall be liable . . . in the same manner and to the same
extent as a private individual under like circumstances." 28

U.S.C. § 2674.  A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963).  Under the FTCA, the law of the place where an act or omission occurs it to be applied. 28 U.S.C. § 1346(b). Thus, in determining whether the United States owes a duty to the plaintiff, whether the United States breached that duty and whether that breach was the proximate cause of the plaintiff's injuries, the law of Pennsylvania ordinarily applies. *Hossic v. United States*, 682 F.Supp. 23, 24-25 (M.D.Pa. 1987). However, 18 U.S.C. § 4042[5] governs the United States' duty of care in cases involving injury to federal prisoners. *Id.* at 25; *Turner v.*

---

5. 18 U.S.C. § 4042(a) provides:
The Bureau of Prisons, under the direction of the Attorney General, shall-

      (1) have charge of the management and regulation of all Federal penal and correctional institutions;

      (2) provides suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

      (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

      (4) provide technical assistance to State and local governments in the improvement of their correctional systems; and

      (5) provide notice of release of prisoners in accordance with subsections (b) and (c).

21

*Miller*, 679 F.Supp. 441, 443 (M.D.Pa. 1987).  The duty of care
as provided by 18 U.S.C. § 4042 is that of ordinary diligence.
*Hossic, supra*, 682 F.Supp. at 25; *Turner, supra*, 679 F.Supp. at
443.

     The United States contends that it is entitled to summary
judgment because the plaintiff has not presented expert
testimony to establish his claim.

      As stated in connection with the plaintiff's malpractice
claim against defendant Terhaar, a gameskeeper's thumb and
repair of such a thumb are not matters within the knowledge or
experience of lay persons.  This not a case that is so simple,
and lack of skill or want of care so obvious, as to be within
the range of ordinary experience and comprehension of non-
professional persons such that expert testimony is not required.
 Because the plaintiff has not presented expert testimony that
the federal officials' delay in providing surgery to the
plaintiff violated the applicable standard of care or caused the
plaintiff injury, we will grant the United States summary
judgment on the FTCA claim.

Defendants Velasco and Bussanich contend that the Eighth Amendment claim against them should be dismissed because the plaintiff failed to exhaust available administrative remedies.

42 U.S.C. § 1997e(a), provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking." *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). As an

23

affirmative defense, the failure to exhaust available
administrative remedies must be pleaded and proven by the
defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d
Cir. 2002).

Except for claims for which other administrative
procedures have been established, federal inmates may seek
"formal review of an issue which relates to any aspect of
his/her own confinement."  28 C.F.R. § 542.10(a).  Generally, an
inmate must first address his complaint to the institution staff
member designated to receive such complaints within twenty days
of the date on which the basis for the complaint occurred. 28
C.F.R. § 542.14(a) & (c)(4).  The Warden will respond and an
inmate who is not satisfied with the Warden's response may
appeal to the Regional Director within twenty days of the date
of the Warden's response. 28 C.F.R. § 542.15(a).  Finally, an
inmate who is not satisfied with the Regional Director's
response may appeal to the General Counsel within thirty days of
the date of the Regional Director's response.  28 C.F.R. §
542.15(a).

The defendants have submitted a declaration from L.
Cunningham, a supervisory attorney with the Bureau of Prisons at

24

USP-Lewisburg.  Cunningham states in her declaration that a
review of the Bureau's SENTRY system records indicate that
plaintiff failed to exhaust administrative remedies available to
him under the Bureau of Prison's administrative remedy procedure
regarding the medical treatment of his right thumb. *Cunningham
Decl.* at ¶3.  Cunningham states that the plaintiff has
successfully filed numerous requests for administrative
remedies, including while housed at USP-Lewisburg, on a variety
of other issues.  But he has not filed any with regard to the
medical treatment of his right thumb. *Id.* at ¶¶4-5.  Cunningham
states that inmates may request blank copies of the
administrative remedy form from staff. *Id.* at ¶6.

     The plaintiff contends that he was not required to
exhaust administrative remedies with regard to the alleged delay
of defendants Velasco and Bussanich in providing treatment for
his thumb because he would not have known during the two years
prior to surgery that the delay in the surgery would cause his
hand permanent damage and, therefore, he would not have known to
submit an internal complaint before the surgery.  This argument
is without merit.  The plaintiff's claim against defendants
Velasco and Bussanich is based on their alleged failure to
provide medical treatment for his hand after he made complaints

25

of pain in his hand.  The plaintiff knew of the defendants'
alleged failure to respond to his complaints at the time he made
the complaints.  Moreover, although the plaintiff did file an
administrative tort claim after the surgery, he did not file an
administrative remedy pursuant to 28 C.F.R. § 541.10, et seq.,
regarding the alleged deliberate indifference of defendants
Velasco and Bussanich.

     The plaintiff also contends that the defendants have
failed to show that there was an internal grievance procedure at
each of the facilities at which the plaintiff was incarcerated
to complain about situations at the prior facility.  The
defendants are not required to make such a showing.  Both
defendants Velasco and Bussanich were physicians at USP-
Lewisburg.  Cunningham's declaration establishes that there was
a grievance procedure available to the plaintiff while he was
housed at USP-Lewisburg.

     The plaintiff also contends that the computerized
printout of the grievances that the plaintiff did submit
establishes that the grievance procedure was not available to
the plaintiff because many of his grievances were returned to
him with directions to submit the grievance in English.

26

However, none of the grievances that the plaintiff submitted while at USP-Lewisburg were returned with directions to submit the grievance in English.  There is no evidence presented from which a reasonable inference can be drawn that the plaintiff did not have access to the administrative remedy procedure at USP-Lewisburg because of a language barrier.

Finally, in support of the contention that administrative remedies were not available to him, the plaintiff cites his *pro se* motion filed on June 13, 2002 for a stay or leave of court to exhaust administrative remedies in which he stated that he was denied forms for over five months after his thumb was broken. First, statements in a motion are not summary judgment evidence. Second, assuming that it is established that the plaintiff was denied forms for over five months from the date he broke his thumb, this does not establish that the plaintiff was denied administrative remedy forms while he was incarcerated at USP-Lewisburg, which incarceration did not begin until almost eight months after he broke his thumb.

There are no genuine factual disputes about whether there was an administrative remedy procedure available to the plaintiff at USP-Lewisburg such that he could have exhausted

administrative remedies with regard to his Eighth Amendment
claim against defendants Velasco and Bussanich.  Given that the
plaintiff did not exhaust available administrative remedies,
the Eighth Amendment claim against defendant Velasco and
Bussanich will be dismissed.

        AND NOW, this    day of September, 2003, **IT IS HEREBY**
**ORDERED** that the motion (doc. 70) for summary judgment filed by
defendant Terhaar is **GRANTED** and that the motion (doc. 74) for
summary judgment filed by defendants Velasco, Bussanich and the
United States is **GRANTED.**  The trial scheduled for November 3,
2003 and the pretrial conference scheduled for October 16, 2003
are **CANCELED.**  The Eighth Amendment claims against defendants
Velasco and Bussanich are dismissed.  The Clerk of Court is
directed to enter summary judgment in favor of the United States
and defendant Terhaar.  The Clerk of Court shall close the case.

                                        _**/s/ J. Andrew Smyser**_
                                        J. Andrew Smyser
                                        Magistrate Judge
DATED:   September 26, 2003.

28