**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4597

MANUEL RAMOS,
      Appellant

v.

KATHLEEN HAWK-SAWYER; MARGARET
HARDEN, WARDEN, FCI ALLENWOOD;
DR. MCGLORI; MAXIMO R. VELASCO;
ANTHONY BUSSANICH; PETER J. TERHAAR;
UNITED STATES OF AMERICA

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 00-cv-01957
Magistrate Judge: The Honorable J. Andrew Smyser

Submitted Under Third Circuit LAR 34.1(a)
November 7, 2006

Before: SCIRICA, Chief Judge, BARRY and ALDISERT, <u>Circuit Judges</u>

(Opinion Filed: November 8, 2006)

OPINION

BARRY, <u>Circuit Judge</u>

Manuel Ramos, a federal prisoner, appeals from the Magistrate Judge's order of September 26, 2003. Because we write only for the parties, we will not restate the facts and procedural history of the case except as necessary for our analysis.[1] Ramos states two issues for appeal. First, he challenges the conclusion of the District Court that because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), the Eighth Amendment claim against defendants Velasco and Bussanich should be dismissed. Second, he challenges the fact that the Magistrate Judge would not permit his counsel to withdraw and denied the appointment of an expert witness. We have jurisdiction under 28 U.S.C. § 1291. For the following reasons, we will affirm.

### I.

The conclusion of the Magistrate Judge that Ramos failed to comply with the PLRA's exhaustion requirement is a question of law reviewed *de novo*. *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Before prisoners may sue under the PLRA, they must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and prisoners must exhaust all "available" remedies, even where the relief sought cannot be granted as a result of the administrative process. *Woodford v. Ngo*, 126 S. Ct. 2378, 2382-83 (2006). Additionally, the PLRA requires "proper exhaustion," meaning that the

---

[1] We thank pro bono counsel for their able representation of Ramos in this matter.

prisoner must comply with all the administrative requirements and not merely wait until administrative remedies are no longer "available." *Id.* at 2387-93. In *Spruill*, 372 F.3d at 231, we held "that prison grievance procedures supply the yardstick" for determining what steps are required for exhaustion.

An "Administrative Remedy Program" allows a federal "inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a) (2006). Under the § 542 procedures, an inmate must file a request for administrative relief (using Form BP-9) to the warden of the institution where he or she is confined within twenty days of the date on which the basis for the request occurred. 28 C.F.R. § 542.14. If dissatisfied with the response at the prison level, the inmate may file an appeal (using Form BP-10) to the Regional Director, and then to the General Counsel's office. The decision of the General Counsel is final. 28 C.F.R. § 542.15.

Although before the District Court, Ramos raised a host of reasons why he believed the exhaustion requirement did not apply or was not available to him, those reasons are not reprised before us. Rather, he now admits that he failed to initiate and thus exhaust the mandatory administrative procedure set forth in 28 C.F.R § 542.10 et seq., the very first step of which would have been to file his complaint with the warden of his prison. His only argument before us is that the administrative tort claim he filed with the Northeast Regional Office of the Bureau of Prisons satisfied the exhaustion requirement and that, although our case law would reject that argument, we should await the Supreme Court's decision in Ngo, a case which would decide whether "a prisoner

satisf[ies] the [PLRA's] administrative exhaustion requirement by filing an untimely or otherwise procedurally defective administrative appeal." Appellant's Br. at 10-11, quoting Brief for Petitioners, Woodford v. Ngo, 2005 WL 3598180 (Dec. 29, 2005).

On June of 2006, the Supreme Court decided Ngo, holding, as noted above, that proper exhaustion of administrative remedies is necessary. In an extremely thorough opinion, the Court left nothing to the imagination, concluding that construing § 1997e(a) to require proper exhaustion serves the purposes of the PLRA. To suggest, as Ramos implicitly does here, that noncompliance with the requisite procedures is sufficient compliance with the exhaustion scheme of the PLRA would, in the words of the Court, render that scheme "wholly ineffective" and "toothless," and undercut the goals of the PLRA. Ngo, 126 S.Ct. at 2388.

The Magistrate Judge's dismissal of the Eighth Amendment claim against defendants Velasco and Bussanich was eminently correct.

## II.

Ramos argues, next, that the Magistrate Judge abused his discretion in denying Ramos's counsel's motion for leave to withdraw and denying his motion to appoint an expert witness. Again, we disagree.

Andrew J. Ostrowski was appointed by the Court to represent Ramos and entered his appearance on September 13, 2002. On June 12, 2003, Ostrowski moved to withdraw as counsel, alleging that he was "not financially able to incur the burden and expense of procuring the [necessary] expert services." A-0049. Defendant Terhaar, a surgeon, noted

in his opposition to the motion that he was required to list this pending litigation on his applications to hospitals for staff privileges and to insurance companies for approval to treat their insureds, and had already done so for three years. By order dated June 19, 2003, the Magistrate Judge conditionally granted Ostrowski's request, noting that "leave to withdraw [would] be granted upon the entry of an appearance of other counsel on behalf of the plaintiff." App. Vol. 2 at A-0057. There is no indication that Ostrowski made any effort to find replacement counsel. Rather, on July 22, 2003, Ostrowski, noting the difficulty of communicating with Ramos and finding an expert witness in the area of Pennsylvania or Colorado (where Ramos was then being held) and his own medical and staffing issues, requested that he be granted an extension of time to reply to the summary judgment motions, which had by then been filed by all defendants. He also requested that an expert witness be appointed – an expert, he said, is "central" to his ability "to recover on some aspects of his claims." A-0059. The Magistrate Judge granted the extension of time and denied the request to appoint an expert. Following Ostrowski's response to the motions for summary judgment, in which he reversed course and argued that an expert was not necessary, those motions were granted.

      The Magistrate Judge did not abuse his discretion in refusing to appoint an expert. Ostrowski had represented Ramos for over nine months when, on the eve of the close of discovery, he first cited his inability to obtain an expert witness. Although denying the motion, the Magistrate Judge alerted Ostrowski to the existence of funds for reimbursement of fees incurred by pro bono lawyers for indigent clients. Ostrowski did

5

not seek reconsideration of the denial or contest it in any way, and instead argued in his response to the summary judgment motions that an expert witness was not needed because the "matter under investigation is so simple, and the lack of skill; [sic] or want of care so obvious." Appellee's Br. at 9 quoting Dkt. Entry 83 at 8-10.

Even if this change of position did not constitute a waiver on appeal of the issue of the earlier denial of the appointment of an expert, and we think it did, that denial surely was not an abuse of discretion given, among other reasons, the very belated request and the prejudice that further delay in an already three-year old case would have caused.

## IV.

We will affirm the September 26, 2003 order of the District Court.